**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

MISS UNIVERSE L.P., L.L.L.P.,

                    Petitioner,

     -against-

SHEENA MONNIN,

                  Respondent.

---------------------------------------------------------------

Case No. 1:12-cv-09174 (JPO)

Civil Action

---

**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER MISS UNIVERSE L.P.,
L.L.L.P'S PETITION TO CONFIRM THE ARBITRATION AWARD AND IN SUPPORT
OF RESPONDENT SHEENA MONNIN'S CROSS-MOTION TO VACATE THE
ARBITRATION AWARD**

---

Cole, Schotz, Meisel,
Forman & Leonard, P.A.
A Professional Corporation
900 Third Avenue
16th Floor
New York, NY  10022-4728
212.752.8000
212.752.8393 (fax)
Attorneys for Respondent, Sheena Monnin

Of Counsel and on the Brief:
     Steven R. Klein (*pro hac vice*)
     Damian L. Albergo (DA8712)

On the Brief:
     Michael R. Yellin (MY1588)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

    A.      Miss Pennsylvania USA Pageant. .................................................. 3

    B.      Sheena is Crowned Miss Pennsylvania USA. ............................... 4

    C.      The Miss USA Pageant. ................................................................ 5

    D.      Sheena Resigns as Miss Pennsylvania. ......................................... 6

    E.      Sheena's Alleged Defamatory Facebook Posts. ............................ 7

    F.      Miss Universe's Media Blitz. ........................................................ 8

    G.      Sheena Defends Herself on The Today Show. ............................... 9

    H.      The "Arbitration." ........................................................................ 10

    I.      The Decision. ................................................................................ 15

LEGAL ARGUMENT ............................................................................................... 17

I.      THE COURT SHOULD VACATE THE DECEMBER 10, 2012 ARBITRATION AWARD ENTERED AGAINST SHEENA. ................................................ 17

    A.      The Arbitrator Exceeded His Powers. .......................................... 18

    B.      Sheena Did Not Receive Adequate Notice of the Arbitration. ..... 20

    C.      The Arbitrator Demonstrated a Manifest Disregard for the Applicable Law. ...... 23

CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Bell Aerospace Co. Div. Of Textron, Inc. v. Local 516, UAW, 500 F.2d 921 (2d Cir. 1974) ................................................................................................................................ 21

Celle v. Filipono Reporter Enters. Inc., 209 F.3d 163 (2d Cir. 2000) ......................................... 23

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995) ................................................... 18

Gendot Associates, Inc. v. Kaufold, 866 N.Y.S.2d 361 (2008) ................................................... 23

Harper Ins. Ltd. v. Century Indem. Co., 819 F. Supp. 2d 270 (S.D.N.Y. 2011) .......................... 18

Kaplan v. Alfred Dunhill of London, Inc., 1996 WL 640901 (S.D.N.Y. Nov. 4, 1996) .............. 21

Lugo v. Keane, 15 F.3d 29 (2d Cir. 1994) ................................................................................... 21

Phil Neto Constr. Co. v. Local Union 964, 1995 WL 105285 (S.D.N.Y. Mar. 13, 1995) .......... 18

Spear, Leeds & Kellogg v. Bullseye Securities, Inc., 738 N.Y.S.2d 27 (N.Y.A.D. 1st Dep't., 2002) ............................................................................................................................ 18

Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85 (2d Cir. 2008) rev'd on other grounds, 130 S. Ct. 1758 (2010) ............................................................................................. 17

T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329 (2d Cir. 2010) .................... 23

Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc., 607 F.2d 649 (5th Cir. 1979) ....................................................................................................................................... 18

**STATUTES**

9 U.S.C. § 1 .................................................................................................................................. 1

9 U.S.C. § 10(a) .......................................................................................................................... 17

9 U.S.C. § 10(a)(3) ...................................................................................................................... 21

9 U.S.C. § 10(a)(4) ...................................................................................................................... 18

## PRELIMINARY STATEMENT

This case arises from a Final Arbitration Award (the "Award") entered against respondent Sheena Monnin ("Sheena") and in favor of petitioner Miss Universe, L.P., L.L.L.P ("Miss Universe").  The inherently defective Award was entered after a one-sided arbitration proceeding as to which Sheena did not receive actual and complete notice of the claims and hearing date.  Because Sheena was denied these fundamental rights, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (2006), requires a *vacatur* of this grossly unfair Award.

First, the arbitrator, the Honorable Theodore H. Katz, U.S.M.J. (retired), patently exceeded his powers in violation of Section 10(a)(4) of the FAA because the Award is predicated on an issue and claimed damages not asserted in Miss Universe's Statement of Claim.  It is well-settled that an arbitrator cannot consider issues that are not pled by the parties in making his decision.  Here, the Statement of Claim seeks damages for defamation based on two discrete posts made on Sheena's Facebook page.  Despite no other legal issues or defamatory facts being asserted in the Statement of Claim, and despite explicitly finding that those posts did not cause damage to Miss Universe, Arbitrator Katz entered a $5 million award against Sheena based on unalleged comments she made on the Today Show.  Sheena's Today Show appearance (and the loss of an alleged $5 million sponsorship by BP America, Inc. ("BP")) does not appear anywhere in Miss Universe's Statement of Claim.  Respectfully, Arbitrator Katz, therefore, exceeded his powers by relying on those issues as the sole basis for the Award.

The Award also must be vacated because Sheena was denied a fundamentally fair hearing in violation of Section 10(a)(3) of the FAA.  Courts require that parties receive proper notice of the claims being asserted against them.  Absent such notice, a party will have been denied a fundamentally fair hearing and an Award arising from same must be vacated.  Here, the Statement of Claim did not provide Sheena with notice that the Arbitrator would consider

Sheena's statements on the Today Show and the loss of BP as a sponsor as a basis for potential liability.  Moreover, Sheena was also denied actual notice of the arbitration hearing because neither her lawyer nor Miss Universe nor the arbitration service, JAMS, sent a notice of the hearing date directly to her.  The lack of notice to Sheena was extremely prejudicial because she did not appear to present the several meritorious defenses she has to Miss Universe's defamation claim.  Because Sheena was without notice of both the date of the hearing and the specific claims and damages being sought, the Award must be vacated.

