# EXHIBIT B

JAMS -- NEW YORK, NEW YORK

| | |
|---|---|
| MISS UNIVERSE L.P., LLLP,<br><br>                                Claimant,<br><br>        -against-<br><br>SHEENA MONNIN,<br><br>                              Respondent. | JAMS Case no.<br><br>**STATEMENT OF CLAIM** |

        Claimant MISS UNIVERSE L.P., LLLP (the "Miss Universe Organization," the "MUO" or "Claimant"), and as for its Statement of Claim against Respondent SHEENA MONNIN ("Monnin" or "Respondent"), hereby alleges as follows:

### NATURE OF THE ACTION

        1.    This case arises from respondent Sheena Monnin's wanton and malicious publication of false and libelous statements concerning MUO's 2012 Miss USA Pageant competition. Monnin's statements were designed to and did disparage MUO's reputation, harm its business relationships, and thrust Monnin, a disgruntled competitor, into the limelight through improper means after she was unable to succeed through legitimate means. Monnin's libelous statements resulted in harm to MUO's reputation and business.

        2.    Monnin also breached various agreements including her Official Entry Form/Contract for the 2012 Miss USA Pageant and Official Entry Form/Contract for the 2012 Miss USA Pennsylvania Pageant by making disparaging statements about MUO in violation of her contractual obligations.

        3.    MUO seeks compensatory and punitive damages in an amount not less than $10 million, among other relief, for libel per se, tortious interference with prospective economic advantage and breach of contract.

## PARTIES

4.  Claimant Miss Universe L.P., LLLP, is a Delaware Limited Liability Limited Partnership with its principal place of business at 1370 Avenue of the Americas, New York, New York 10019. Claimant, commonly known as the Miss Universe Organization, is a Donald J. Trump and NBCUniversal joint venture. MUO owns and runs the Miss Universe, Miss USA and Miss Teen USA pageant competitions.

5.  Upon information and belief, Respondent Sheena Monnin was the 2012 Miss USA contestant representing the Commonwealth of Pennsylvania.

## JURISDICTION

6.  Jurisdiction herein is proper pursuant to Section 22 of the Entry Form/Contract for the 2012 Miss USA Pageant, which provides in part that:

> If any controversy or claim arising out of or relating to this Agreement, the breach of any term hereof, or my participation in or in connection with the Pageant cannot be settled through direct discussions, the parties agree to endeavor first to settle the controversy or claim by mediation conducted in the County of New York, State of New York and administered by JAMS or its successors ("JAMS") under its applicable rules, before commencing any proceedings permitted under this paragraph. Notwithstanding the foregoing, if any party files suit in court, the other party or parties need not demand mediation to enforce the right to compel arbitration **If any controversy or claim is not otherwise resolved through direct discussions or mediation, it shall be resolved by binding arbitration conducted in the County of New York, State of New York, and administered by JAMS in accordance with its Streamlined Arbitration Rules and Procedures or subsequent versions thereof, including the optional appeal procedure (the "JAMS Rules").** The JAMS Rules for selection of an arbitrator shall be followed, except that the arbitrator shall be an arbitrator either experienced in the entertainment industry and licensed to practice law in New York or a retired New York State Supreme Court or federal judge. Any appellate panel shall consist of three neutral members, subject to the foregoing requirements. Upon conclusion of any arbitration proceedings hereunder, the arbitrator shall render findings of fact and conclusions of law and a written opinion setting forth the basis and reasons for any decision he or she has reached and shall deliver such documents to each party to the Agreement along with a signed copy of the award. Any judgment upon an award rendered by an arbitrator may be entered in any state or federal court in the County of New York, New York having jurisdiction of the subject matter hereof. The parties agree that any mediation and arbitration proceedings, testimony, and discovery, along with any

2

documents filed or otherwise submitted in the course of any such proceedings (and including the fact that the mediation or arbitration is even being conducted) shall be confidential and shall not be disclosed to any third party, except to the mediators or arbitrators and their staff, the parties' attorneys and their staff, and any experts retained by the parties. Notwithstanding the foregoing, a party may disclose limited information if required in any judicial proceeding brought to enforce these arbitration provisions or any award rendered hereunder. Furthermore, notwithstanding the foregoing, you may, in your sole judgment, commence a judicial proceeding seeking temporary restraining orders, preliminary injunctions or other interlocutory or equitable relief.

