UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                            :

MISS UNIVERSE L.P., LLLP,              :

                         :

                 Petitioner,     :    12-cv-09174 (JPO)

                         :

          -against-          :

                         :

SHEENA MONNIN,                 :

                         :

               Respondent.   :

                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITIONER'S
PETITION TO CONFIRM ARBITRATION AWARD AND MEMORANDUM OF LAW
IN OPPOSITION TO RESPONDENT SHEENA MONNIN'S CROSS-MOTION TO
VACATE THE ARBITRATION AWARD**

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Phone: 212-479-6000

*Attorneys for Petitioner
Miss Universe L.P., LLLP*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

    1.   Monnin Made Defamatory Statements Against the MUO ................................... 2

    2.   Monnin's Claim That She Did Not Have Notice of the Arbitration is False ........ 3

    3.   The Arbitration and Award ................................................................................. 6

ARGUMENT ................................................................................................................. 7

I.     JUDICIAL REVIEW OF ARBITRATION AWARDS IS LIMITED ........................... 7

II.    MONNIN RECEIVED NOTICE OF THE HEARING THROUGH HER
      ATTORNEY .......................................................................................................... 8

III.   JUDGE KATZ DID NOT EXCEED HIS AUTHORITY IN ISSUING THE
      ARBITRATION AWARD ...................................................................................... 11

    A.   The MUO's Defamation Claim was Properly Submitted to Judge Katz ............ 12

    B.   The Damages Awarded Were Not Premised Solely on the Today Show
        Statements .......................................................................................................... 15

IV.   THE ARBITRATION AWARD WAS NOT RENDERED IN MANIFEST
      DISREGARD OF THE LAW .................................................................................. 17

CONCLUSION .............................................................................................................. 20

## TABLE OF AUTHORITIES

Page

**CASES**

*1199 SEIU United Healthcare Workers E. v. Lily Pond Nursing Home*,
  2008 WL 4443945 (S.D.N.Y. Sept. 29, 2008).......................................................................10

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.*,
  344 F.3d 255 (2d Cir. 2003)...............................................................................................11

*Barbier v. Shearson Lehman Hutton, Inc.*,
  752 F. Supp. 151 (S.D.N.Y. 1990)......................................................................................16

*Barbier v. Shearson Lehman Hutton Inc.*,
  948 F.2d 117 (2d Cir. 1991).................................................................................................8

*Capgemini U.S. LLC v. Sorensen*,
  2005 WL 1560482 (S.D.N.Y. July 1, 2005) .......................................................................14

*Carte Blanche (Singapore) Pte. Ltd. v. Carte Blanche Intern., Ltd.*,
  683 F.Supp. 945 (S.D.N.Y. 1988).......................................................................................14

*Celle v. Filipino Reporter Enterprises, Inc.*,
  209 F.3d 163 (2d Cir. 2000)...............................................................................................10

*Certain Underwriters at Lloyd's London v. Ashland, Inc.*,
  967 A.2d 166 (D.C. 2009) ..................................................................................................13

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*,
  923 F.2d 245 (2d Cir. 1991)..................................................................................................7

*DiRussa v. Dean Witter Reynolds*,
  121 F.3d 818 (2d Cir.1997).................................................................................................11

*Euromarket Designs, Inc. v. McGovern & Company, LLC*,
  2009 WL 2868725 (S.D.N.Y. Sept. 3, 2009)......................................................................10

*Executone Information Systems, Inc. v. Davis*,
  26 F.3d 1314 (5th Cir. 1994) .........................................................................................13, 14

*Frankel v. Sardis*,
  904 N.Y.S.2d 18 (App. Div. 1st Dept. 2010).......................................................................13

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
  552 U.S. 576 (2008)......................................................................................................17, 18

*Harper Ins. Ltd. v. Century Indem. Co.*,
  819 F. Supp. 2d 270 (S.D.N.Y. 2011)............................................................................11, 15

## TABLE OF AUTHORITIES
### (continued)

*In re Ibar Ltd.*,
   2003 WL 2012400 (S.D.N.Y May 2, 2003) ..........................................................19

*Ibar Ltd. v. American Bureau of Shipping*,
   92 Fed.Appx. 820 (2d Cir. 2004) .....................................................................19

*Josephthal & Co., Inc. v. Cruttenden Roth Inc.*,
   177 F. Supp. 2d 232 (S.D.N.Y. 2001) ........................................................11, 15

*McKinney v. Waterman S.S. Corp.*,
   925 F.2d 1 (1st Cir. 1991) ...............................................................................8

*New York Hotel & Motel Trades Council v. Hotel St. George*,
   988 F. Supp. 770 (S.D.N.Y. 1997) ...............................................................7, 8

*Ogodor v. City of New York*,
   2001 WL 21091 (S.D.N.Y. Feb. 26, 2001) ......................................................8

*Roffler v. Spear, Leeds & Kellogg*,
   13 A.D.3d 308, 788 N.Y.S.2d 326 (2004) .....................................................11

*Stolt-Nielsen v. AnimalFeeds Int'l Corp.*,
   130 S. Ct. 1758 (2010) ...................................................................................18

*Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*,
   607 F.2d 649 (5th Cir. 1979) .........................................................................14

*Valentine Sugars, Inc. v. Donau Corp.*,
   981 F.2d 210 (5th Cir. 1993) .........................................................................13

*Wall St. Associates, L.P. v. Becker Paribas Inc.*,
   27 F.3d 845 (2d Cir. 1994) .............................................................................16

*Wallace v. Buttar*,
   378 F.3d 182 (2d Cir. 2004) .....................................................................17, 18

*In re WorldCom, Inc.*,
   340 B.R. 719 (Bankr. S.D.N.Y. 2006) ...........................................................17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**STATUTES**

9 U.S.C.
   § 9......................................................................................................................................1
   § 10.....................................................................................................1, 8, 11, 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 5(b)(1)........................................................................................................9

This Memorandum is submitted on behalf of petitioner Miss Universe, L.P., L.L.L.P. (the "Miss Universe Organization" or the "MUO") in further support of its petition to confirm the arbitration award entered in its favor in the amount of $5,000,000 (the "Award"), pursuant to 9 U.S.C. § 9, and in opposition to the cross-motion brought by respondent Sheena Monnin ("Monnin") to vacate the Award pursuant to 9 U.S.C. § 10.