Finally, even if this Court were to overlook the extremely prejudicial procedural defects with the arbitration, which it should not, respectfully, Arbitrator Katz also manifestly disregarded the law in concluding that Miss Universe was entitled to $5 million as a result of Sheena's statements.  During the hearing, no facts were presented by Miss Universe to demonstrate that Sheena's statements <u>caused</u> these damages.  In fact, the hearsay testimony of Paula M. Shugart ("Shugart"), a representative from Miss Universe and the sole witness on that point, failed to proffer any testimony regarding "causation" such that Arbitrator Katz could conclude that Miss Universe's purported loss was related to or proximately caused by Sheena's comments. The lack of such evidence alone is fatal to Miss Universe's Petition and Arbitrator Katz's manifest disregard for the law requires a *vacatur* of the Award.

Arbitrations and awards arising therefrom must comport with the standards set forth in the FAA.  The Award fails to do so because: (1) Arbitrator Katz exceeded his powers; (2) Sheena was not given notice of the hearing or the claims against her; and (3) Arbitrator Katz's decision demonstrates a manifest disregard for the law.  Each of these three reasons, on their own, requires a *vacatur* of the Award.  Accordingly, Sheena respectfully requests the Court grant her cross-motion to vacate the Award and deny Miss Universe's Petition in its entirety.

## STATEMENT OF FACTS

### A.   Miss Pennsylvania USA Pageant.

The tragic series of events that led to the Award began just over a year ago.  (See Declaration of Sheena Monnin ("Sheena Decl."), ¶ 2.)  On Friday, December 2, 2011, Sheena arrived in Pittsburgh for the first of three days spent competing in the Miss Pennsylvania USA Pageant ("Miss Pennsylvania Pageant").  The Miss Pennsylvania Pageant is a franchise of the Miss Universe organization.[1]  The winner of the Miss Pennsylvania Pageant, like each of the other fifty franchise pageant winners (Miss Universe has franchises in each state plus the District of Columbia), goes on to compete in the Miss USA Pageant.  Ultimately, the winner of the Miss USA Pageant represents the United States in the Miss Universe Pageant.  (Id., ¶¶ 2-4.)

The franchise for the Miss Pennsylvania Pageant is owned by Sanders & Associates, Inc. ("Pageant Associates"), which is owned by Randy Sanders ("Sanders").  Sheena had known Sanders for several years before the December 2011 competition and trusted him completely.  Indeed, the December 2011 competition was Sheena's third appearance in the Miss Pennsylvania Pageant.  That year, just as in each prior year, Sanders stressed that he was the pageant "dad" and that he cared for each contestant as if she were his own daughter.  (Id., ¶¶ 5-8.)

That Friday, Sheena and dozens of other girls from across Pennsylvania checked into their hotel, attended orientation, rehearsed, and then competed in the opening round of the Miss Pennsylvania competition.  (Id., ¶ 10.)   The competition continued on Saturday, December 3, 2012, with an interview by the judges, several more hours of rehearsals, and concluded with preliminary swimsuit and evening gown rounds.  That night, the contestants had their first opportunity to visit with their families since their arrival in Pittsburgh.  (Id., ¶¶ 11-12.)  Finally,

---

[1] The Miss Universe organization is a joint venture between Donald J. Trump and NBC Universal.

on Sunday, December 4, 2012, Sheena awoke early and rehearsed for several hours. That afternoon, the final two-hour show occurred. Ultimately, at the end of a marathon weekend, Sheena was crowned Miss Pennsylvania USA 2012. (Id., ¶¶ 13-15.)

### B. Sheena is Crowned Miss Pennsylvania USA.

Immediately after Sheena was crowned, a whirlwind of activities began. For nearly an hour, Sheena remained on stage taking pictures. After about an hour of photographs, Sanders escorted Sheena to a small conference room off the stage. Heaping praise and congratulations on her, Sanders told Sheena how glad he was to have her as part of the "family" and how he would be supporting her in the coming year as she prepared for the Miss USA Pageant. Sanders emphasized how important it was that Sheena "trust" him completely and that if any problems should arise over the next year she should contact him in confidence. Sanders then stressed that they needed to hurry through some formalities because the pageant's photographer was waiting to take Sheena's official photographs for the Miss Pennsylvania USA website and official Miss Pennsylvania USA Facebook page. (Id., ¶¶ 16-21.)

With Sheena still in her gown, crown, and sash, Sanders handed Sheena three documents, one document that appeared to be a contract concerning the Miss USA Pageant and two contracts that appeared to be between Sheena and Pageant Associates. Sanders told Sheena that she was required to sign the documents to compete in the Miss USA competition. Sanders said that he would explain the documents to her, but that he would first step out of the room for a "few minutes" to give her a chance to read through them. (Id., ¶¶ 22-24.)

When Sanders stepped out of the room, Sheena took her first and only look at the documents. The documents were long, single spaced, extremely dense, and full of legal terms that Sheena did not understand. She had barely read through the first few pages (which did not contain an arbitration clause) of the largest document when Sanders returned a few minutes later.

4

Upon his return, Sanders asked Sheena if she had any questions about the documents, stating that he recognized they were long documents and that he would explain the "important parts" to her. (Id., ¶¶ 25-26.)

Sanders did not review each page of the documents with Sheena.  Instead, he skipped quickly through them, focusing only on those parts that discussed eligibility for the Miss USA Pageant (i.e., the contestants cannot have a criminal record, cannot be or have been married, cannot have any children, etc.).  Sander's attitude was the documents were "just a formality" and that Sheena should sign the documents so the two could meet with the waiting photographer and makeup artists.  (Id., ¶¶ 27.)

Pressured by the thought of everyone waiting for her, and emotionally and physically tired from the three day process, Sheena put her trust in Sanders and signed the documents without understanding their provisions.  Sanders then took the documents Sheena signed.  Later, Sanders provided Sheena with a signed copy of the two documents she signed concerning Pageant Associates as well as an unsigned document that Sanders represented was the third document Sheena signed.  Having only read the first few pages, Sheena could not confirm that the third document was an actual copy of the Miss USA agreement that she had signed.  (Id., ¶¶ 28-29.)