(emphasis added.)

7. The claims in this arbitration arise out of Monnin's breach of her Entry Form Contracts for the 2012 Miss USA Pageant and 2012 Miss Pennsylvania USA Pageant and relate to Monnin's participation in the 2012 Miss USA Pageant.

## STATEMENT OF FACTS

8. On June 3, 2012, the Miss USA Pageant was held in the Theatre for the Performing Arts in Las Vegas, Nevada. The contestants in the Miss USA pageant are the winners of state pageants held across the nation. The winner of each state carries the title Miss [STATE] USA and these winners are the only competitors allowed to compete in the annual Miss USA pageant.

9. Monnin was the winner of Pennsylvania's pageant and held the title 2012 Miss Pennsylvania USA. She represented Pennsylvania in the 2012 Miss USA Pageant.

10. Traditionally, only naturally born females could participate in MUO's pageants. In April 2012, MUO altered the rules governing its competition to permit transgendered contestants. In the spring of 2012, Jenna Talackova, a transgendered person, participated in a Canadian Pageant sanctioned by MUO.

### Monnin Becomes Disgruntled and Disapproves of MUO Policies

11. On information and belief, Monnin did not approve of the participation of a transgendered person in MUO's pageants.

3

12. After failing to advance in the Miss USA Pageant on June 3, 2012, Monnin became disgruntled. On the morning of June 4, 2012, Monnin resigned her title as 2012 Miss Pennsylvania USA. Monnin represented in an email to Randy Sanders of Sanders & Associates LLP, the entity licensed to conduct the Pennsylvania pageant, that she was resigning her title because MUO's acceptance of transgendered participants went against "every moral fiber" of her being. Monnin wrote:

> I am officially and irrevocably resigning the title of Miss Pennsylvania USA 2012. I refuse to be part of a pageant system that has so far and so completely removed itself from its foundational principles as to allow and support natural born males to compete in it. This goes against ever moral fiber of my being. I believe in integrity, high moral character, and fair play, none of which are part of this system any longer.

13. On or about June 4, 2012, Monnin launched a false and malicious campaign assailing the integrity of the MUO on the social media site Facebook, which can be found on the internet at www.facebook.com.

14. In a June 4, 2012 post on Monnin's Facebook page, Monnin publically announced that she was resigning her title as 2012 Miss Pennsylvania USA as follows:

> I have decided to resign my position as Miss Pennsylvania USA 2012. Effective immediately I have voluntarily, completely, and utterly removed myself from the Miss Universe Organization. In good conscience I can no longer be affiliated in any way with an organization I consider to be fraudulent, lacking in morals, inconsistent, and in many ways trashy. I do not support this system in any way. In my heart I believe in honesty, fair play, a fair opportunity, and high moral integrity, none of which in my opinion are part of this pageant system any longer.

15. In a June 5, 2012 post on Monnin's Facebook page Monnin, however, provided a different reason for her resignation to the public – fraud. Her announcement stated that the Miss USA Pageant had been rigged. Monnin explained her resignation as follows:

> I agree that it is my moral obligation to state what I witnessed and what I know to be true. I will relay to you the reasoning behind my resignation. I witnessed another contestant who said she saw the list of the Top 5 BEFORE THE SHOW