## PRELIMINARY STATEMENT

Monnin's opposition to the MUO's Petition to Confirm is nothing more than a last-ditch effort to escape an arbitration award properly entered against her.  Despite having sufficient notice, neither Monnin nor her attorney appeared at the arbitration hearing (the "Hearing") or presented any evidence on Monnin's behalf.  The arbitrator, the Honorable Theodore H. Katz, a retired Magistrate Judge of the Southern District of New York ("Judge Katz"), heard testimony and received evidence, and properly found that Monnin had defamed the MUO and caused the MUO damages in the amount of $5,000,000.  Monnin now comes before this Court with a motion based not on legal principle, but on complaints of dissatisfaction with her arbitration counsel.  Unfortunately for Monnin, this confirmation proceeding is not the forum for an airing of grievances against her former attorney.

The record is clear that (1) Monnin, through the attorney who appeared on her behalf, had notice of the arbitration Hearing; (2) all of the issues decided by Judge Katz were submitted to him during the course of the arbitration proceedings; and (3) the Award was rendered in accordance with the law, not in manifest disregard of it.   Despite Monnin's protestations, the arbitration was in all respects proper, and the Award is final and binding.  Monnin's opposition falls far short of the extraordinarily high standard required to vacate an arbitration award under the Federal Arbitration Act.  Accordingly, Petitioner respectfully requests that its Petition to

Confirm the Arbitration Award be granted, and that Monnin's Cross-Motion to Vacate the Award be denied.

## STATEMENT OF FACTS

Respondent contends that the arbitration award entered against her should be vacated because (1) she did not receive adequate notice of the arbitration; (2) the arbitrator exceeded his authority in issuing the award; and (3) the award was entered in manifest disregard of the law. Respondent's Memorandum of Law in Opposition to Petitioner's Petition to Confirm the Arbitration Award and in Support of Respondent's Cross-Motion to Vacate the Arbitration Award ("Monnin Br.") at 2. A review of the record demonstrates absolutely no basis for these claims and, instead, mandates confirmation of the arbitration award.

### 1.      Monnin Made Defamatory Statements Against the MUO

Monnin competed in the 2012 Miss USA Pageant (the "Pageant") as Miss Pennsylvania USA 2012, a title she won in December 2011. Declaration of Richard F. Klineburger, III in Opposition to Petitioner's Petition to Confirm the Arbitration Award and in Support of Cross-Motion to Vacate the Arbitration Award ("Klineburger Decl."), ¶ 29, Exh. P (Final Arbitration Award) at 4. After failing to be selected as a semi-finalist, Monnin became disgruntled, and quickly began making false and defamatory allegations against the MUO. Even as the Pageant was still ongoing, Monnin began sending spurious text messages alleging that the Pageant was "f-ing rigged." *Id.* The next morning, on June 4, 2012, Monnin emailed the state director of the Miss Pennsylvania competition that she was resigning from her title as Miss Pennsylvania 2012, citing her disagreement with the MUO's decision to allow transgendered contestants to participate in the competition that year. Monnin wrote: "I refuse to be part of a pageant system that has so far and so completely removed itself from its foundational principles as to allow and support natural born males to compete in it. This goes against every moral fiber of my being."

*Id*. at 5.  That night, Monnin posted her resignation on Facebook, writing that she considered the MUO "fraudulent, lacking in morals, inconsistent, and in many ways trashy." *Id*.  On June 5, 2012 Monnin posted again on Facebook, this time no longer expressing her disagreement with the MUO's decision to allow transgendered contestants to compete but alleging, falsely, that the Miss USA Pageant was "rigged," "dishonest," and generally fraudulent.  *Id*. at 5-6.

Monnin's Facebook accusations were widely publicized and received a great deal of media attention, but Monnin's accusations did not end on Facebook.  *Id*. at 6.  On June 8, 2012, Monnin appeared on NBC's Today Show (the "Today Show").  Although Monnin now claims that she was not on the Today Show to "'destroy' or to 'bad talk' anybody," Monnin Br. at 9, Monnin used her television appearance to repeat her false allegations of fraud and disparage the integrity of the MUO before a national television audience (the "Today Statements").  *Id*. at 6-7.

### 2.     Monnin's Claim That She Did Not Have Notice of the Arbitration is False

As a condition to entering the Pageant, Monnin signed a Miss USA Pageant Entry Form (the "Agreement"), which constituted a binding agreement between the MUO and Monnin. Paragraph 22 of the Agreement contains an arbitration clause, which provides,

> [i]f any controversy or claim arising out of or relating to this Agreement, the breach of any term hereof, or my participation in or in connection with the Pageant… is not otherwise resolved through direct discussions or mediation, it shall be resolved by binding arbitration conducted in the County of New York, State of New York, and administered by JAMS….

Declaration of Scott Balber ("Balber Decl."), ¶ 7, Exh. A at ¶ 22 (Miss USA Pageant Entry Form).  After efforts to contact Monnin were unsuccessful, the MUO commenced a JAMS arbitration against Monnin (the "Arbitration") on June 25, 2012.  Balber Decl., ¶ 8, Exh. B (Proof of Service dated June 25, 2012).