### C.   The Miss USA Pageant.

Miss Universe had advertised to the state pageant winners that the Miss USA competition would be decided based on voting conducted by preliminary judges and celebrity judges.  Thus, when Sheena arrived in Las Vegas for the Miss USA Pageant, she believed the process was an open competition in which all the contestants would have a fair chance of winning.  (Id., ¶ 30.)

On June 3, 2012, the Miss USA telecast began with fifty-one contestants onstage.  The field was immediately narrowed down to the top 16 contestants based on a previous preliminary

round.  After the final 16 contestants were announced, the live broadcast went to a commercial break and those competitors who did not advance were dismissed from the stage.  (Id., ¶ 32.)

The dismissed contestants, who included Sheena and Miss Florida USA, Karina Brez ("Brez"), stood briefly in the wings of the stage before returning to the dressing rooms.  It was at that point that Brez said to Sheena: "I know who is going to be in the top 5."  At first, Sheena thought Brez was joking or that she was merely expressing her opinion on who she thought would win.  Sheena responded, "who do you think they are?", to which Miss Florida replied, "I don't think, I know who they are."  Brez elaborated that she saw a paper in a notebook in the back of the stage entitled "final show telecast" earlier in the day.  Brez said the top 5 contestants were already listed, even though the competition had not progressed to the final selection.  Brez then announced the top five names she saw.  Sure enough, each of the women remained on stage in the top 16.  (Id., ¶¶ 33-38.)

Sheena was shaken.  She immediately texted Sanders about how upset she was to learn the competition was rigged.  She did not tell any other contestants what Ms. Brez had said, instead sitting in silence for the remainder of the competition, hoping that Brez would turn out to be wrong.  Unfortunately, the top 5 contestants were the exact women Brez identified earlier and the winner was Miss Rhode Island USA, Olivia Culpo, just as Brez stated.  (Id., ¶¶ 39-41.)

### D.      Sheena Resigns as Miss Pennsylvania.

On June 4, 2012, the morning after the pageant, Sheena e-mailed her resignation letter to Sanders and texted him, stating: "please check your email.  I have sent you my final and unchangeable thoughts and my decision.  I will not change my mind or be talked out of this decision.  Time will not change my decision.  I consider my choice to be effective immediately."  Having not heard from Sanders all day, at 4:47 pm, Sheena texted Sanders again and said, "I will not keep quiet on this…This was not fair play."  (Id., ¶ 45, Exh. A.)

6

### E.   Sheena's Alleged Defamatory Facebook Posts.

On June 4, 2012, Sheena posted on her Facebook page to let her fans know she was resigning her title as Miss Pennsylvania.  She wrote:

> I have decided to resign my position as Miss Pennsylvania USA 2012.  Effective immediately I have voluntarily, completely and utterly removed myself from the Miss Universe Organization.  In good conscience I can no longer be affiliated in any way with an organization I consider to be fraudulent, lacking in morals, inconsistent, and in many ways trashy.  I do not support this system in any way.  In my heart I believe in honesty, fair play, a fair opportunity, and high moral integrity, none of which in my opinion are part of this pageant system any longer.

> [Id., ¶ 47.]

The next day, Sheena received a Facebook message from one of the other Miss USA contestants ("Contestant A"),[2] who wrote: "I'm so proud of you.  I was there with you backstage when it all went down . . . ."  (Id., ¶ 48, Exh. B.)  Another contestant ("Contestant B"), texted Sheena, writing, among other things:

> . . .hopefully this brings more awareness to how shady this particular competition really was.  I'm hoping that someone from the organization will leak information and shed some light on this issue.  And if not hopefully your actions will grab someones attention an you can speak publicly about it.  Its just such a disappointment to lose faith in something you've dreamed of for so long . . . .

> [Id., Exh. C.]

Having received encouragement from other contestants and from her fans urging her to speak up, Sheena wrote a second and last Facebook post on June 5, 2012:

> I agree that it is my moral obligation to state what I witnessed and what I know to be true.  I will relay to you the reasoning behind

---

[2]  To protect the privacy of the other contestants, their names are not included in Sheena's Declaration and have been redacted from the attached exhibits.  If necessary, same will be made available to the Court for inspection upon the Court's request.

my resignation.  I witnessed another contestant who said she saw the Top 5 BEFORE THE SHOW EVER STARTED proceed to call out in order who the Top 5 were before they were announced on stage.  Apparently the morning on June 3rd she saw a folder lying open to a page that said 'FINAL SHOW telecast, June 3, 2012'.  After the Top 16 were called and we were standing backstage she hesitantly said to me and another contestant that she knew who the Top 5 were.  I said 'who do you think they will be? She said that she didn't 'think' she 'knew' because she saw the list that morning.  She relayed whose names were on the list.  Then we agreed to wait and see if that was indeed the Top 5 called that night.  After it was indeed the Top 5 I knew the show must be rigged; I decided at that moment to distance myself from an organization who did not allow fair play and whose morals did not match my own.  That is all I know about this.  If this contestant would like to step forward as an eye witness and as being the one who saw the sheet with the Top 5 already selected before the judges ever saw the Top 16, then perhaps action can be taken.  As for me, I believe her words and I will not encourage anyone to compete in a system that in my opinion and from what I witnessed was dishonest.

[Id., ¶ 51.]

Sheena's comments were not generally available to the media or the public since, as of June 5, 2012, she only had approximately 250 "friends" on Facebook.  (Id., ¶ 52.)

## F.   Miss Universe's Media Blitz.

On June 6, 2012, less than 48 hours after Sheena's first Facebook post, Miss Universe went on a veritable media frenzy.  First, Miss Universe's Donald J. Trump ("Trump"), went on Good Morning America and denied the "rigging" charge and claimed Sheena suffered from "loser's remorse . . . "  Later that day, Miss Universe's "special counsel", Michael Cohen, Esq. ("Cohen"), called in to the television show, TMZ Live, and said Sheena had 24 hours to retract her statement or that Sheena could "bet her a** that [Miss Universe] will sue . . . seeking massive damages."  The next day, Miss Universe's media campaign continued with Trump appearing on the Today Show.  Trump stated that Sheena's allegations were "disgraceful" and that Miss Universe was going to bring a lawsuit (not arbitration) against her.  Trump also said

8

Miss Universe had spoken to Brez, who Trump claimed denied the allegations.  Not surprisingly, the next day, Brez appeared on E! and claimed she did not even remember discussing the list with Sheena, then changed her story stating that she was "joking" about the "rehearsal list" back stage.  Brez also said the ultimate winner, Miss Rhode Island USA, was not even on the "rehearsal list" and, therefore, she knew that it could not have been the real list.  (Id., ¶¶ 53-57.)