4

EVER STARTED proceed to call out in order who the Top 5 were before they were announced on stage. Apparently the morning of June 3rd she saw a folder lying open to a page that said 'FINAL SHOW Telecast, June 3, 2012' and she saw the places for Top 5 already filled in. Thinking she was just seeing a rehearsal fake top 5 from a previous day she walked away, then realized that it had without a doubt been labeled as the Final Show Telecast, June 3rd. After the Top 16 were called and we were standing backstage she hesitantly said to me and another contestant that she knew who the Top 5 were. I said 'who do you think they will be?' She said that she didn't 'think' she 'knew' because she saw the list that morning. She relayed whose names were on the list. Then we agreed to wait and see if that was indeed the Top 5 called that night. After it was indeed the Top 5 I knew the show must be rigged; I decided at that moment to distance myself from an organization who did not allow fair play and whose morals did not match my own. That is all I know about this. If this contestant would like to step forward as an eye witness and as being the one who saw the sheet with the Top 5 already selected before the judges ever saw the Top 16, then perhaps action can be taken. As for me, I believe her words and I will not encourage anyone to compete in a system that in my opinion and from what I witnessed is dishonest.

(emphasis in original.)

16. Monnin's false statements were asserted as fact because it states that she "knew the show must be rigged."

17. The libelous post concerning MUO has been republished and widely disseminated by the media in print, radio, television and via the internet. Numerous individuals posted comments on Monnin's Facebook page in response to her post.

18. On information and belief, Monnin was motivated to make false statements disparaging MUO because she harbored ill-will stemming from her failed pursuit of the Miss USA Pageant crown.

19. Monnin was highly critical of MUO's decision to permit a transgendered contestant to compete in the Miss Universe Canada Pageant. On information and belief, Monnin's statements regarding the purported rigging of the Miss USA Pageant were designed to assail the reputation of MUO because she disagreed with MUO's decision to include transgendered contestants.

20. On information and belief, Monnin assailed the character of MUO to reap the benefits of increased media attention following such claims. Monnin's post has thrust her into the limelight.

### Monnin's Facebook Post Was False

21. The scoring process for the Miss USA Pageant is tightly controlled. The scores are tabulated by independent auditors from the well-regarded accounting firm Ernst & Young, and the eight celebrity judges are monitored by security personnel.

22. The scoring of the 2012 Miss USA Pageant was the result of this tightly controlled, carefully monitored and extremely scrupulous scoring process.

### Monnin Was Obligated By Contract Not to Disparage MUO

23. In Section 5 of Entry Form/Contract for the 2012 Miss USA Pageant, Monnin agreed to obey certain terms and conditions regarding her participation in the Pageant.

24. For example, in Section 5(b) of this agreement, Monnin consented to abide by the "rules, instructions, directions and requirements" set forth in the Contestant Handbook and in the Entry Form/Contract for the 2012 Miss USA Pageant.

25. Section 5(f) includes an agreement by Monnin not to "violate the rights of any other person or entity," or "cause harm to any person" "in connection with [Monnin's] participation in the 2012 Miss USA Pageant."

26. Section 5(I) includes an agreement not to "engage in any activity" that would result in "disrepute, ridicule, contempt or scandal or might otherwise reflect unfavorably upon" MUO, and other entities related to the Miss USA Pageant.

27. Monnin was also obligated by the Entry Form/Contract for the 2012 Miss USA Pennsylvania Pageant not to defame MUO. For example, Section 5(4) of the Entry

6

Form/Contract for the 2012 Miss USA Pennsylvania Pageant required Monnin "not to engage in any conduct, acts or omissions that may be detrimental to [the] Miss USA Pageant."

### Monnin's Statements Injured MUO

28.  Monnin's statements impugned the reputation of the Claimant by stating that the Miss USA Pageant was a fraud. Statements that MUO duped the public and pageant-contestants and otherwise acted dishonestly have the tendency to undermine (and have undermined) the public's perception of MUO's integrity.

29.  MUO expends enormous resources supporting and promoting various pageants. Through the more than 60 years of Miss USA pageants, and the other competitions run by MUO, MUO has developed an impeccable reputation in the community. It has taken measures to build and protect that reputation. For example, MUO requires participants vying for the Miss USA crown to act with restraint, including by not disparaging the contestant's title, harassing others, or engaging in lewd behavior. MUO even requires Miss USA Pageant contestants to execute a detailed contestant entry form governing a contestant's behavior, the violation of which could result in the forfeit of the contestant's state title.