The MUO, through its attorneys, engaged in extensive correspondence with both Monnin and her attorney, Richard Klineburger ("Klineburger").  As set forth below, Monnin and her

counsel received routine, consistent communications about the Arbitration from both the MUO
and JAMS and were fully aware of each stage of the proceedings.

- On June 6, 2012, immediately following Monnin's Facebook comments, the MUO
  notified Monnin directly that it intended to assert claims arising out of her false and
  defamatory statements, and directed her to retain all documents and electronic
  information relating to the MUO or the Miss Universe Pageant.  Balber Decl., ¶ 9, Exh. C
  (June 6, 2012 Letter from S. Balber to S. Monnin).

- On June 7, 2012, the MUO commenced a mediation, through JAMS, as contemplated by
  the arbitration clause in the Agreement.  Monnin was sent a copy of that commencement
  letter.  Balber Decl., ¶ 10, Exh. D (June 7, 2012 Letter from S. Balber to JAMS).
  Monnin did not respond to either of these communications.

- As a result, on June 12, 2012,  the MUO attempted to contact Monnin by e-mail to
  schedule the mediation on June 20, 2012.  Balber Decl., ¶ 11 , Exh. E (June 12, 2012 e-
  mail from L. Schapira to S. Monnin).

- In light of Monnin's failure to participate in the mediation, the MUO commenced the
  Arbitration by serving Monnin with its Demand for Arbitration, Statement of Claim, and
  a copy of the Agreement, which contained the arbitration clause, on June 25, 2012, and
  filed the same documents with JAMS.  Balber Decl., ¶ 8, Exh. B (June 25, 2012
  Certificate of Service).  Monnin was served with the Demand for Arbitration and
  Statement of Claim on June 26, 2012.  Monnin Decl., ¶ 64.

- On June 28, 2012, eight days after the mediation was to have commenced and two days
  after Monnin received the MUO's Demand for Arbitration, the MUO received its first
  letter from Klineburger.  Klineburger wrote that he had "been retained to represent
  Sheena Monnin with regard to the [the MUO request for JAMS mediation] along with a
  [sic] ancillary claims against your client and/or relevant third parties."  Klineburger
  copied Monnin on that letter.  Balber Decl., ¶ 12, Exh. F (June 28, 2012 Letter from R.
  Klineburger to S. Balber).

- JAMS officially commenced the Arbitration on July 2, 2012, and sent notice of the
  Commencement of Arbitration to both the MUO's attorneys and Monnin.  Balber Decl.,
  ¶ 13, Exh. G (July 2, 2012 JAMS Notice of Commencement of Arbitration).

- In response, on July 3, 2012, Klineburger wrote to the MUO, stating that Monnin was not
  subject to the terms of the Agreement, and "w[ould] not be participating in any JAMS
  Arbitration."  Klineburger sent a copy of that letter to the JAMS Resolution Center.
  Klineburger Decl., ¶ 7, Exh. C (July 3, 2012 Letter from R. Klineburger to S. Balber).

- On July 13, 2012, JAMS appointed Judge Katz as the arbitrator for the case, and sent
  notice of that appointment to both the MUO's attorneys and Monnin.  Balber Decl., ¶ 14,
  Exh. H (July 13, 2012 JAMS Notice of Appointment of Arbitrator).  Judge Katz is a

highly-regarded and well-respected jurist who served as a United States Magistrate Judge in the Southern District of New York for 21 years, a member of the Southern District's Committee on Alternative Dispute Resolution, and an adjunct professor at Columbia Law School.  Judge Katz joined JAMS after retiring from the bench in 2012.  *See* Balber Decl., ¶ 15, Exh. I (Theodore H. Katz JAMS Biography).

- On July 18, 2012, Klineburger wrote to JAMS, confirming that he represented Monnin in the Arbitration.  Klineburger copied the MUO, the MUO's attorney, and Monnin on that letter.  Klineburger Decl., ¶ 9, Exh. D (July 18, 2012 Letter from R. Klineburger to M. Veglia).

- On August 27, 2012, apparently in response to emails sent by JAMS directly to Monnin, Klineburger wrote to JAMS, again stating that Monnin would not participate in the Arbitration.  This time, Klineburger stated: "Ms. Monnin is represented by undersigned counsel.  *Do not contact her directly ever again.*"  Klineburger Decl., ¶ 16, Exh. H (August 27, 2012 Letter from R. Klineburger to M. Stockman) (emphasis added).  Klineburger did not copy the MUO or the MUO's attorneys on this correspondence.

- On August 29, 2012, JAMS issued a notice to the MUO and to Monnin, through their attorneys, that a conference call with Judge Katz had been scheduled for September 14, 2012.  Klineburger Decl., ¶ 18, Exh. I (August 29, 2012 JAMS Notice of Conference Call).  Although Klineburger was sent the notice, and received notice of the conference on several occasions, neither he nor Monnin participated in the call.

- On September 19, 2012, Judge Katz issued a Report of Preliminary Conference and Scheduling Order No. 1 (the "Scheduling Order"), in which he, in relevant part, noted Klineburger's absence and Monnin's failure to respond to the Statement of Claim; indicated that, as a result, the Hearing would proceed in Monnin's absence; found that the MUO's claims were arbitrable; and scheduled the Hearing for November 5, 2012.  A copy of the  Scheduling Order was sent to Klineburger.  Balber Decl., ¶ 16, Exh. J (Sept. 19, 2012 Scheduling Order and Proof of Service).

- JAMS also sent Klineburger a Notice of Hearing on September 17, 2012.  Balber Decl., ¶ 17, Exh. K (Sept. 17, 2012 Notice of Hearing).