### G.    Sheena Defends Herself on The Today Show.

After having been attacked in the media, other competitors from the Miss USA Pageant began reaching out to Sheena to show their support.  (Id., ¶ 58.)  On June 6, 2012, for example, another contestant ("Contestant C"), wrote to Sheena: "I sincerely hope that the truth will come out and it will because of your courage to speak up." (Id., Exh. D.)  Moreover, on June 8, 2012, Sheena received the following message from another contestant ("Contestant D"):

> Hey Sheena!  It's [Contestant D].  I've been talking with the other girls and we're all disgusted with how they are trying to turn things against you in the media.  **We know you didn't make this up out of no where – a lot of girls knew about that list backstage and are outraged.  I personally heard about it straight from the girl who saw the list . . . .**
>
> [Id., ¶ Exh., E (Emphasis added).]

Overwhelmed by the barrage of media attacks on her character, Sheena felt compelled to publically respond.  After days of constant media requests for comments, on June 8, 2012, Sheena agreed to be interviewed by Ann Curry on the Today Show.  During the interview, Sheena reiterated that she believed Brez when she revealed the Top 5 were disclosed.  She indicated that she believed what Brez told her to be true and wanted to find the truth out for herself.  Sheena told Ann Curry that she felt an injustice had been done and that she wanted to make sure future contestants knew the real truth about the pageant.  Importantly, Sheena also made clear that she was not there to "destroy" or to "bad talk" anybody.  (Id., ¶¶ 61-62.)

The day after Sheena's interview, another contestant ("Contestant E") text messaged her support by writing, among other things: "Wow I can't believe FL is denying what she said now…I back u 100% on what u heard and I am appalled that no one else is speaking up bc SO many others heard the same." (Id., Exh., F.)

### H.    The "Arbitration."

On June 25, 2012, Miss Universe filed its Demand for Arbitration and Statement of Claim with JAMS.  Miss Universe's Statement of Claim indicates that it was seeking an unspecified amount of damages from Sheena as a result of her "publication of false and libelous statements concerning [Miss Universe's] 2012 Miss USA Pageant competition." (Klineburger Decl., Exh. B, p. 1.)  The Statement of Claim identifies only two statements that Miss Universe alleges caused it damages.  They were, specifically, Sheena's June 4 and 5, 2012 Facebook posts. No other alleged misconduct by Sheena is set forth in the Statement of Claim. (Id., Exh. B.)

On June 26, 2012, Sheena was served with a copy of the filed Demand for Arbitration and Statement of Claim.  Sheena immediately turned the documents over to Richard Klineburger, Esq., whom she had retained to represent her with respect to her situation with Miss Universe and Trump.  Klineburger told Sheena she was not bound by any agreement to arbitrate and that Sheena need not respond to any communications from JAMS.  Klineburger concluded that Sheena did not have to arbitrate, because, among the other reasons, he had not seen a copy of any contract signed by Sheena or Miss Universe agreeing to arbitrate (although he had an unsigned copy) and she had resigned in any event.  (Sheena Decl., ¶¶ 64-68; Declaration of Richard Klineburger, III, Esq. ("Klineburger Decl."), ¶¶ 1-5.)

On July 3, 2012, Klineburger wrote to Miss Universe's representatives and told them Sheena was not bound by any prior agreement to arbitrate and that she would not be participating in any JAMS arbitration.  (Klineburger Decl., Exh. C.)  Despite Klineburger's letter, over the

next few weeks JAMS continued to send information and invoices directly to Sheena.  For example, on July 11, 2012, two weeks after Sheena received the Statement of Claim, JAMS sent her an e-mail directly asking for payment of their fees.  Tellingly, in that e-mail JAMS explicitly stated that "***the arbitration cannot move further without payment***," (emphasis in original), which confirmed for Sheena what Klineburger had told her.  (Sheena Decl., Exh. G.)

On July 18, 2012, Klineburger wrote to the JAMS Case Manager as follows:

> This correspondence will confirm that I represent Ms. Sheena Monnin in this as well as in any other ancillary matters.  In any event, Ms. Monnin is not subject to any arbitration provisions, has not entered into an agreement with your company and she will not be participating in any JAMS resolution services at this time.

> [Klineburger Decl., Exh. D.]

That same day, Klineburger also wrote to Miss Universe's representatives and reiterated that Sheena was not obligated to participate in an arbitration before JAMS.  (Id., Exh. E.) Throughout this entire time period, Klineburger continued to reassure Sheena she was not obligated to participate in any arbitration and was no longer bound by her old agreement with Miss Universe.  (Klineburger Decl., ¶ 13; Sheena Decl., ¶ 70.)

On August 27, 2012, Meredith Stockman ("Stockman") from JAMS e-mailed Sheena directly (with a cc to Klineburger) to "follow up" on Sheena's outstanding invoice to JAMS for their services in connection the arbitration.  Minutes later, Stockman sent another e-mail to all parties, including Sheena and Klineburger, seeking to schedule a conference call with Arbitrator Katz.  (Klineburger Decl., Exhs. F & G.)

Less than one-half hour later, Klineburger e-mailed a letter to Stockman, reiterating that Sheena was not obligated to proceed with the arbitration and stating that Sheena had "no intention of going forward with anything involving such dispute resolution."  Klineburger further stated that Stockman was not to contact Sheena directly going forward. (Id., Exh. H.)

11

Stockman did not respond to Klineburger's correspondence.  Instead, on August 29, 2012, Stockman e-mailed all counsel attaching a "Conference Call Confirmation Letter." Once again, Klineburger immediately wrote to Stockman by e-mail and indicated:

> Neither myself nor Ms. Monnin will have a conference call in the above captioned matter since there is nothing to have a conference call about.  Neither myself nor Ms. Monnin ever retained your company's services and will not be utilizing your company's services.
>
> (Id., ¶ 18-19, Exhs. I and J.)

Stockman again did not respond to Klineburger's letter.  (Id., ¶ 20.)