30.  Respondent's statements regarding the purported rigging of the Miss USA contest falsely brand MUO as a dishonest business which defrauds the public and pageant-participants into believing that the Miss USA Pageant is a merit-based competition held according to set rules. Nothing could be further from the truth.

31.  The false statements made by Monnin have caused MUO to suffer extensive damage and loss, including loss of reputation and public confidence. In addition MUO has suffered or may suffer the loss of business, including pageant entrants, sponsorship and advertising. MUO has incurred considerable attorneys' fees and expenses as it has had to vindicate its good name through a positive campaign with the media, to salvage its reputation and business relationships.

## FIRST CLAIM FOR RELIEF

### (Defamation - Libel)

32. Claimant re-alleges and incorporates herein by reference paragraphs 1 through 31 above.

33. On June 5, 2012, Respondent posted false statements on the world wide web through the website www.Facebook.com that the Miss USA Pageant was "rigged." The particular words posted by Monnin are set forth in paragraph 15.

34. The statements published by Respondent are false statements purported to be fact, and not of opinion, that the Miss USA Pageant was fraudulently and dishonestly conducted.

35. In publishing the false statements, Respondent acted with hatred, spite, or ill-will toward MUO, was aware of the probable falsity of the publication or acted in reckless disregard or with gross irresponsibility as to whether the information published was false.

36. Respondent made the false statements knowing that her posting on www.Facebook.com would be visible and available over the internet to anyone who had the ability to access the internet. Monnin's statements were broadly distributed throughout the United States, and were re-published by news and other media outlets.

37. As a direct result of the false statements and publication made by Respondent, Claimant has suffered a loss of its reputation, good name, honor, integrity and respect in the community as a whole.

## SECOND CLAIM FOR RELIEF

### (Tortious Interference with Prospective Economic Advantage)

38. Claimant re-alleges and incorporates herein by reference paragraphs 1 through 37 above.

39. Claimant had business relationships with several third party sponsors and advertisers in connection with MUO events. These sponsors and advertisers conduct business with MUO because of its reputation.

40. Respondent knew of MUO's relationships with these third party sponsors and advertisers and falsely claimed that the Miss USA Pageant was rigged with the intent of deliberately interfering with Claimant's business relationships with these sponsors and advertisers.

41. These statements were made maliciously and willfully, and were intended to cause harm to Claimant's business.

42. Claimant's interference, has resulted in harm to MUO's business dealings with its advertisers and sponsors.

### THIRD CLAIM FOR RELIEF

#### (Breach of Contract)

43. Claimant re-alleges and incorporates herein by reference paragraphs 1 through 42 above.

44. Claimant entered into contractual agreements with Respondent, including Entry Form Contracts for the 2012 Miss USA Pageant and 2012 Miss Pennsylvania USA Pageant.

45. Claimant performed its obligations under these agreements.

46. Respondent breached these agreements when she made false and disparaging statements about MUO.

47. As a result of these breaches of contract, Claimant suffered damages in an amount to be determined at a hearing.

9

## REQUEST FOR RELIEF

MUO respectfully requests an arbitration award in its favor against Ms. Monnin for the following relief:

(1) For compensatory damages according to proof, but in any event not less than $10 million;

(2) For punitive damages according to proof;

(3) Upon a finding in favor of MUO on its defamation claim, for a permanent injunction enjoining Respondent from issuing defamatory statements about Claimant to others through the, internet, in person, or through any other means;

(4) For costs of bringing this arbitration and other reasonable expenses;

(5) For any attorneys' fees incurred herein and;

(6) For such other relief as the Panel may deem just and proper.

Dated: June 25, 2012

New York, New York

CHADBOURNE & PARKE LLP

By _____

Scott S. Balber
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 408-5100
sbalber@chadbourne.com

Attorneys for Claimant Miss Universe L.P., LLLP