Klineburger continued to ignore the Arbitration.  Neither Klineburger nor Monnin responded to the document requests the MUO served on Klineburger on September 21, 2012.

Balber Decl., ¶ 18, and Exh. L (Sept. 21, 2012 Claimant's Document Requests).  Neither

Klineburger nor Monnin served any requests for discovery or took discovery of their own.

Balber Decl., ¶ 19.  And neither Klineburger nor Monnin submitted a pre-hearing memorandum,

pre-marked exhibits, or witness list by October 26, 2012, as required by Judge Katz's Scheduling Order.  *See* Klineburger Decl., ¶ 29, Exh. P (Final Arbitration Award) at 2.

Klineburger did not respond to any of these communications until he received an email on November 2, 2012 notifying him, yet again, that the Hearing would go forward on November 5, 2012.  Klineburger Decl., ¶ 25, Exh. M.  In response, Klineburger sent a letter to the MUO and its attorneys to which he attached a draft complaint alleging claims against the MUO and Donald J. Trump, one of the equity owners of the MUO, that he claimed he intended to file in the United States District Court for the Western District of Pennsylvania.  Klineburger Decl., ¶ 26, Exh. N. Monnin was copied on that letter.

That same day, Klineburger participated in a telephone call with Scott S. Balber, the MUO's attorney in the Arbitration, and Michael Cohen, Executive Vice President of the Trump Organization.  During the call, Klineburger stated that he had been speaking to Monnin about her issues with the MUO, and stated that unless the MUO withdrew the Arbitration scheduled to begin that Monday, he would file the complaint against Trump and the MUO.  When asked if he planned to appear at the Hearing, Klineburger said that "we" – Klineburger and his client, Monnin – were still considering their options.  The call ended after Mr. Balber and Mr. Cohen told Klineburger that the MUO would not withdraw the Arbitration.  Balber Decl., ¶¶ 2-6; Declaration of Michael Cohen ("Cohen Decl."), ¶¶ 2-5.

### 3.     The Arbitration and Award

Neither Klineburger nor Monnin appeared for the Arbitration Hearing on November 5, 2012.  The Hearing proceeded without Monnin, and Judge Katz received evidence from the MUO supporting its claims.  Klineburger Decl., ¶ 29, Exh. P (Final Arbitration Award) at 3.  The MUO presented numerous exhibits, a videotape of Monnin's television interview, and testimony from four witnesses:  Paula Shugart, the President of the MUO; Tal Goldhamer, a partner at

Ernst and Young responsible for ensuring the integrity of the Pageant's judging procedures; Craig Heitkamp, a state director and franchisee of the MUO; and Jonathan Low, an expert witness who testified regarding damages.  The Hearing lasted one day.

On December 10, 2012, Judge Katz issued a 17-page Final Arbitration Award, in which he laid out the relevant facts and analysis underlying his decision.  Judge Katz found that the MUO had "met its burden of proving defamation against Respondent Sheena Monnin," and awarded the MUO $5,000,000 in monetary damages.  A copy of the Award was sent to both the MUO and Klineburger on December 13, 2012.  Klineburger Decl., ¶ 29, Exh. P (Final Arbitration Award and Proof of Service).

On December 17, 2012, the MUO moved to confirm the Award against Monnin in this Court.  Monnin sought and received an extension to file her opposition to the MUO's petition and, through new counsel, filed an Opposition to the MUO's Petition to Confirm the Arbitration Award and Cross-Motion to Vacate the Arbitration Award on February 7, 2013.  Monnin used the five weeks between the MUO's Petition to Confirm the Award and Monnin's Opposition and Cross-Motion to reiterate her defamatory statements about the MUO on Facebook and in local television interviews.

## ARGUMENT

### I.     Judicial Review of Arbitration Awards is Limited

Monnin asks this Court to take the extraordinary step of overturning an arbitrator's award.  Because "federal policy strongly favors arbitration as an alternative dispute resolution process," *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991), confirmation of arbitration awards is generally a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  *New York Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 773-74 (S.D.N.Y. 1997) (internal citations

omitted).  A "party moving to vacate an arbitration award bears the burden of proof, and the showing required to defeat confirmation is high.  The reason for this limited judicial review is to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Id*. at 774.

In order to further these "twin goals," "it is well-settled that judicial review of an arbitration award is narrowly limited."  *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir. 1991).  Under the Federal Arbitration Act ("FAA"), an arbitration award may be vacated "only if at least one of the grounds specified in 9 U.S.C. § 10 is found to exist."  *Id*.

## II. Monnin Received Notice of the Hearing Through Her Attorney

The question of whether an attorney gave his client adequate notice of an arbitration hearing has no bearing on whether an arbitration award should be vacated.  *See* 9 U.S.C. § 10(a). Nonetheless, Monnin seeks to have the Award vacated because she "did not receive actual and adequate notice of the hearing."  Monnin Br. at 20-21.  Because this is not "one of the grounds specified in 9 U.S.C. § 10," Monnin's claim must fail.  *See Barbier*, 948 F.2d at 120.

Even if inadequate notice *were* a viable basis for vacatur, Monnin's claim would still fall flat.  Monnin alleges that she was prejudiced by a lack of notice of the Hearing despite the fact that her attorney, whom she engaged to represent her in this matter, received notice at every stage of the proceedings.  Monnin Br. at 10-15.  Essentially, Monnin's argument is that because her attorney allegedly failed repeatedly to notify her that the arbitration was proceeding, she cannot be held responsible for failing to attend.  Monnin Br. at 21-22.  This claim flies in the face of applicable precedent and rules of procedure.