On September 5, 2012, Stockman e-mailed Klineburger directly, this time to follow up on "a balance reflected on the attached invoice in connection with [Miss Universe L.P, LLLP v. Monnin, Sheena]."  (Id., Exh. K.)  Less than fifteen minutes later, Klineburger e-mailed yet another letter to Stockman, asking that she please send him "a signed agreement with your company wherein either myself and/or my client agreed to utilize your services.  Otherwise, please leave myself and Ms. Monnin alone."  (Id., Exh. L.)  Once again, Stockman did not respond to Klineburger's letter.  (Id., ¶ 23.)   In fact, despite numerous requests, neither Stockman nor counsel for Miss Universe ever produced a copy of an agreement to arbitrate signed by Sheena and Miss Universe.[3]

JAMS' September 5, 2012 letter was the last correspondence Sheena received concerning the Arbitration from either JAMS or her lawyer until November 2, 2012.  Indeed, despite many subsequent e-mails being sent to Klineburger from JAMS following his September 5, 2012 letter, Klineburger believed strongly that his client did not need to participate in the arbitration because

---

[3] Because Sanders took with him the only copy of the document that Sheena actually signed, Sheena could not confirm for Klineburger that the unsigned copy that Sanders gave to her was the same document she signed the night of the Miss Pennsylvania Pageant.

neither JAMS nor Miss Universe ever produced a signed arbitration agreement (and Sheena had resigned).  Thus, Klineburger did not respond to any additional communications from JAMS, nor did he forward same to Sheena, including any notices with the date for the hearing.  (Id., ¶ 24.)

On Friday, November 2, 2012, Klineburger received a short e-mail from JAMS indicating that the arbitration would be proceeding the following Monday, November 5, 2012.  (Id., Exh. M.)  JAMS did not copy Sheena on that e-mail nor did Klineburger provide a copy of that e-mail to Sheena.  That same day, Klineburger wrote to counsel for Miss Universe, reiterating his position that Sheena "was not subject to any arbitration agreement with regard to her former association with the Miss Universe Pageant."  Klineburger also enclosed a draft complaint against Trump that he contemplated filing on Sheena's behalf if the parties could not amicably resolve their disputes.  (Id., Exh. N.)  Klineburger did not copy Sheena on the letter to Miss Universe.  Instead, he e-mailed her stating that he had spoken to Miss Universe and that Sheena's recantation was required to resolve the matter.  (Sheena Decl., ¶ 71.)

On November 12, 2012, having not heard from Klineburger, Sheena e-mailed him to ask what they should do moving forward.  Klineburger did not immediately respond to Sheena's e-mail.  (Id., Exh. H.)  After the passage of another month with no response, Sheena concluded that Klineburger had succeeded in resolving the dispute.  (Id., ¶ 74.)  Thus, on December 10, 2012, Sheena's father wrote to Klineburger: "**First, I want to thank you on behalf of Sheena and our family for successfully removing the [Miss Universe] threat of arbitration.**  We did not know what to do and your help was appreciated very much . . ."  (Id., Exh. I (emphasis added).)

Klineburger also did not immediately respond to the December 10, 2012 e-mail.  Unfortunately, totally unbeknownst to Sheena, on November 5, 2012, an arbitration hearing had proceeded before Arbitrator Katz.  (Id., ¶ 77; Klineburger Decl., ¶ 30.)

13

At the arbitration hearing, Miss Universe first offered testimony from Shugart.  (Sheena Decl., Exh. K, tr. 9:21 to 121:25.)  After giving background about the pageant, Shugart went on to discuss the texts and Facebook posts Sheena had made concerning the Miss USA Competition.  (<u>Id.</u>, Exh. K, tr. 72:24 to 99:18.)  Shugart also discussed Sheena's appearance on the Today Show, notwithstanding these comments were not mentioned in the Statement of Claim.  Shugart stated that Sheena's statements were false and had a "negative impact on the Miss Universe organization."  (<u>Id.</u>, Exh. K, tr.99:23 to 100:3.)  Specifically, Shugart claimed that Miss Universe had lost a $5 million sponsorship, known as a "site fee" from BP that would have enabled them to hold the Miss Universe Pageant in Mississippi.  (<u>Id.</u>, Exh. K, tr.100:5 to 106:3.)  According to Shugart, Miss Universe had "secured the hotel and the venue, all of the goods and services [to hold the competition in Mississippi]," and all that was left was to get a "sponsorship" to "help pay for part of the production."  (<u>Id.</u>, Exh. K, tr. 102:15-21, 117:23-25.)

Shugart testified that after the Miss USA Pageant, a representative from BP reached out to her and said they were "very concerned about image, obviously they had to deal with the oil spill and they were very concerned about their image in the public . . ." and that they would get back to Miss Universe about the sponsorship.  (<u>Id.</u>, Exh. K, tr. 103:7-103:20.)  Shugart then testified, without offering specifics, that the deal with BP fell apart.  (<u>Id.</u>)  Tellingly, Shugart testified that BP did not offer any specifics about why it would not pay the sponsorship fee, testifying only that BP was "very, very careful about how they chose their words, and it is, you know, we are very image conscious right now."  (<u>Id.</u>, Exh. K, tr. 119:21-120:3.)  Shugart did not identify with whom she spoke at BP, <u>nor did she testify that BP cited Sheena's comments (or even heard Sheena's comments) on the Today Show as the reason why it would not pay the sponsorship fee</u>.  Nobody from BP testified at the hearing.

14

The remainder of Miss Universe's presentation at the hearing primarily focused on offering testimony by an expert as to the loss of value to the Miss Universe "brand" due to Sheena's comments.  (Id., Exh. K.)  Despite the limited scope of the Statement of Claim addressing only Sheena's two Facebook posts, both Sheena's Facebook posts and her Today Show appearance were referenced interchangeably throughout the hearing.  (Id., Exh. K.)

## I.      The Decision.

On December 13, 2012, JAMS e-mailed a copy of the Award to all counsel. (Klineburger Decl., Exh. P.)  Arbitrator Katz found that Sheena had defamed Miss Universe, but she had not breached any agreement with Miss Universe or tortiously interfered with any contracts.[4]  With respect to the defamation claim, Arbitrator Katz found that Sheena intentionally made certain false statements concerning the Miss USA Pageant in her Facebook posts and during her appearance on the Today Show.  (Klineburger Decl., Exh. Q.)