The law on this issue is crystal clear: "Notice to an attorney qualifies as notice to a client."  *Ogodor v. City of New York*, 2001 WL 21091 (S.D.N.Y. Feb. 26, 2001); *see also McKinney v. Waterman S.S. Corp.*, 925 F.2d 1 (1st Cir. 1991) ("[n]otice to an attorney is notice

to the client.").  In fact, when a party is represented by counsel, correspondence and service of

papers *must* go to the attorney, not to the client directly.  *See, e.g.*, Fed. R. Civ. P. 5(b)(1) ("If a

party is represented by an attorney, service under this rule must be made on the attorney unless

the court orders service on the party."); Lawyer's Code of Professional Responsibility DR 7-104

[1200.35] (A)(1) ("During the course of the representation of a client a lawyer shall not…

[c]ommunicate or cause another to communicate on the subject of the representation with a party

the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior

consent of the lawyer representing such other party or is authorized by law to do so."); 1-5

Moore's Federal Practice - Civil § 5.04 ("When counsel exists… notice to the party must be

accomplished through the party's counsel…. If a party is represented by counsel, any service

made directly on that party, unless expressly ordered by the court… is invalid as not complying

with the provisions of Rule 5 and may also be a violation of professional ethics.").

    Not only was Monnin represented by counsel, but Klineburger explicitly told JAMS not

to "contact [Monnin] directly ever again."  Klineburger Decl., ¶ 16, Exh. H (Aug. 27, 2012

Letter from R. Klineburger to M. Stockman).  Nowhere in Monnin's brief or in the extensive

declarations submitted by both Monnin and Klineburger does either claim that Klineburger was

unaware of the Hearing date, or that he did not represent Monnin at the time of the Hearing.

Instead, Klineburger admits that he was aware of the date, but claims that he did not tell Monnin

of the date until after the Hearing had concluded.[1]  Klineburger Decl., ¶¶ 24-26, 34-35.  Even the

veracity of this statement is questionable.  *See* Balber Decl., ¶¶ 2-6, Cohen Decl., ¶¶ 2-5.

---

[1] Monnin claims that Klineburger concluded that Monnin did not have to arbitrate "because… he
had not seen a copy of any contract signed by [Monnin] or Miss Universe agreeing to arbitrate."
Monnin Br. at 10.  Nonetheless, neither Monnin nor Klineburger ever sought discovery
surrounding the arbitration agreement from the MUO or contested its application in the
Arbitration.

Nonetheless, on November 2, 2012, Klineburger represented that Monnin was aware of the

Hearing and was still debating whether to participate in it.  Balber Decl., ¶ 5; Cohen Decl., ¶ 5.

In *Euromarket Designs, Inc. v. McGovern & Company, LLC*, 2009 WL 2868725

(S.D.N.Y. Sept. 3, 2009), this Court upheld an arbitration award in which Euromarket, the party

seeking to vacate the award, had been represented by a disbarred attorney who never mentioned

to his company that there was a demand for arbitration, let alone an arbitration hearing

proceeding against it.  Notwithstanding the lack of communication and the attorney's failure to

appear at the hearing or present any evidence, the court upheld the arbitration award, noting that

the attorney's "alleged failure to communicate properly with his client and the resultant default

cannot be attributed to any flaw in the arbitral proceedings." *Euromarket*, 2009 WL 2868725 at

*5.  As this Court has noted, "[f]or better or for worse, parties are generally bound by the acts of

their freely chosen lawyer-agents."  *1199 SEIU United Healthcare Workers E. v. Lily Pond*

*Nursing Home*, 2008 WL 4443945 (S.D.N.Y. Sept. 29, 2008) (finding that attorneys' actual

conflicts of interest did not justify vacatur of arbitration award).

Monnin's claim is premised not on any viable legal argument, but rather on complaints

about Klineburger's communication and overall performance throughout the course of this

Arbitration.[2]  Monnin's Motion to Vacate, however, is neither the time nor the place for airing

grievances against her attorney or building a malpractice claim.

---

[2] Monnin further claims that she was prejudiced by her inability to present evidence that "would
dispositively disprove that [Monnin] had any 'actual malice' to defame [the MUO]," Monnin
Br. at 23, and would show that her Agreement with the MUO was "without a doubt
unconscionable" and therefore unenforceable.  *Id.*  Even Monnin's brief treatment of these two
allegations is flawed.   Monnin misstates the actual malice standard, *see Celle v. Filipino
Reporter Enterprises, Inc.*, 209 F.3d 163 (2d Cir. 2000) (holding that actual malice can be proven
not only by "subjective awareness of [a statement's] falsity," as Monnin suggests, but also by
proof that the publisher "acted with reckless disregard of its truth or falsity"), and presents no
factual basis, aside from the fact that she signed it while "still in her gown, crown, and sash,"

**III.     Judge Katz Did Not Exceed His Authority in Issuing the Arbitration Award.**

Realizing that she is bound by the FAA and its statutorily limited grounds for vacating an arbitration award, Monnin now claims that Judge Katz "exceeded his powers" by awarding damages based on Monnin's comments on the Today Show.  Monnin Br. at 18-19.  Section 10(a)(4) of the FAA allows for an arbitration award to be vacated where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  The Second Circuit has "consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to § 10(a)(4)."  *Harper Ins. Ltd. v. Century Indem. Co.*, 819 F. Supp. 2d 270, 276 (S.D.N.Y. 2011) (quoting *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003).