As to Miss Universe's damages, Arbitrator Katz first noted that Miss Universe had sought actual damages of $5 million for the loss of BP's sponsorship and damages between $4.3 million and $7.6 million for purported loss of the Miss Universe brand's market value.  With respect to these damage claims, Arbitrator Katz found that Miss Universe's alleged loss of market value had "not been established with reasonable degree of likelihood, no less certainty." Thus, Arbitrator Katz denied Miss Universe such damages.  (Id., Exh. Q, p. 14.)  Arbitrator Katz found, however, that Sheena's statements on the Today Show caused BP to withdraw its sponsorship and, therefore, awarded Miss Universe $5 million in actual damages.  (Id., Exh. Q, pp. 12-14.)

Importantly, Arbitrator Katz explicitly found that the posts on Sheena's Facebook page

---

[4] The Statement of Claim set forth three distinct causes of action, two of which were dismissed by Arbitrator Katz.  Arbitrator Katz also denied Miss Universe's request for injunctive relief.

were "not disseminated generally to the public nor to entities likely to do business with [Miss Universe]" and therefore could not have caused the loss of BP's sponsorship. (Id., Exh. Q, p. 16.) Thus, the sole damages awarded by Arbitrator Katz were apparently based on statements Sheena made on the Today Show, an issue not asserted in Miss Universe's Statement of Claim (and which statements were not seen by BP according to any testimony).

After JAMS circulated the Award, and in his first correspondence concerning this matter in over a month, Klineburger e-mailed Stockman at JAMS, stating:

> I never requested to go forward with arbitration in the above captioned matter. For some strange reason, you people think by sending me bills and correspondence relating to a matter in which I had no involvement, somehow or another makes me responsibility [SIC]. Let me make this clear:  I do not represent Ms. Monnin with regard to this matter.  I did not sign any documentation subjecting either myself or Ms. Monnin through this process. Please stop bothering me.  This is annoying.  I owe nothing.

> (Id., Exh. R.)

That same day, Klineburger wrote to Sheena:

> It seems that despite evert [SIC] effort on my part in indicating that we were not proceeding with the arbitration, the attorneys for Miss Universe and Donald Trump went ahead and had arbitration without anyone present on your behalf.  I am not licensed to practice law in the State of New York.  Therefore, I cannot give you advice on this arbitration matter.

> (Sheena Decl., ¶ 81.)

Needless to say, Sheena was shocked to receive Klineburger's letters stating that an arbitration hearing had been held in her absence, that he did not represent her in that matter, that he allegedly did not possess the requisite license to do so, and that an Award had been rendered. (Id., ¶ 82.)  Thereafter, Sheena requested copies of all the papers filed with JAMS.  Included among the papers was a signed copy of the agreement containing an arbitration provision (which JAMS never provided to Klineburger).  (Id., ¶ 83.)

16

## LEGAL ARGUMENT

**I.    THE COURT SHOULD VACATE THE DECEMBER 10, 2012
         ARBITRATION AWARD ENTERED AGAINST SHEENA.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (2006), allows for the *vacatur*

of an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue
> means;
>
> (2) where there was evident partiality or corruption in the
> arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to
> postpone the hearing, upon sufficient cause shown, or in refusing
> to hear evidence pertinent and material to the controversy; or of
> any other misbehavior by which the rights of any party have been
> prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly
> executed them that a mutual, final, and definite award upon the
> subject matter submitted was not made.
>
> [9 U.S.C. § 10(a).]

The Second Circuit has also recognized that a District Court may vacate an arbitration

award that exhibits a "manifest disregard" of the law.  Stolt-Nielsen SA v. AnimalFeeds Int'l

Corp., 548 F.3d 85, 91 (2d Cir. 2008) rev'd on other grounds, 130 S. Ct. 1758 (2010).

A review of the Award makes clear that a *vacatur* is necessary.  First, Section 10(a)(4) of

the FAA requires a *vacatur* of the Award because Arbitrator Katz exceeded his power by

considering and deciding the arbitration based on issues and purported damages not raised in

Miss Universe's Statement of Claim.  Second, Section 10(a)(3) of the FAA requires that the

Award be vacated because Sheena's rights were prejudiced by her failure to get adequate notice

of the claims being asserted against her and the hearing date, particularly because she had valid

and meritorious defenses to the allegations.  Finally, Arbitrator Katz exhibited a "manifest

disregard" of the law in his decision, which is a third basis for the Court to vacate this horribly unfair Award. Each of these three reasons, on its own, requires that the Award be vacated.

### A.    The Arbitrator Exceeded His Powers.

A District Court should vacate an award where, as here, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); Phil Neto Constr. Co. v. Local Union 964, 1995 WL 105285, at *2 (S.D.N.Y. Mar. 13, 1995) (vacating award to extent arbitrators addressed issues not submitted). This "clearly" occurs when arbitrators award damages based on claims that were not raised in the petitioner's statement of claim. Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc., 607 F.2d 649, 651 (5th Cir. 1979). In fact, "[i]t is indisputable that arbitrators have no authority to rule on an issue not submitted to them." Harper Ins. Ltd. v. Century Indem. Co., 819 F. Supp. 2d 270, 277 (S.D.N.Y. 2011) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)); see also Spear, Leeds & Kellogg v. Bullseye Securities, Inc., 738 N.Y.S.2d 27 (N.Y.A.D. 1st Dept., 2002) (arbitrators exceeded their authority by granting relief on claims not asserted in the statement of claim).

Here, Miss Universe pled three claims in its Statement of Claim that were predicated on Sheena's June 4 and 5, 2012 Facebook posts. Miss Universe first alleged that Sheena's Facebook posts were defamatory, resulting in damages to Miss Universe's brand and $5 million of alleged actual damages based on the alleged loss of BP's sponsorship. Second, Miss Universe alleged that Sheena's comments violated the agreement between the parties, resulting in the same damages. Third, Miss Universe alleged a tortious interference claim. Sheena's Today Show appearance does not even appear in the Statement of Claim, let alone serve as the factual predicate for Miss Universe's claims.