In analyzing whether arbitrators exceeded their authority, courts "focus[] on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue."  *Roffler v. Spear, Leeds & Kellogg*, 13 A.D.3d 308, 310-11, 788 N.Y.S.2d 326, 330 (2004) (quoting *DiRussa v. Dean Witter Reynolds,* 121 F.3d 818, 824 (2d Cir.1997)).  An arbitrator's "interpretation of the issues and the scope of their authority is accorded substantial deference," and courts "will not overturn the decision unless there is no support at all justifying the decision."  *Id*.  As a result, "where a party asserts that the arbitrators exceeded their authority," it must show "that no proper basis for

---

Monnin Br. at 4, for her claim of unconscionability.   In fact, Monnin not only signed the Agreement, she initialed every page.  *See* Monnin Decl., ¶ 83, Exh. K at 20:16-21:2; Balber Decl., ¶ 7, Exh. A (Miss USA Pageant Entry Form).  Monnin presents this Court with no evidence that her defenses were "meritorious," Monnin Br. at 2, and the fact that Monnin failed to present her defenses is nobody's fault but her own.

the award can be inferred from the facts of the case." *Josephthal & Co., Inc. v. Cruttenden Roth Inc.*, 177 F. Supp. 2d 232, 238 (S.D.N.Y. 2001) (internal citations omitted).

**A.      The MUO's Defamation Claim was Properly Submitted to Judge Katz.**

Monnin's claim fails initially because the MUO's defamation claim, including her statements on the Today Show, were properly submitted to Judge Katz.  Monnin does not contest that the MUO properly brought a defamation claim against her in the Arbitration.  Rather, Monnin maintains that the MUO's defamation claim was based only on the June 4 and 5, 2012 Facebook posts, and not the Today Statements.  Monnin Br. at 18.  Contrary to Monnin's allegations, the MUO's defamation claims based on the Today Statements were submitted to Judge Katz for arbitration at three critical junctures: in the MUO's Statement of Claim; in the MUO's pre-hearing brief; and at the Arbitration Hearing itself.

Monnin would have this Court believe that, aside from the two Facebook posts, "[n]o other alleged misconduct by [Monnin] is set forth in the Statement of Claim."  Monnin Br. at 10. This is demonstrably untrue.  Paragraph 17 of the Statement of Claim alleges that Monnin's libelous Facebook post concerning the MUO was "republished and widely disseminated by the media in print, radio, *television* and via the internet."  Klineburger Decl., ¶ 3, Exh. B (Statement of Claim), at ¶ 17 (emphasis added).  Thus, Monnin was clearly on notice that the MUO sought damages for the dissemination of the defamatory statements on television, whether the Today Show was specifically named or not.

Petitioner's pre-hearing brief, submitted to Judge Katz on October 26, 2012, further highlights the defamatory statements made by Monnin on the Today Show and their impact on the MUO and its business.  *See* Balber Decl., ¶ 21, Exh. M (Claimant's Pre-Hearing Memorandum) at 1 (noting that Monnin "repeated her unfounded accusations on national television"), 6 (stating that "[i]n an interview conducted by 'Today' co-host Ann Curry…

12

Monnin disparaged the integrity of the MUO before a national television audience," and

detailing Monnin's statements on Today), 8-14 (arguing that Monnin's "statements in the June 8

'Today' interview constitute slander," and repeatedly referencing the Today interview).

Lastly, there can be no question that the Today Statements were presented to Judge Katz

at the Hearing.  Not only did the MUO's counsel reference the statements in his opening

statement, but the Today Show was referenced no fewer than 17 times during Ms. Shugart's

testimony.  *See* Monnin Decl., ¶ 83, Exh. K, at 77:4-20; 79:9-80:13; 84:16-85:4; 87:3-18; 89:12-

16; 98:21-99:6; 112:5-13; 121:7-13. Shugart's testimony about the Today Show interview was

accompanied by a screening of the DVD of Monnin's Today Show interview, and both the DVD

and a transcript of the interview were accepted as exhibits in the Arbitration. Monnin Decl., ¶ 83,

Exh. K, at 79:9-80:2.

Tellingly, Monnin cites no case law for the premise that, in order to be properly

submitted to an arbitrator, all of the factual details underlying a claim must be laid out with

particularity in the Statement of Claim.  The law is quite the opposite.  In *Executone Information

Systems, Inc. v. Davis*, 26 F.3d 1314 (5th Cir. 1994), the Fifth Circuit held that an issue not

detailed in the Demand for Arbitration was nonetheless submitted to the arbitrator under a

broadly-worded claim.  The court noted that a broad claim in an arbitration did not constitute a

pleading defect because "federal law does not impose any requirements as to how specific a

notice of arbitration must be, and we decline[] to develop a code of pleading for arbitration

ourselves." *Executone*, 26 F.3d at 1322.  *See also Valentine Sugars, Inc. v. Donau Corp.*, 981

F.2d 210, 213 (5th Cir. 1993) (holding that "broad language" in a demand for arbitration asking

the panel to arbitrate "a dispute concerning a commercial matter involving several contracts" was

sufficient to give the arbitrators jurisdiction over "any disputed matter arising out of the joint

venture"); *Certain Underwriters at Lloyd's London v. Ashland, Inc.*, 967 A.2d 166, 175-76 (D.C. 2009) (finding an issue properly submitted to arbitral panel even where it was not detailed in the statement of claim because "pleading requirements in arbitration proceedings are generally relaxed") (citing sources); *Frankel v. Sardis*, 904 N.Y.S.2d 18 (App. Div. 1st Dept. 2010) (noting that "the language of arbitration demands is not subject to the strict standards of construction applicable to formal court proceedings").

The cases cited by Monnin do not support her position.  Monnin relies heavily on *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979), but try as Monnin might, *Totem* does not present "similar circumstances" to this case.  Monnin Br. at 19. In *Totem*, the 5th Circuit vacated an arbitration award because the arbitrators clearly awarded damages on a claim not raised by North American Towing at any stage of the arbitration, and which North American had conceded was *not* an issue in the arbitration.  Despite North American's concession, the arbitrators had considered the issue, and awarded damages in an amount much greater than North American had initially sought. *Totem*, 607 F.2d at 651-52.