Despite the absence of any such references in the Statement of Claim or notice to Sheena

18

on these issues, Arbitrator Katz found Sheena defamed Miss Universe through her Today Show appearance and apparently caused Miss Universe to lose its $5 million sponsorship from BP. This is the only plausible basis for Arbitrator Katz's decision because he unambiguously: (1) denied Miss Universe's breach of contract and tortious interference claims; and (2) found Sheena's Facebook posts did not cause damage to Miss Universe.  (Klineburger Decl., Exh. Q.) With respect to the latter point, Arbitrator Katz held that Sheena's posts were "not disseminated generally to the public nor to entities likely to do business with [Miss Universe]."  (Id., p. 16.) Thus, the sole damages awarded by Arbitrator Katz must have been based on Sheena's Today Show appearance, a claim not asserted in the Statement of Claim (and which no one testified was seen by BP).  Arbitrator Katz, therefore, had no authority to find that Sheena's Today Show appearance defamed Miss Universe or caused it to lose the BP sponsorship.  See Totem Marine Tug, 607 F.2d at 651.

        In Totem Marine, the Court vacated an arbitration award under similar circumstances. There, the respondent, Totem, chartered a boat owned by the claimant, North American, for six months.  With two months left under the parties' contract, Totem returned the boat early, claiming the vessel required too many repairs and was causing too many delays.  Id., at 650. Pursuant to the parties' contract, North American commenced an arbitration.  In its Statement of Claim, North American sought the specific contract amount for returning the vessel early, $45,000.  Id.  Despite North American's specific demand, however, the arbitrators developed a new theory of liability for Totem based on the money that North American would have made in the final two months of the contract.  Id.  Thus, the arbitrators entered an award against Totem for a substantially greater sum based on their newly created theory.

        Totem moved to vacate the award on the basis that the liability theory and additional

damages created by the arbitrators were never placed in issue in the arbitration proceeding.
North American acknowledged that it never specifically requested such damages, but claimed
that the matter "was naturally intertwined in the general scope of [its claim.]" Id. at 651.
Relying on 9 U.S.C. § 10(a)(4), the Court determined that it was improper for the arbitration
panel to award damages based on a theory not raised by the claimant. Id. The Court noted that
while arbitrators enjoy a broad grant of authority, "arbitrators are restricted to those issues
submitted," and regarding any extension of the subject matter beyond the issues submitted they
exceed their power as set forth in 9 U.S.C. § 10(a)(4). Id. In such a circumstance, the Court
held, the arbitrators ignored the dispute submitted by the parties and dispensed their "own brand
of industrial justice," an impermissible result. Id. at 652 (internal citations omitted).

In this case, Arbitrator Katz impermissibly held Sheena responsible for damages not set
forth in Miss Universe's Statement of Claim based on statements not alleged to be defamatory in
the Statement of Claim. Although Sheena's Today Show appearance may be somewhat related
to her Facebook posts, because the Statement of Claim was limited to the alleged defamatory
nature of her Facebook statements, it was improper for Arbitrator Katz to consider statements
she made on the Today Show as the sole basis for liability. Moreover, not only are facts
concerning the Today Show not pled in the Statement of Claim, similarly absent are any facts
concerning the alleged loss of BP's sponsorship and the hearsay testimony at the hearing does
not even tie the alleged lost sponsorship to any specific comments by Sheena. Nevertheless, the
Award relies exclusively on such facts and purported damages as the basis for the Award against
Sheena. As such, Arbitrator Katz exceeded his powers and, just like in Totem Marine, the
Award must be vacated.

### B.    Sheena Did Not Receive Adequate Notice of the Arbitration.

The Award must also be vacated because Sheena did not receive actual and adequate

notice of the hearing.  Section 10(a)(3) of the FAA provides that a federal court may vacate an arbitration award if "the arbitrators were guilty of misconduct in . . . misbehavior by which the rights of the party have been prejudiced." 9 U.S.C. § 10(a)(3).  Although an arbitrator is not required to comport with the strictures of formal court proceedings in conducting the arbitration hearing, he or she must nevertheless "grant the parties a fundamentally fair hearing." Bell Aerospace Co. Div. Of Textron, Inc. v. Local 516, UAW, 500 F.2d 921, 923 (2d Cir. 1974).

Fundamental fairness requires that a party receive "notice before adverse judicial action is taken against him." Lugo v. Keane, 15 F.3d 29, 30 (2d Cir. 1994). Where, as here, "this procedural due process requirement is not met, a district court will not hesitate to vacate the award." Kaplan v. Alfred Dunhill of London, Inc., 1996 WL 640901, *5 (S.D.N.Y. Nov. 4, 1996) (internal citations omitted). In Kaplan, for example, even though defendant acknowledged receiving notice that an arbitration had been commenced, the Court vacated the award because the defendant had submitted "substantial, undisputed evidence demonstrating that it did not receive notice of the hearing and that it immediately took steps to rectify the situation once it learned a hearing had been held in its absence . . . ." Kaplan, 1996 WL at *5, 7.

Sheena did not receive actual or adequate notice of the arbitration hearing.  From the outset, Sheena's attorney repeatedly represented to her that she need not participate in any arbitration because, among other reasons, neither JAMS nor counsel for Miss Universe ever produced a signed copy of an arbitration agreement and she had resigned thereby terminating any such agreement.  In fact, Klineburger reiterated this position to JAMS, in writing, on no less than four different occasions.  (Klineburger Decl., Exhs. D, H, J, and L.)  Despite this, JAMS never responded to Klineburger to dispute his position or to provide a signed copy of the parties' agreement, which JAMS must have received to commence an arbitration under Rule 5 of its

21

Streamlined Arbitration Rules.  Klineburger, in turn, did not forward any of JAMS' notices to Sheena after September 5, 2012.  (Id., ¶ 24; Sheena Decl., ¶ 71.)  As a result, Sheena had absolutely no knowledge that the arbitration was proceeding or had proceeded in her absence on November 5, 2012.[5]  As soon as Sheena found out that an arbitration went forward in her absence and that Arbitrator Katz entered the Award, she reached out to JAMS to obtain all the documents from the hearing and to inquire about her rights.  (Sheena Decl., ¶ 83.)  Thus, just like the defendant in Kaplan, Sheena was without actual knowledge of the hearing through no fault of her own and, upon learning of the award, made immediate efforts to rectify the situation.  This Court should not allow the Award, procured without Sheena receiving due process, to stand.