A long series of cases distinguishes *Totem* for reasons that show precisely why it is not applicable in this case.  In *Carte Blanche (Singapore) Pte. Ltd. v. Carte Blanche Intern., Ltd.*, 683 F.Supp. 945 (S.D.N.Y. 1988), for example, Carte Blanche International ("CBI") moved to vacate an arbitration award in favor of Carte Blanche Singapore ("CBS") on the grounds that the arbitrators exceeded their power by awarding $5.1 million in consequential damages.  Although CBS had not sought consequential damages in its initial Terms of Reference, the arbitration panel had permitted CBS to proceed with a large claim for consequential damages without a formal amendment to the pleadings.  This Court distinguished *Totem*, finding that

> CBI knew from the outset that CBS was asserting a claim for consequential damages.  At no time did CBS deny that it was making such a claim.  CBI was on

14

notice that the arbitrators were considering the full amount of damages claimed by CBS.... Moreover, unlike *Totem Marine*, in which the arbitrators decided an issue that was not submitted to them at all, the claim for damages in the instant case was within the Terms of Reference.

*Carte Blanche*, 683 F.Supp. at 957-58.  *See also Executone*, 26 F.3d at 1322 (distinguishing *Totem* because the arbitrators did not award "an arbitration award far in excess of the amount actually sought by the aggrieved party"); *Capgemini U.S. LLC v. Sorensen*, 2005 WL 1560482 (S.D.N.Y. July 1, 2005) (distinguishing *Totem* because "[h]ere, unlike in *Totem*, the Panel did not decide a separate theory of liability that was not at issue in the arbitration").

The same is true here.  Monnin knew from the outset that the MUO was asserting a claim for defamation and sought damages in excess of $5 million; the Statement of Claim requests compensatory damages in an amount "not less than $10 million."  Klineburger Decl., ¶ 3, Exh. B (Statement of Claim) at ¶ 3, Request for Relief at 10.  The MUO was clear throughout the proceedings that it was seeking damages based on Monnin's statements on the Today Show.  And the damages Judge Katz awarded were half the amount requested in the Statement of Claim, and were based directly on the alleged economic harm.[3]

Because the defamation claim was properly submitted to the arbitrator, Judge Katz did not exceed his authority in issuing the Award.

---

[3] The other cases cited by Monnin encounter similar problems.  For example, Monnin cites *Harper Ins. Ltd. v. Century Indem. Co.*, 819 F.Supp.2d 270, 277 (S.D.N.Y. 2011), for the proposition that "[i]t is indisputable that arbitrators have no authority to rule on an issue not submitted to them."  In *Harper*, however, this Court found that the issue in question *was* properly presented to the arbitrators.  *Harper* was concerned with whether a particular *remedy* had been presented to the arbitral panel.  The Court upheld the arbitration award, finding that there is no rule requiring particular remedies to be submitted to the panel.  *Harper*, 819 F.Supp.2d at 277.

**B.      The Damages Awarded Were Not Premised Solely on the Today Show Statements.**

Even if the Today Show statements had not been properly submitted to Judge Katz for arbitration, the Motion to Vacate would still be improper because there is an alternate justification for Judge Katz's Award.

A party alleging that arbitrators exceeded their authority by deciding a claim not properly before them "must show that no proper basis for the award can be inferred from the facts of the case." *Wall St. Associates, L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 849 (2d Cir. 1994) (denying motion to vacate where, although arbitrators accepted evidence on an excluded fraud claim, sufficient evidence existed to support an award based on alternate claims); *see also Josephthal & Co., Inc. v. Cruttenden Roth, Inc.*, 177 F.Supp.2d 232, 238 (citing *Wall Street Associates* for proposition that where "several other theories properly before the arbitrators could have supported the award and the basis for the award could not be conclusively determined," an arbitration award must be confirmed).  Put more succinctly, "[i]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should not be vacated." *Barbier v. Shearson Lehman Hutton, Inc.*, 752 F. Supp. 151, 163 (S.D.N.Y. 1990).

In her attempt to argue that the damages award against her must have been based solely on the Today Show statements, Monnin misconstrues Judge Katz's analysis.  Judge Katz did not, as Monnin would like this Court to believe, find that "[Monnin's] Facebook posts did not cause damage to Miss Universe," because they were "not disseminated generally to the public nor to entities likely to do business with Miss Universe."  Monnin Br. at 19.   Judge Katz found that both the June 5, 2012 Facebook post and the Today Statements were defamatory.  Klineburger Decl., ¶ 29, Exh. P (Final Arbitration Award) at 9.  Indeed, in the entire damages section of the Award, Judge Katz never once distinguished between the Facebook posts and the Today

Statements.  Instead, Judge Katz noted that the sponsor seemed concerned "about the 'rigging' allegations and expressed concern about how it might affect its image," without noting whether those allegations came through Facebook or television.  *Id*. at 13.

Judge Katz only referenced the statements separately in discussing the MUO's request for injunctive relief.  *Id.* at 14-16.  It is those statements that Monnin takes out of context.  Judge Katz found that there was an insufficient showing of irreparable harm to justify injunctive relief because of the scope of the dissemination of Monnin's statements.  *Id*. at 16.  The standard for injunctive relief is high, and Judge Katz was aware of that burden in his Award.  *Id*. at 15. Nowhere did he say, nor does his Award imply, that the original Facebook posts and any republication of them did not damage the MUO.  In fact, there is sufficient evidence in the record, and in the Award, for a finding that the Facebook posts and their widespread republication, even outside of the Today Statements, was sufficient to cause the MUO $5 million in damages.