Sheena was also not given proper notice that Miss Universe would seek damages as a result of statements made by Sheena on the Today Show or that the basis for such damages was the loss of BP as a sponsor.  JAMS' Streamlined Arbitration Rules & Procedures[6] require:

> Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim, or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice . . . .

> [Id., Rule 7.]

Despite this, and as elaborated upon above, Miss Universe's Statement of Claim makes no reference to Sheena's Today Show appearance, nor does it reference the loss of BP as a sponsor.  Absent notice of such facts, Sheena had no way to prepare for the arbitration hearing.

The lack of notice to Sheena was extremely prejudicial because Sheena was unable to

---

[5] Had Sheena learned that JAMS concluded her lawyer was incorrect, she would have defended herself at the arbitration because, as discussed herein, she has valid defenses to Miss Universe's claims.

[6] http://www.jamsadr.com/rules-streamlined-arbitration

present myriad meritorious defenses she had to Miss Universe's claims.  In particular, the extremely one-sided terms of Sheena's agreement with Miss Universe, as well as the egregious circumstances surrounding Sheena's execution of same, are without a doubt unconscionable, rendering the entire agreement unenforceable against Sheena.  Gendot Associates, Inc. v. Kaufold, 866 N.Y.S.2d 361, 363 (2008) ("showing that the contract was both procedurally and substantively unconscionable" renders the contract unconscionable and, therefore, "voidable.")  Moreover, absent Miss Universe's agents bombarding the airwaves with hyperbole about Sheena, Miss Universe's sponsors, like BP, likely never would have learned of Sheena's concerns regarding the Miss USA competition.  In fact, Arbitrator Katz confirmed as much when he held that Sheena's Facebook posts could not have been viewed by entities wishing to do business with Miss Universe.  Thus, it was Miss Universe's own conduct, not Sheena's, that likely caused the damages it suffered.  Finally, Sheena also was unable to present evidence of the numerous other Miss USA contestants who could verify the veracity of Sheena's concerns.  Such evidence would dispositively disprove that Sheena had any "actual malice" to defame Miss Universe, a necessary element of Miss Universe's claim.  See Celle v. Filipono Reporter Enters. Inc., 209 F.3d 163, 182 (2d Cir. 2000) (a public figure seeking to recover for defamation must establish that the alleged defamatory statement was made with "actual malice," that is, a subjective awareness of its falsity.  A defendant's honest belief in the truth of a statement will not satisfy this test).  Under these circumstances, where Sheena was precluded from presenting these clearly meritorious defenses, this Court should not hesitate to vacate the Award.

## C.   The Arbitrator Demonstrated a Manifest Disregard for the Applicable Law.

An arbitration award shall also be vacated when the arbitrator exhibits a "manifest disregard for the law."  T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 340

(2d Cir. 2010).  In T. Co Metals, the Second Circuit set forth the following elements for determining when an arbitrator has exhibited a manifest disregard for the law:

> First, we must consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter . . . .
>
> Second . . . we must find that the law was in fact improperly applied, leading to an erroneous outcome . . . .
>
> Third . . . we look to a subjective element, that is, the knowledge actually possessed by the arbitrators.
>
> Id. at 339  (internal citations omitted.)

Each of these factors is present here: (i) the law requiring that a claimant prove that its damages were underlined by the defamatory conduct is clear and was explicitly applicable to the issue before Arbitrator Katz; (ii) the law was "improperly applied" by Arbitrator Katz; and (iii) Arbitrator Katz was subjectively aware of the law, having relied on it in his decision.

More specifically, as recognized in Arbitrator Katz's decision, to recover on a claim for defamation, a claimant must prove:

> (1) a defamatory statement of fact pertaining to Claimant was published to a third party by Respondent; (2) Respondent's fault; (3) falsity of the defamatory statement; and (4) injury to Claimant.
>
> [Klineburger Decl., Exh. Q, p. 8 (citing Celle, 209 F.3d at 176).]

Arbitrator Katz rightly recognized that where economic damages are claimed, as here, they must be proven.  (Id., p. 12.)  Indeed, as the Second Circuit in Celle v. Filipono Reporter Enters. Inc., the very case relied on by Arbitrator Katz, held, to prove such damages a claimant must establish "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation." Id., at 179.  Arbitrator Katz relied on the Celle case in his decision.  Thus, the law requiring proximate causation between claimant's damages and the alleged defamatory conduct was both objectively and subjectively

24

before Arbitrator Katz, satisfying the first and third element of the "manifest disregard" test.

Despite Arbitrator Katz's knowledge of the applicable law regarding causation, however, he clearly disregarded same in erroneously concluding that Miss Universe was entitled to recover $5 million, representing the loss of the BP sponsorship fee.[7]   Indeed, there was absolutely no evidence offered at the arbitration hearing to suggest Sheena's comments caused BP to cancel its sponsorship.   To the contrary, the only testimony on this subject was from Shugart, who testified that unidentified BP representatives were "very, very careful about how they chose their words" when they walked away from the sponsorship opportunity.   (Sheena Decl., Exh. K, tr. 119:21-120:3.)   More importantly, Shugart did not testify that BP cited Sheena's comments as the reason for its refusing to pay a sponsorship fee.   Indeed, there was absolutely no evidence to support Arbitrator Katz's finding.   Such a blatant disregard for the required elements of a defamation claim easily satisfies the final element of the "manifest disregard" test and the Award must be vacated to correct this grave injustice to a 27 year old woman with her whole life ahead of her.

## CONCLUSION

For the reasons set forth herein, respondent Sheena Monnin respectfully requests this Court grant her cross-motion to vacate the Award and deny Miss Universe's Petition.

DATED: New York, New York
      February 5, 2013

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Respondent, Sheena Monnin

By: */s/ Steven R. Klein*
    Steven R. Klein (*pro hac vice*)

---

[7] Arbitrator Katz also clearly erred by finding that Miss Universe had suffered $5 million in damages from the loss of BP.  To the contrary, Shugart's testimony makes clear that the $5 million was going to be used, in part, to help pay for hosting the competition in Mississippi.  After the competition moved back to Las Vegas, Miss Universe clearly mitigated any damages it suffered.  Any monies saved from the change in venue should have been deducted from any "damages" awarded to Miss Universe but were not, another error in Arbitrator Katz's decision.