**IV.     The Arbitration Award Was Not Rendered in Manifest Disregard of the Law**

A court "cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law. On the contrary, the award 'should be enforced… if there is a barely colorable justification for the outcome reached.'" *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004).  In order to find that an arbitrator ruled in manifest disregard of the law, a reviewing court must find not only that the arbitrator misapplied "well defined, explicit, and clearly applicable" law, but that the arbitrator "knew of [the] governing legal principle *yet refused to apply it or ignored it altogether*."  *In re WorldCom, Inc.*, 340 B.R. 719, 725 (Bankr. S.D.N.Y. 2006) (emphasis added).  It is not enough to say that the arbitrator

simply got the law wrong.[4]  Indeed, vacatur for manifest disregard is extremely rare, and the

Second Circuit has used the doctrine to vacate an arbitration award "only in the most egregious

instances of misapplication of legal principles."  *Wallace*, 378 F.3d at 190.

Monnin provides no support for her claim that Judge Katz disregarded the law of

causation in finding that the MUO was entitled to recover $5 million.  Monnin's argument goes

no further than her belief that Judge Katz was simply wrong in his application of the law of

causation to this case; such an argument does not amount to manifest disregard.  In fact, the

Award makes clear that Judge Katz knew that causation was an element of a defamation claim,

and found that Monnin's actions had caused the MUO's harm in this case.  Judge Katz wrote that

"Monnin's statements were… obviously harmful to the MUO's business reputation,"

Klineburger Decl., ¶ 29, Exh. P (Final Arbitration Award) at 6, and spent nearly a full page

laying out his factual findings supporting his damages award.  *See Id.* at 12-13.  Judge Katz went

on to reiterate that "there were some immediate economic consequences [of Monnin's

defamatory statements], such as the loss of the Gulf Coast sponsorship."  *Id.* at 13.  As further

evidence that Judge Katz took the law of causation seriously and did not "refuse[] to apply it or

ignore[] it altogether,"  Judge Katz denied the MUO's remaining claims for damages.  *Id.*

Even if Judge Katz had not laid out his findings in the Award, there is ample evidence in

the record to support the finding that Monnin's comments caused the MUO to lose its

---

[4] It is worth noting that following the Supreme Court's decision in *Hall Street Assocs., L.L.C. v.
Mattel, Inc.*, 552 U.S. 576 (2008), debate exists over whether "manifest disregard" remains a
viable ground for challenging an arbitration award.  At least five Circuits, including the First,
Fifth, Seventh, Eighth, and Eleventh Circuits, have held that, in the wake of *Hall Street*, manifest
disregard is no longer an independent ground for vacating an arbitration award under the FAA.
Although the Second Circuit has continued to recognize manifest disregard, the Supreme Court,
in 2010, noted that the question of whether the doctrine survives remains unresolved.  *Stolt-
Nielsen v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010) ("We do not decide whether
'manifest disregard' survives our decision in [*Hall Street*] as an independent ground for review
or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10").

sponsorship and its $5 million site fee.  Monnin's claim that "the only testimony on this subject" was Shugart's testimony that the sponsor was "very, very careful about how they chose their words" when they walked away from the sponsorship, Monnin Br. at 25, is blatantly untrue, and ignores several pages of Shugart's testimony on the MUO's damages and causation.  Indeed, Shugart testified at length about this very topic.  *See* Monnin Decl., ¶ 83, Exh. K (Hearing Transcript) at 103:9-20; 105:5-11; 119:21-120:3; 120:5-13.

Further, Monnin is in essence asking this Court to review Judge Katz's factual findings, but factual findings are not the proper ground for review of an arbitral award.  *In re Ibar Ltd*., 2003 WL 2012400 (S.D.N.Y May 2, 2003) is instructive.  In *Ibar*, the petitioner moved to vacate an arbitration award arguing that the arbitral panel had improperly  "applied an insurmountable standard of proximate cause."  *Ibar*, 2003 WL 2012400 at *3.  This Court held that "[c]ausation is a question of fact," and that, where the panel had "correctly laid out the applicable legal standard of causation" and had not "state[d] that they were applying a higher standard," there was no evidence of manifest disregard.  *Id*.  The Second Circuit upheld this decision, noting that the petitioner in essence sought to challenge the panel's factual findings regarding causation, "yet it is well-established that an arbitrator's findings of fact are not subject to further judicial challenge where no legal error has been identified."  *Ibar Ltd. v. American Bureau of Shipping*, 92 Fed.Appx. 820 (2d Cir. 2004).

Here, too, Monnin asks this Court to review Judge Katz's *factual* findings regarding causation.  Monnin presents no evidence of Judge Katz ignoring the law, and does nothing to counter either the substantial record or Judge Katz's findings on causation.  In short, Monnin presents no viable claim that Judge Katz manifestly disregarded the law.  Because Monnin has

presented no grounds for vacating, modifying, or correcting the Award, Monnin's Cross-Motion to Vacate should be denied, and the Award should be confirmed.

**CONCLUSION**

Petitioner the MUO respectfully requests an order denying Monnin's Cross-Motion to Vacate the Arbitration Award, and confirming the Award into a judgment of this Court.

Dated: February 20, 2013
New York, New York

Respectfully submitted,

COOLEY LLP

By:   /s/ Scott S. Balber
      Scott S. Balber (SB 5807)
      Jonathan C. Cross
      Jennifer Pavane Kenter

1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 479-6000
sbalber@cooley.com
jcross@cooley.com
jkenter@cooley.com
*Attorneys for Miss Universe L.P., LLLP*