# EXHIBIT A

# OFFICIAL ENTRY FORM/CONTRACT

## 2012

## MISS USA® PAGEANT

### TO COMPETE FOR THE TITLE

### MISS USA®

MISS ___*Pennsylvania*___ USA

(Name of State)

### Official Entry Form/Contract

### Rules, Regulations and Terms

("Agreement")

For 2012 Miss USA Pageant Contestants

I execute and submit this Agreement, and make the representations, disclosures, and agreements described below, so that I will be eligible to participate in the 2012 Miss USA Pageant (the "2012 Miss USA Pageant" or the "Pageant"). I understand that you will rely upon the representations, disclosures and agreements I make, have made, or may make in this Agreement, any exhibits or attachments hereto (each of which is incorporated as if stated in full herein), my State Pageant Contestant Entry Form/Contract, and any and all other agreements, applications, other documents or interviews that I may provide to you or others in connection with the Pageant or which I have provided to the Licensee of my State Pageant (collectively, the "Representations").

I understand this is an important legal document relating to my participation in the Pageant, and by signing this Agreement I am waiving legal rights I may have against Miss Universe L.P., LLLP, NBCUniversal, NBC West, LLC and NBC Pageants, Inc. (collectively, "NBC"), Mr. Donald J. Trump, Trump Pageants, Inc. and The Trump Organization (collectively, "Trump"), each of their respective affiliates, sponsors of the Pageant and others.

1. **ACKNOWLEDGEMENTS, REPRESENTATIONS AND WARRANTIES.**

    (a) I understand and agree that in this Agreement, "you" or "Licensor" means Miss Universe L.P., LLLP; the "State" means the state named above (for purposes of this Agreement, the District of Columbia is considered a state); the "State Pageant" means the state pageant in my State preliminary to the 2012 Miss USA Pageant; "Licensee" means the person or entity that conducts the State Pageant pursuant to a license from you or, if such person or entity is no longer actively serving as a Miss Universe licensee in the State, any other individual or entity who is then currently serving as a Miss Universe licensee in the State, as authorized and recognized by Miss Universe; the "License Agreement" means the Miss USA Preliminary State/Pageant License Agreement between you and Licensee; and, all other capitalized terms have the same meanings as in the License Agreement unless otherwise defined in this Agreement. I further understand that any references in this Agreement to the Pageant or the 2012 Miss USA Pageant will include all activities and judging events during the contestants' stay at the site of the 2012 Miss USA Pageant ("Host City"), whether formal or informal, and any related activities or events of any kind whatsoever before or after the 2012 Miss USA Pageant.

    (b) I understand and agree that you shall have sole judgment and control over every aspect of the Pageant, that your decisions on all matters related to the Pageant shall be final and binding on me in all respects, that your decisions on all matters related to the Pageant shall not be subject to challenge or appeal, and that your decisions on all matters related to the Pageant shall not be subject to any limitation whatsoever, except for any limitations imposed by law. I further agree to accept the obligations I will incur as a contestant in the 2012 Miss USA Pageant under this Agreement.

    (c) I represent and warrant that I have never been married or had a marriage annulled. I have never given birth to a child, I am not a parent, and I am not currently pregnant.

Initial Here: SM

v1.0

(d) I represent and warrant that I am a naturally-born female, am a citizen of the United States and will remain a citizen of the United States through the 2012 Miss USA Pageant. I either (1) now reside and have resided in my State as my "permanent and primary residence" (as defined below) for a period of at least six consecutive months immediately prior to the commencement of my State Pageant (although I may have attended school, college or university on a full-time basis elsewhere) and, if employed, am employed in my State (although I may occasionally travel outside my State on behalf of my employer), or (2) have resided in the State as a full time student at a school, college or university for one entire semester (excluding summer terms) immediately prior to the commencement of my State Pageant and continue to reside in the State as a full time student at my school, college or university (although I may have spent or be spending the summer in another State). "Permanent and primary residence" means my true, fixed and permanent domicile which I intend to make my permanent home. Prior to participating in the State Pageant, I furnished Licensee with satisfactory document(s) (as required in my State Pageant Contestant Entry Form/Contract) attesting to my compliance with the residency requirements referred to in (1) and/or (2) above. I will maintain such residency through the 2012 Miss USA Pageant. I understand and agree that you have the right to reject information or documentation you feel has not been gathered or provided in good faith.

TRUE ___✓___   FALSE _____

If the above is not true, please explain: _____

_____

_____

(e) I represent and warrant that the date of my birth is: __February 20, 1985__. I will be at least 18 and under 27 years of age on February 1, 2012. Prior to participating in the State Pageant, I furnished Licensee with satisfactory document(s) (as required in my State Pageant Contestant Entry Form/Contract) attesting to my age and proving that I will be at least 18 and under 27 years of age on February 1, 2012. If I was not born in the United States, I also furnished Licensee (before participating in the State Pageant) with satisfactory document(s) (as required in my State Pageant Contestant Entry Form/Contract) establishing that I am a citizen of the United States.

(f) Based on my understanding of the physical and/or mental requirements for participating as a contestant in the Pageant and serving as Miss USA 2012, I represent and warrant that, to the best of my knowledge, I am able to perform the essential functions of a contestant in the Pageant or as Miss USA 2012, including, without limitation, any activities required of me during the Pageant and/or while serving as Miss USA 2012, as applicable. I represent and warrant that I am in good mental and physical health and, to the best of my knowledge, I am able to participate fully and without limitations in any Pageant activities. I agree to submit to you upon your request any hospital and medical records pertaining to me and I do hereby authorize any hospital that and/or doctor who ever treated me to send any medical information pertaining to me to you at your request. I understand and acknowledge that I am solely responsible for determining whether I am physically and mentally able to participate in the Pageant. I shall notify you prior to participating in the Pageant of any physical, medical or mental condition that might affect me or any other people involved with the Pageant (including, without limitation, you and other contestants). Further, to the extent that I determine that I am unable to perform the essential functions of a contestant in the Pageant or as Miss USA 2012, I promise to inform you as soon as possible either that I cannot perform the essential functions or how I can perform the essential functions with a reasonable accommodation. I also authorize you to conduct, or have conducted at your request, at any time prior to or during the Pageant, physical and mental examinations of me, including, without limitation, drug, alcohol and controlled substance testing. I authorize those who perform any such examination to disclose to you, and those you authorize, all information about me obtained in connection with any such examination. I acknowledge and agree that you may, at any time, add, remove or replace contestants if you determine, in your sole judgment, that any contestant is not mentally or physically fit to continue as a contestant in the Pageant and/or any contestant tests positive for use of any drug or controlled substance (except for drugs or controlled substances prescribed by and taken under the supervision of a licensed health care professional) and/or any contestant is inappropriately consuming alcohol. In case of an emergency, I authorize you to arrange for or otherwise provide medical assistance to me as you may determine to be necessary. I also authorize any licensed physician, health care personnel or medical facility to provide any medical or surgical care (including, without limitation, the use of anesthetics) and to hospitalize me, as such licensed physician, health care personnel or medical facility determines necessary or advisable, pending receipt of a specific consent from me. I also authorize any reasonably necessary care by paramedics, emergency medical technicians, or other first responders. In connection with my authorizations expressed in this provision, I agree to sign any medical authorizations that you may require.

(g) I represent and warrant that I received the title stated above in open competition in my State. I acknowledge and accept that the competition was fair.

Initial Here___SM

v1.0

(h) I represent and warrant that I have never been a contestant or delegate in a previous Miss USA Pageant or a Miss Universe Pageant. I have participated in only one state pageant system (including preliminary state pageants) preliminary to the 2012 Miss USA Pageant, and I have not participated in any state pageant system (including preliminary state pageants) preliminary to the 2012 Miss Teen USA Pageant. I am not the current titleholder in any other state or national pageant or competition system (other than a system preliminary to the State Pageant). I have not participated in any other pageant or competition after the date on which I won my State Pageant title and I will not compete in any other pageant or competition until the 2012 Miss USA Pageant is over. If I participate in any other pageant or competition before the 2012 Miss USA Pageant, I will furnish you with the name(s) and date(s) of my participation. I understand that if I participate in any other pageant or competition after I won my state title and before the 2012 Miss USA Pageant is over, then you may disqualify me from participating in the 2012 Miss USA Pageant and/or succeeding to the title Miss USA 2012 as per Paragraph 8.

(i) I represent and warrant that either:

(1) I have not authorized or permitted the use of my state title, name, voice or likeness in connection with any product or commercial enterprise, given any written, verbal or other endorsement of any product, service or commercial enterprise, or entered into any written or verbal agreement with any individual, corporation or organization that in any way covers, relates to or conflicts with my activities to be performed while I am a contestant to the 2012 Miss USA Pageant or my competition in the 2012 Miss USA Pageant or any events at the Host City for the 2012 Miss USA Pageant or elsewhere related to the 2012 Miss USA Pageant; or

(2) I have taken one or more of the actions described in subparagraph 1 (i) (1) above, but: (i) any such contract, agreement, use or endorsement by its terms becomes automatically void and ceases immediately if I become Miss USA 2012 or succeed to the Miss USA 2012 title; and (ii) even if I do not become Miss USA 2012 or succeed to the Miss USA 2012 title, any such contract, agreement, use or endorsement by its terms is suspended and becomes temporarily void during my participation in the 2012 Miss USA Pageant or any events at the Host City or elsewhere related to the 2012 Miss USA Pageant.

I promise not to agree to any contract, use or endorsement that does not comply with the requirements of subparagraph 1 (i) (2) above. During the 2012 Miss USA Pageant or any events at the Host City or elsewhere related to the 2012 Miss USA Pageant, and if I win or succeed to the Miss USA 2012 title, at all times during the period during which I hold such title, I will comply with your sponsor arrangements (even if your sponsor arrangements are in direct conflict with any of Licensee's sponsor arrangements). I understand that it is Licensee's responsibility to inform me of any conflict of any of Licensee's sponsors with any of your sponsors relevant to the above commitments so long as you have notified Licensee about your sponsor(s) in question.

As of this date, I have not entered into, and at any time prior to or during the 2012 Miss USA Pageant, or at any time during which I may hold the Miss USA 2012 title, I will not enter into, a management, agency or personal services contract with any individual, corporation or organization, or if I did or do enter into such a contract, it becomes null and void by its terms if I win or succeed to the Miss USA 2012 title or it is suspended and becomes temporarily void by its terms at all times during the period during which I hold such title.

TRUE __✓__ FALSE_____

If the above is not true, please explain so that eligibility can be determined (attach additional pages if necessary):

_____

_____

_____

(j) I represent and warrant that neither I nor any member of my immediate family (i.e., mother, father, sister or brother) or anyone living in my household is currently, or has within the last two (2) years been, employed by or an officer, director or agent of any of the following:

(1) Licensee, any company or enterprise Licensee owns or controls, or any company or enterprise under common ownership or control with Licensee; or

(2) You, NBCUniversal, NBC West, LLC, NBC Pageants, Inc., Telemundo Network Group LLC ("Telemundo"), Mr. Donald J. Trump, Trump Pageants, Inc., The Trump Organization, Ernst & Young, or any of the subsidiaries, affiliates or related companies of the foregoing (including, without limitation, the NBCUniversal Television Studio, any NBC and/or Telemundo owned television stations, Village, CNBC, MSNBC, Bravo, Sci Fi, and USA).

TRUE __✓__ FALSE_____

Initial Here SM

v1.0

*If the above is not true, please complete the following so that eligibility can be determined (attach additional pages if necessary):*

Name of relative/housemate_____

Relationship_____

Employed by_____

(Company, City)

Dates of Employment_____

Job Title_____

I understand that any such employment or relationship(s) may affect my eligibility. If any of the foregoing conditions changes before or during competition at the 2012 Miss USA Pageant, I will immediately give notice of this fact to you and Licensee, and you can make a determination as to my eligibility in your sole judgment. In addition, I acknowledge and agree that (i) you may, in your sole judgment, render eligible or ineligible, as the case may be, any person with such employment or relationship(s) and (ii) you may, in your sole judgment, render ineligible any person who, in your sole judgment, is sufficiently acquainted with any person or entity connected with the development, production, administration, judging, distribution or other exploitation of the 2012 Miss USA Pageant such that her participation in the 2012 Miss USA Pageant could create the appearance of impropriety.

(k) I represent and warrant that I am not currently a candidate for public office, and I agree that I will not become a candidate for public office until at least one (1) year after the initial broadcast or other exhibition, if any, of the 2012 Miss USA Pageant.

(l) I have NEVER appeared on any television contest, game or reality show or applied to be a contestant or participant on any television contest, game or reality show, and , and I have NEVER appeared, or agreed to appear, in any other television show or motion picture.

TRUE ___✓___ FALSE _____

*If the above is not true, please complete the following so that eligibility can be determined (attach additional pages if necessary):*

| Name of Show/Picture | Tape Date (if applicable) | Air Date (if applicable) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

I understand that any such appearances or applications may affect my eligibility for the 2012 Miss USA Pageant. If any of the foregoing conditions changes before or during competition at the 2012 Miss USA Pageant, I will immediately give you notice of this fact so that you can make a determination as to my eligibility in your sole judgment.

(m) I agree that if any of the conditions which I certify to in this Paragraph 1 change before or during competition at the 2012 Miss USA Pageant, I will immediately notify you and Licensee in writing. I further understand that any change in any of these conditions may result in my disqualification.

(n) The color photographs of me submitted to you have been taken within the last six months.

2.   I understand that, if I am deemed eligible to participate in the 2012 Miss USA Pageant:

(a) I will receive from Licensee prepaid transportation to and from the Host City and accommodations and my meals at any point where arrangements are made for me to stop en route to the Host City.

(b) I will receive accommodations and my meals while in the Host City during the 2012 Miss USA Pageant.

(c) I will be chaperoned at all times (unless specifically excused from such chaperoning by you) during my entire stay through and including the Pageant Finals show in the Host City. The foregoing may not apply to any pre or post-pageant activities in which I choose to take part.

(d) During at least one portion of the 2012 Miss USA Pageant, I will appear in a swimsuit either selected by you in your sole judgment, or selected by me from choices provided by you in your sole judgment.

(e) In order to compete in the 2012 Miss USA Pageant, I must have in my possession when I arrive in the Host City the following: (i) one long properly fitted evening gown; (ii) cocktail dresses; (iii) informal dresses for various evening events; (iv) rehearsal clothes such as shorts, sweats and T shirts; (v) appropriate attire for interviews

Initial Here: SM

(business clothes not required); (vi) appropriate footwear (including, for example, flat dance shoes for rehearsal) for the previously mentioned outfits; and (vii) any other wardrobe you may designate. I understand and agree that I am prohibited from wearing any apparel during the 2012 Miss USA Pageant/competition that contains any logos or trademarks unless such apparel has been specifically provided to me or approved in advance by you. I further understand and agree that, during my participation in the 2012 Miss USA Pageant, you in your sole judgment may require me to wear clothing, costumes, accessories and/or make-up selected by you.

(f) The "Material" (as defined in Paragraph 4 below) shall constitute a "work-made-for-hire" (as that term is understood and interpreted under U.S. and international copyright laws) for you and you shall be considered the sole author and exclusive owner and proprietor for all purposes of the Material and any and all rights therein (including, without limitation, all rights of copyright and all copyright renewals and extensions), throughout the universe and in perpetuity, free of any claim by me or any person claiming any rights or interests through me. In the event that said work-made-for-hire status is deemed unenforceable for any reason, I hereby irrevocably assign, transfer and convey to you, without reservation, all of my now or hereafter existing rights, title and interest of every kind and nature in and to the Material (including without limitation, all rights of copyright and all copyright renewals and extensions), throughout the universe and in perpetuity, upon its creation, all to the full extent set forth above. I shall execute and deliver such documents and instruments as you shall require to effect any transfer, assignment or other confirmation of rights in you as contemplated in this provision.

3. I understand that I am competing for the title "Miss USA 2012," and I understand and agree that you will determine, in your sole judgment, the manner and method of conducting the 2012 Miss USA Pageant and of selecting Miss USA 2012 from among the Pageant contestants. I acknowledge that the competition for the Miss USA title may include the following categories: swimsuit, evening gown and personality. In addition, I understand that the selection process through which contestants advance in and/or are eliminated from the competition may include the use of one or more panels of judges (which may include independent judges; and/or, your and/or NBC's and/or Trump's employees, agents and representatives; and/or, advisory judges whose decisions are not binding and may be overruled or rejected) and/or selections made by you, NBC and/or Trump and/or each of your and their respective employees, agents and representatives in their sole judgment. I agree that the decisions of those individuals participating in these matters will be final and I agree to abide by their decisions. I understand and agree that you reserve the right to establish and modify, at any time and in your sole judgment, the manner and method of conducting the 2012 Miss USA Pageant and/or of selecting Miss USA 2012, including, without limitation, the standards, procedures and rules for the competition process of the Pageant.

4. In consideration of you considering me to be a contestant in the Pageant, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, I irrevocably grant, assign and convey the following rights regardless of whether I am selected as a contestant in the Pageant:

(a) You and those you authorize shall have the right to videotape, audiotape, film, portray, photograph and otherwise record me, my likeness and my voice, whether I am aware or unaware of such recordings, in connection with the Pageant, as often and for such periods of time as you may request. Any such recordings, and all information I have supplied in my Representations or otherwise, all materials I have provided or may provide (including photographs and videos of me and/or others, written submissions, and any other materials), all other information you have received or will receive from other sources about me, as well as my appearance, actions, voice and sound effects in connection with the Pageant, the results and proceeds of my participation in the Pageant, and any reproductions or recordings of any nature of any of the foregoing, in whole or in part, are collectively referred to as the "Material." The Material shall also include, without limitation, any and all material that I may create (or participate in the creation of) in connection with the Pageant, including, without limitation, any personal journals or diaries (including, without limitation, any video diaries, vlogs and blogs) I may write or contribute to, and any photographs and other recordings taken by me in connection with the Pageant. As set forth in subparagraph 2(f) above, the Material shall be your sole and exclusive property and you shall have and own all rights (including, without limitation, all copyrights and rights of publicity) in and to the Material, including, without limitation, any Material that I may create, have, use or provide to you or the broadcaster(s). Without limiting the generality of the foregoing in any way, the Material may be used, broadcast, exhibited, distributed, advertised, publicized, promoted or otherwise exploited by such means and for such purposes (including without limitation merchandising, and commercial and non-commercial publishing) and by and in any manner and in any and all media, now known or hereafter devised (including, without limitation, television, theatrical, non-theatrical, cassettes, discs and other home video devices, radio, the Internet and other on line or computer-assisted media, and print media) as you designate, throughout the universe and in perpetuity, at any time and from time to time, whether as part of the Pageant or otherwise. The Material may be edited, cut, rearranged, adapted, dubbed, revised, modified, fictionalized, otherwise altered or combined, in whole or in part, with other material or works for any such purposes by you in your sole judgment, and I waive the exercise of any "moral rights," "droit moral," and any analogous rights, however denominated, in any jurisdiction of the world, which I have. Furthermore, you will own any so-called "rental and lending rights" or similar rights.

(b) You and those you authorize shall have the perpetual, worldwide and exclusive right to use my name, sobriquet, likeness (actual or simulated), photograph, caricature, voice, biographical material, signature and any other

v1.0

Initial Here:

indicia of my identity, in any manner and in any and all media whatsoever (whether now or hereafter known or devised). In connection with the development, production, exhibition, advertising, publicizing, promotion, marketing, merchandising and any other exploitation of the Pageant, the Material (whether as part of the Pageant or otherwise) or in connection with the exploitation of any subsidiary and ancillary rights therein, any future Miss USA Pageant, the Miss USA Pageant system, your business activities and the business activities of the networks, stations, sponsors and other exhibitors, assignees and licensees of the Material and/or the Pageant (the "Business Activities") for any purpose, including, without limitation, for any commercial purpose whatsoever, including, but not limited to, product endorsement, related to the Pageant and/or any of the Business Activities. Without in any way limiting the foregoing, I acknowledge and agree that NBC shall have the right to use the Material, any part or element of the Material and my name, sobriquet, likeness (actual or simulated), photograph, caricature, voice, biographical material, signature and any other indicia of my identity in and in connection with advertisements, promotions and publicity for the 2012 Miss USA Pageant, for NBC, and for stations and other persons and entities broadcasting or otherwise exhibiting the 2012 Miss USA Pageant.

5. **PARTICIPATION IN THE PAGEANT:**

   (a) I understand that you shall select the number of contestants for the Pageant, and determine all eligibility requirements pertaining to such contestants, utilizing any selection criteria/methods you determine in your sole judgment. I further understand that the means and manner of selection and the eligibility rules and requirements for Pageant contestants may vary; that other contestants (including "at large" contestants) may be selected other than through a preliminary state pageant; and, I agree to abide by your determinations, eligibility requirements and selection modes both as to myself and all other contestants with respect to selection and eligibility for competition in the Pageant. Even if I participate as a contestant in the Pageant, you are not obligated to broadcast, exhibit or otherwise use or exploit all or any part of the Pageant, or to include all or any part of the Material in the Pageant.

   (b) I agree to follow and obey all of your rules, instructions, directions and requirements (including, without limitation, such rules, instructions, directions and requirements set forth in this Agreement and in the Contestant Handbook [which I understand I will be given before my arrival at the Host City]), as they may be changed, modified or amended by you before, during, and after the production of the Pageant (the "Pageant Rules"), and I understand that my failure to comply with any of the Pageant Rules may result in consequences to be determined by you, including, without limitation, disqualifying me from the Pageant, withholding any Prizes (as defined below) or other compensation to which I may have been entitled, and requiring me to return any Prizes or other compensation I may have already received. I agree to report to you immediately any violations of any of the Pageant Rules by any other contestant. I further agree to participate as a contestant in the 2012 Miss USA Pageant as and to the extent required by you on such dates and at such locations as you may designate in your sole judgment, and which dates and locations you may change in your sole judgment. I further agree to be available and to participate as and where you or NBC may require in connection with publicity, interviews and similar matters (e.g., to appear on news shows, talk shows and other programs, and to make other appearances as required by you or NBC) in connection with the 2012 Miss USA Pageant as and when designated by you or NBC in your or NBC's sole judgment (whether before, during or after production of the 2012 Miss USA Pageant). Without limiting the generality of the foregoing, I agree to participate in up to ten (10) days of publicity activities (outside of the dates for production of the 2012 Miss USA Pageant), at times and locations to be determined by you or NBC in your or NBC's sole judgment.

   (c) I agree to fully cooperate with the chaperones and/or staff assigned to me for my protection and welfare during the 2012 Miss USA Pageant in the Host City.

   (d) I agree to keep punctually all appointments which require my presence, including, for example, arriving at the Host City as scheduled by you.

   (e) I agree that if I display in the 2012 Miss USA Pageant or submit to you for display in the 2012 Miss USA Pageant any photographs, videos, published works and/or other artistic or other copyrightable materials, then I represent and warrant that I have obtained all of the rights, clearances and releases necessary for you and any broadcaster to exploit said materials in the 2012 Miss USA Pageant, any advertisements, promotion and publicity for the 2012 Miss USA Pageant and otherwise pursuant to your rights hereunder.

   (f) I agree that in connection with my participation in the 2012 Miss USA Pageant, I shall not infringe upon or violate the rights of any other person or entity, shall not cause injury or harm to any other person or property and shall abide by all Pageant Rules, as well as all applicable laws, rules, regulations, codes and ordinances. I agree to use my best efforts not to damage any equipment, wardrobe or other materials furnished or otherwise used by you in connection with the Pageant. I will not tamper with or hinder in any way any of the equipment used in connection with the Pageant.

   (g) I understand and agree that while my parents or guardian may travel to the Host City to attend the 2012 Miss USA Pageant at their own expense, control over my activities during the 2012 Miss USA Pageant will rest solely with you and the chaperones and/or staff you assign to me.

(Initial Here)

(h) I understand and agree that if I do not win the title Miss USA 2012, I will be released as a contestant upon the conclusion of the Finals Show of the 2012 Miss USA Pageant. If I do not win the title Miss USA 2012, you will not be responsible for any of my expenses if I remain in the Host City beyond the day after the selection of Miss USA 2012.

(i) I agree that I will not incur, and am not authorized to incur, any debts or other obligations on your behalf, or with respect to the 2012 Miss USA Pageant.

(j) I understand that while you may choose to do so, you have no obligation whatsoever to obtain insurance coverage for any harm I may suffer in or in connection with the Pageant. Although not required as a condition of my participation in the Pageant, I, alone, am responsible for maintaining insurance policies to cover any harm I may suffer in or in connection with the Pageant.

(k) I understand and agree that your only obligation, unless I am selected Miss USA 2012, is to accept me as a contestant, provided I at all times have satisfied all the eligibility requirements and complied with and fulfilled all of my obligations, including, without limitation, those obligations set forth in this Agreement, (including, without limitation, Paragraph 5 herein). I further understand and agree if I participate as a contestant in the Pageant, I shall appear as myself, my appearance shall not be a performance, shall not constitute an employment relationship between me and you, shall not be subject to any union or guild collective bargaining agreement, and shall not entitle me to any wages, salary, corporate benefits, workers' compensation benefits, or other compensation of any kind, under any such collective bargaining agreement or otherwise. I also understand that nothing in this Agreement or any conduct pursuant thereto shall constitute an agency relationship between me and you and that I shall have no authority to speak or act on your behalf whatsoever, except as may otherwise be expressly required or permitted by you.

(l) I agree that from the date I sign this Agreement until one day after Miss USA 2012 is selected, whether or not I win or succeed to the title Miss USA 2012, I agree to conduct my activities and life in accordance with the highest ethical and moral standards, and I will not engage in any activity that might bring myself, you, the Miss USA Pageant, my State Pageant, the Miss USA Pageant system, Trump, NBC, or any of their respective subsidiaries, affiliated or related companies, officers, directors, partners, shareholders or employees into public disrepute, ridicule, contempt or scandal or might otherwise reflect unfavorably upon any of the foregoing individuals or entities or might shock, insult or offend the community or any class or group thereof. I acknowledge that, by way of example, and without limiting the generality of the foregoing in any way, appearing in public or permitting myself to be photographed in a state of partial or total nudity or in a lewd, compromising or sexually suggestive manner constitutes a violation of this provision (this includes photographs or images that may appear on any web site, such as MySpace or Facebook). If, from the date I sign this Agreement until one day after Miss USA 2012 is selected, I am arrested or charged with the commission of a crime (including, without limitation, reckless or drunk driving or minor in possession of alcohol) or engage in any activities in violation of this provision, then you may, in your sole judgment, disqualify me from participating in the 2012 Miss USA Pageant and/or succeeding to the title Miss USA 2012 as per Paragraph 8. If I am selected Miss USA 2012 and during my reign knowledge of any such arrests, criminal charges or activities becomes known to you, then you may, in your sole judgment, terminate my employment as Miss USA 2012. Your decisions on all matters arising under this provision shall be conclusive.

(m) I understand and agree that I shall not mention or "plug" any product, service, venture or thing during the televised portions, if any, of the Pageant. Furthermore, I represent and warrant that I have not given or agreed to give anything of value to anyone to be a participant in or in connection with the Pageant, that I have not accepted or agreed to accept anything of value to promote any products, services or ventures in or in connection with the Pageant, and that I will not do any of the foregoing in the future. I know that you do not permit any such conduct, and that it may be a federal offense not to tell you if I have done so. I also agree to notify you immediately if any person attempts or has attempted to induce me to do anything in violation of the foregoing, or which is in any way dishonest.

(n) I understand and agree that I shall not share or make any promise to share all or any portion of any Prizes with any contestant or anyone else involved with the 2012 Miss USA Pageant, and any agreement shall be unenforceable. In addition, I understand and agree that I shall not assign any Prize to another person or organization prior to my receipt of any such Prize. I understand that I have no duty to share any Prize with Licensee. I understand that it may be a federal offense for anyone to do anything to "rig" or in any other way influence the outcome of the Pageant with the intent to deceive the viewing public, including, without limitation, colluding to share any Prize. I also understand that it may be a federal offense to offer or accept any special or secret information or assistance in connection with the Pageant. I agree that I will not participate in any such acts, or in any other deceptive or dishonest acts, and to immediately notify you and a representative of the broadcaster(s) if anyone else tries to induce me to perform any such acts.

(o) I understand and agree that I shall be responsible for all taxes and other obligations that are or may come due as a result of my receipt of any Prize or other compensation in or in connection with Pageant, if any. Provided that alternative arrangements are not made in advance, you shall use reasonable efforts to deliver any Prize I

Initial Here: SM

may win to the address provided in the attached Personal History Form, or the closest feasible place for pickup by me within ninety (90) days after the conclusion of the Pageant's Finals Show, or as soon thereafter as possible if delivery within ninety (90) days is not reasonably possible; provided, however, you may deduct, withhold or require payment of any such taxes or other obligations before delivering any Prize. I agree to pay all shipping costs for deliveries outside the continental United States. You shall not be responsible for any failure of any supplier to fulfill its commitment to furnish any Prize, delays in delivery of any Prize by a supplier, or for the condition in which any Prize is received. My refusal to accept any Prize shall constitute a forfeiture of that Prize, and I shall not advertise or publicize my winning of any Prize, nor shall I sell any Prize consisting of travel, lodging or scholarships. As used in this Agreement, "Prize" means, among other things, any awards, money, goods and services, but does not include any travel to or lodging at the Host City provided at your or Licensee's expense in connection with my participation in the Pageant.

(p)   I understand and agree that in the event of a malfunction, interruption, discontinuation, disruption or dispute of any nature whatsoever affecting the outcome of the Pageant, any Pageant activity and/or the awarding of Prizes, your decision with respect to the handling of such circumstance (including, but not limited to, whether or how to resume the Pageant activity or to award any Prize) shall be final. I also understand that the commencement of production, the production, and the completion of production of the Pageant may be delayed, suspended, terminated or abandoned by you at any time due to events beyond your control. If production of the Pageant is abandoned or terminated, no Prize will be awarded to any participant, and I understand that, in such event, I will forfeit my chance to win any Prize.

(q)   I agree that I will not bring with me to the Host City any items not approved by you in your sole judgment, including, without limitation, any dangerous or illegal items ("Prohibited Items"). You may conduct a thorough search of my person and my belongings at any time, may inspect any items I bring with me to the Host City or any other locations, and may confiscate any Prohibited Items. I understand and agree that you may not return any Prohibited Items.

(r)   I agree that if I win the 2012 Miss USA Pageant (or succeed to the Miss USA 2012 title before the 2012 Miss Universe Pageant is held), I will participate in the 2012 Miss Universe Pageant and abide by all the rules and regulations governing the 2012 Miss Universe Pageant, including, without limitation, signing the Contestant Entry Form/Contract for the 2012 Miss Universe Pageant. I understand that I will not be eligible to compete in the 2012 Miss Universe Pageant unless and until I sign the Contestant Entry Form/Contract for the 2012 Miss Universe Pageant. If I do not sign the Contestant Entry Form/Contract for the 2012 Miss Universe Pageant immediately after winning the Miss USA 2012 title, you may, in your sole judgment, terminate my employment as Miss USA 2012. If I am selected Miss Universe 2012, then my employment as Miss USA 2012 will automatically terminate.

(s)   I agree that if I am chosen as runner-up or semi-finalist in the 2012 Miss USA Pageant and you select me to participate in an international pageant to which you send a contestant, I will do so and abide by the rules and regulations governing that pageant, including, without limitation, sign the contestant entry form or contract for that pageant.

6.     TO THE MAXIMUM EXTENT PERMITTED BY LAW, I IRREVOCABLY RELEASE YOU, NBC UNIVERSAL, INC., NBC WEST, LLC, NBC PAGEANTS, INC., MR. DONALD J. TRUMP, TRUMP PAGEANTS, INC., THE TRUMP ORGANIZATION, ERNST & YOUNG, ANY TELEVISION NETWORK, STATION OR CHANNEL, CABLE NETWORK, OR SATELLITE NETWORK THAT AIRS THE PAGEANT, THE ADVERTISERS CONNECTED WITH THE PAGEANT, EACH OF THEIR RESPECTIVE PARENT, SUBSIDIARY AND AFFILIATED COMPANIES, ALL OTHER PERSONS AND ENTITIES CONNECTED WITH THE PAGEANT, AND EACH OF THEIR RESPECTIVE PARTNERS, OFFICERS, DIRECTORS, AGENTS, REPRESENTATIVES, EMPLOYEES, SUCCESSORS, ASSIGNEES, AND LICENSEES (HEREIN THE "RELEASED PARTIES") FROM ANY AND ALL CLAIMS, ACTIONS, DAMAGES, LIABILITIES, LOSSES, COSTS AND EXPENSES OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND COSTS) ARISING FROM, OR BY REASON OF MY PARTICIPATION IN, OR IN CONNECTION WITH THE PAGEANT, INCLUDING, WITHOUT LIMITATION, THE CONTESTANT SELECTION PROCESS,   ANY TRAVEL I UNDERTAKE IN CONNECTION WITH MY PARTICIPATION IN THE PAGEANT, ANY EXPLOITATION OF THE PAGEANT, MY APPEARANCE IN THE PAGEANT, THE FAILURE OF YOU TO SELECT ME AS A CONTESTANT IN THE PAGEANT, MY REMOVAL OR DISQUALIFICATION AS A CONTESTANT, THE CANCELLATION OF THE PAGEANT, THE EXERCISE BY YOU OR ANYONE ELSE OF ANY RIGHTS GRANTED BY ME UNDER THIS AGREEMENT, OR ANY TAXES OR OTHER OBLIGATIONS I MAY INCUR AS A RESULT OF MY PARTICIPATION IN THE PAGEANT, ON ANY LEGAL THEORY WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE, RIGHTS OF PRIVACY AND PUBLICITY, DEFAMATION, FALSE LIGHT, INFLICTION OF EMOTIONAL DISTRESS, BREACH OF CONTRACT, COPYRIGHT INFRINGEMENT AND CLAIMS BASED ON DISSATIFACTION WITH ANY PRIZE) (COLLECTIVELY, THE "RELEASED CLAIMS"). THE RELEASED CLAIMS SPECIFICALLY INCLUDE, WITHOUT LIMITATION, ANY AND ALL CLAIMS, ACTIONS, DAMAGES, LIABILITIES, LOSSES, COSTS AND EXPENSES OF ANY KIND RESULTING FROM THE ACTIONS OF ANOTHER CONTESTANT OR ANY OTHER THIRD PARTY AT ANY TIME, OR FROM ANY DEFECT IN OR FAILURE OF EQUIPMENT, WARNINGS OR INSTRUCTIONS, OR

MY PREPARATION FOR PARTICIPATION OR APPEARANCE IN OR ELIMINATION FROM THE PAGEANT, OR ACTIVITIES ASSOCIATED WITH THE PAGEANT, WHETHER OCCURRING BEFORE, DURING OR AFTER MY ACTUAL PARTICIPATION IN THE PAGEANT, AND WHETHER OR NOT CAUSED BY OR ARISING OUT OF THE NEGLIGENCE OF ANY OF THE RELEASED PARTIES. TO THE MAXIMUM EXTENT PERMITTED BY LAW, I ALSO AGREE THAT I WILL NOT BRING OR BE A PARTY TO ANY LEGAL ACTION OR CLAIM AGAINST THE RELEASED PARTIES, OR ANY OF THEM, BASED ON ANY OF THE RELEASED CLAIMS HEREUNDER. IN THE EVENT THAT THE FOREGOING RELEASE IS DEEMED UNENFORCEABLE FOR ANY REASON, AND ANY CONTROVERSY OR CLAIM CANNOT BE SETTLED THROUGH DIRECT DISCUSSIONS, MY SOLE RECOURSE AND REMEDY FOR BREACH OF THIS AGREEMENT BY YOU OR ANY OTHERS, OR ANY OTHER CLAIMS CONCERNING OR RELATING TO THE PAGEANT, SHALL BE THE MEDIATION AND/OR ARBITRATION PROCEEDINGS FOR MONEY DAMAGES PURSUANT TO PARAGRAPHS 22-23 BELOW.

IF THIS AGREEMENT IS BEING SUBSCRIBED IN CALIFORNIA AND/OR BY A CALIFORNIA RESIDENT, THE FOLLOWING SHALL APPLY: I HEREBY KNOWINGLY, VOLUNTARILY, EXPRESSLY AND IRREVOCABLY WAIVE APPLICATION OF CALIFORNIA CIVIL CODE SECTION 1542, WHICH I CERTIFY I HAVE READ AND WHICH STATES IN PERTINENT PART: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR". I UNDERSTAND AND ACKNOWLEDGE THE SIGNIFICANCE AND CONSEQUENCE OF MY WAIVER OF CALIFORNIA CIVIL CODE SECTION 1542 AND FURTHER UNDERSTAND AND ACKNOWLEDGE THAT I MAY HEREAFTER DISCOVER CLAIMS PRESENTLY UNKNOWN OR UNSUSPECTED, OR FACTS IN ADDITION TO OR DIFFERENT FROM THOSE WHICH I NOW KNOW OR BELIEVE TO BE TRUE WITH RESPECT TO THE MATTERS RELEASED HEREIN. NEVERTHELESS, IT IS MY INTENTION, THROUGH MY EXECUTION OF THIS AGREEMENT, TO FULLY AND FINALLY SETTLE AND RELEASE ALL SUCH MATTERS, AND ALL CLAIMS RELATIVE THERETO, WHICH DO NOW EXIST, MAY EXIST OR HAVE EXISTED, AND THAT I WILL HEREAFTER NOT BE ABLE TO MAKE ANY CLAIM AGAINST THE RELEASED PARTIES REGARDING ANY SUCH MATTERS.

7.   If I am selected Miss USA 2012, you will employ me, and I accept your employment, on the following terms and conditions:

(a)   You employ me as Miss USA 2012 to render services to you and those you authorize as a model, actress, electronic media performer (for television, motion picture, video cassette and video or laser disc, any computer assisted media, radio, Internet or any other media, whether now known or hereafter developed), entertainer and public relations representative and in any other capacity in keeping with my title as Miss USA 2012, from the date I am selected Miss USA 2012 through and including one day after Miss USA 2012 is selected. I will receive a salary of $40,000 on an annualized basis during this period, less authorized deductions or withholdings required by applicable law, payable in accordance with your payroll practices. My salary shall be my exclusive compensation notwithstanding that the compensation you receive for my services may differ. I understand that my total salary may be more or less than $40,000 because there may be more or fewer than 365 days between the date I am selected Miss USA 2012 and the date I cease to be Miss USA 2012. In addition, as part of any prize package I may receive if selected as Miss USA 2012, I may receive a cash prize, to be determined by you and your sponsors in your and their sole judgment, less authorized deductions or withholdings required by applicable law, payable when and as determined by you in your sole judgment, provided I have fully performed my obligations stated in this Agreement to your satisfaction.

(b)   I agree to furnish such services as your employee as you may designate in your sole judgment, including, but not limited to, the following:

(1)   Assisting in advertising and promotion of your sponsors and any other individuals or companies and their products and services as you may authorize.

(2)   Participating in promotional activities; making appearances during fashion shows, trade shows, and other events; autographing; meeting and conversing with the public, customers and employees of your sponsors; making appearances as an apparel model or as Miss USA 2012; and, giving talks and interviews in theaters, clubs, department stores and restaurants, on television, radio and for newspapers and any other media as you may direct.

(3)   Endorsing products and services; allowing my name, sobriquet, likeness (actual or simulated), photograph, caricature, voice, biographical material, signature and any other indicia of my identity (collectively, my "Likeness") to be used in connection with the advertisement or sale of products and services and for other commercial purposes; utilizing, displaying and/or wearing the products, goods and merchandise of various persons and entities as required and specified by you; and, using the services of various persons and entities as required and specified by you.

(4)   Traveling and giving interviews as your schedule of appearances requires, including weekends and holidays, and including travel by air and to foreign countries.

Initial Here: SM

v1.0

- 9 -

(5)    Assuming the role of spokesperson for the charity designated by you as the "Official Charity of the Miss USA Pageant."

I acknowledge and agree that, in connection with my employment as Miss USA 2012, you and those you authorize shall have the right to videotape, audiotape, film, portray, photograph and otherwise record me and my Likeness, whether I am aware or unaware of such recordings, in connection with my services as Miss USA 2012, as often and for such periods of time as you may request. Any such recordings, and all information I have supplied or may supply (including biographical information), all materials I have provided or may provide (including photographs and videos of me and/or others, written submissions, and any other materials), any and all other information you may have received or will receive from other sources, as well as my appearance, actions, voice and sound effects in connection with my services as Miss USA 2012, the results and proceeds of my services as Miss USA 2012, and any reproductions or recordings of any nature of any of the foregoing, in whole or in part, are collectively referred to as the "Employment Material." The Employment Material shall also include, without limitation, any and all material that I may create (or participate in the creation of) in connection with my employment as Miss USA 2012, including without limitation any personal journals or diaries (including, without limitation, any video diaries, vlogs and blogs) I may write or contribute to, and any photographs or other recordings taken by me during my employment as Miss USA 2012.

(c)   I agree and acknowledge that I will be employed in a bona fide professional capacity in an artistic endeavor. In this capacity, I agree that I will be compensated solely in the manner and amounts specified in subparagraph 7(a), and that I will not be eligible to receive additional compensation for those hours over 40, if any, which I work during the course of a one-week time period. I further acknowledge and agree that there will be occasions during the course of my employment when I will be required to work more than 40 hours during the course of a one-week period, and also that I may be required to work each week during my employment.

(d)   During the term of my employment, I agree to reside in the living quarters that you provide (currently anticipated to be in New York City; living quarters will be shared with the 2011/2012 Miss Universe titleholders and the 2011/2012 Miss Teen USA titleholders [whenever the 2011/2012 Miss Teen USA titleholders are in New York City]). During that term, you will book all appearances, prepare my travel and working schedules and handle all arrangements in connection with my activities as Miss USA 2012. You shall have the right to choose and designate my chaperone(s) and traveling companion(s), if any, during the term of my employment. As of this date, I have not entered into a management, agency or personal services contract with any individual, corporation or organization, or if I did enter into such a contract, it became null and void by its terms when I won the Miss USA 2012 title or it was suspended and became temporarily void by its terms when I won the Miss USA 2012 title and shall remain suspended and temporarily void at all times during the period during which I hold such title. I have not engaged any manager or talent or employment agent, and I will not do so during the term of my employment with you.

(e)   You agree to furnish hotel accommodations and transportation facilities for me while I am traveling at your request. You agree to pay for reasonable living expenses I incur while so traveling. Upon the expiration of any trip you request, you agree to return me, at no expense to me, to my place of residence in the United States. At the expiration of my employment as Miss USA 2012, you will return me to my home, at your expense, provided that my trip home is made within seven days after Miss USA 2012 is chosen.

(f)   During the term of my employment, I agree:

(1)    To cooperate fully with you and your affiliates, employees, agents, representatives, designees, licensees, sponsors, official charity affiliations and the like in carrying out their instructions in connection with the services I will be performing under this Agreement. Without limiting the foregoing, I agree to follow and obey all rules, instructions, directions and requirements implemented by you in connection with my employment, as they may be changed, modified or amended by you at any time.

(2)    To keep punctually all appointments and appearances that require my presence.

(3)    Not to engage in any conduct, acts or omissions that may be detrimental to you, your affiliates, others connected with you or the Miss USA Pageant.

(4)    To deal with you fairly and in good faith in the performance of my obligations under this Agreement.

(5)    To comply with all personnel policies implemented by you before and/or during the term of my employment, including, without limitation, your insistence that I submit to alcohol and/or substance abuse testing.

(6)    To execute and deliver to you any and all documents that you consider necessary or desirable to evidence, effectuate or enforce this Agreement or any of the terms and conditions hereof.  I hereby appoint you my true and lawful attorney-in-fact to execute and deliver any such documents in the event I fail or refuse to do so in accordance with this Agreement promptly after your written request therefore (which appointment is deemed a power coupled with an interest and irrevocable under any and all circumstances).

Initial Here: _CM_

v1.0

(7)   Not to compete in any other pageant or competition other than the 2012 Miss Universe Pageant.

(g) (1)   During the term of my employment, my services will be exclusive to you and I will not render services to any other person or entity and, except as required under this Agreement, will not make any public appearances, endorse any product or service, or allow my Likeness to be used in connection with the advertising, merchandising or sale of any product or service without first obtaining your written permission. In addition, for a period of 12 months following the conclusion of the term of my employment, I agree to comply with and be bound by the terms and conditions of any agreement entered into by you during the term of my employment with respect to my services hereunder, provided that you will not obligate me to render services to any party following the conclusion of the term of my employment without my permission. By way of example and without limiting the generality of the foregoing, I acknowledge and agree that I will comply with the exclusivity provisions in any such agreements and, in this regard, I will not render services to any other person or entity, endorse any product or service, or allow my Likeness to be used in connection with the advertising, merchandising or sale of any product or service if such services, endorsement or use of my Likeness would violate the provisions of any such agreements.

(2)   I will not, anywhere in the world, enter into any agreement to perform modeling, acting, performing, advertising, theatrical or promotional services depicting, concerning, referencing or relating in any way to my Miss USA title or my affiliation with the Miss USA Pageant; endorse any product, service or commercial enterprise if the endorsement features or references my Miss USA title or my affiliation with the Miss USA Pageant; or make or allow others to make use of or reference my Miss USA title or my affiliation with the Miss USA Pageant for any other commercial purposes, unless I first receive your specific written consent.   This obligation will survive the expiration or sooner termination of this Agreement.

(h) (1)   An event of "incapacity" shall be deemed to exist hereunder if I become incapacitated or prevented from fully performing hereunder or from fully complying with my obligations hereunder by reason of my illness, my mental, physical or other incapacity, my facial or physical disfigurement, or any impairment or material alteration in my present facial or physical appearance or in my voice, or my failure to comply with any obligation hereunder by reason of any cause rendering such non-compliance excusable at law. Any occurrence which would otherwise be deemed an event of incapacity hereunder shall not be so deemed and shall, instead, be deemed an event of "default" pursuant to subparagraph (2) below, if such occurrence is a result of my use of alcohol or of any drug or controlled substance. If you or I at any time allege that I am, or if I shall actually be, incapacitated by illness or other incapacity or by a default of the kind described in the preceding sentence, and thereby prevented from performing hereunder or otherwise fully complying with my obligations hereunder, then you may, at your expense, require me to submit to medical examination(s) to be conducted by such physician(s) as may be designated by you, including, without limitation, drug and controlled substance testing and alcohol testing. I may, at my expense, cause my own physician to be present at any such examination(s), provided that no delay or interference with such examination(s) results therefrom.  I authorize those who perform any such examination(s) to disclose to you, and those you authorize, all information about me obtained in connection with any such examination(s).

(2)   An event of "default" shall be deemed to exist hereunder if I at any time breach any provision of this Agreement, or if I at any time fail, refuse or neglect (other than by reason of my incapacity as specified in the first sentence of subparagraph (1) above), or at any time cause you to be notified that I intend to fail, refuse or neglect, to report or render services to the full limit of my ability, as, when and where required hereunder, or to comply fully with my obligations hereunder as required by you, or if I, at any time fail to confirm by written notice within twenty-four (24) hours after you request that I give such confirmation, that I will perform fully hereunder.

(3)   If, during the term of my employment: (i) any event of default occurs hereunder; (ii) any event of incapacity occurs hereunder; (iii) I marry or become pregnant or become a parent; or, (iv) I am prevented from carrying out my duties because of an act of God, rule, order or act of government or governmental instrumentality, or other cause of similar or different nature beyond my control, then you will have the right to terminate my employment as Miss USA 2012.

(i)   I acknowledge that all results and proceeds of my services hereunder in any capacity, including, without limitation, the Employment Material, are and shall be "works-made-for-hire" (as that term is understood and interpreted under U.S. and international copyright laws) within the scope of my services for you and that you or those you authorize, as applicable, shall be the sole author and exclusive owner and proprietor for all purposes of such results and proceeds and any and all rights therein (including, without limitation, all rights of copyright and all copyright renewals and extensions), throughout the universe and in perpetuity, free of any claim by me or any person claiming any rights in any capacity through me. Without limiting the foregoing, the results and proceeds of my services hereunder in any capacity may be used, broadcast, exhibited, distributed, advertised, publicized, promoted or otherwise exploited by such means and for such purposes (including, without limitation, merchandising, and commercial and non-commercial publishing) and by and in any manner and in any and all

v1.0

Initial Here

- 11 -

media, now known or hereafter devised (including, without limitation, television, theatrical, non theatrical, cassettes, discs and other home video devices, radio, the Internet and other on line or computer-assisted media, and print media) as you designate, throughout the universe and in perpetuity, at any time and from time to time, alone or together as part of other works or any kind or nature, all without notice to, consent from, or payment or other consideration of any kind to me or on my behalf. In the event that said work-made-for-hire status is deemed unenforceable for any reason, I hereby irrevocably assign, transfer and convey to you and those you authorize, without reservation, all of my now or hereafter existing rights, title and interest of every kind and nature in and to the results and proceeds of my services hereunder in any capacity (including, without limitation, all rights of copyright and all copyright renewals and extensions), throughout the universe and in perpetuity, upon its creation, to the full extent set forth above. I acknowledge your right and the right of those you authorize to edit, cut, rearrange, adapt, dub, revise, modify, fictionalize, or otherwise alter or combine, in whole or in part, with other material or works such results and proceeds for any such purposes in your sole judgment, and I waive the exercise of any "moral rights," "droit moral," and any analogous rights, however denominated, in any jurisdiction of the world, which I have. Furthermore, you and those you authorize will own any so-called "rental and lending rights" or similar rights. I understand that you are not obligated to exercise these rights or any other rights granted by me hereunder.

(j)   I irrevocably grant you and those you authorize the right, but not the obligation, to use, and authorize others to use, my Likeness, in perpetuity and throughout the universe, in any manner and in any and all media whatsoever (whether now or hereafter known or devised), in connection with the rights granted to you in this Agreement, my services as Miss USA 2012, the Employment Material, the Miss USA Pageant, the Miss USA Pageant system, your business activities and the business activities of those you authorize, and the development, production, exhibition, advertisement, publicity, promotion, marketing, merchandising and other exploitation thereof and all subsidiary and ancillary rights therein, for any purpose, including, without limitation, for any commercial purpose whatsoever, including, but not limited to, product endorsement, all without notice to, consent from, or payment or other consideration of any kind to me or on my behalf. I understand that you are not obligated to exercise these rights or any other rights granted by me or on my behalf. I hereby release you and your designee(s) from any and all claims of any kind (including, but not limited to, rights of privacy and publicity) arising out of, resulting from or by reason of any exploitation of the results and proceeds of my services as Miss USA 2012, the Employment Material or my Likeness, as set forth hereunder. I agree that I will not bring or be a party to any legal action or claim against you or your designee(s) based upon or rising out of any exploitation of the results and proceeds of my services as Miss USA 2012, the Employment Material or my Likeness as set forth hereunder.

(k)   In the event any controversy or claim arising out of or relating to this Agreement, the breach of any term hereof, or my employment as Miss USA 2012 cannot be settled through direct discussions, the parties agree to resolve such controversies or claims pursuant to the mediation and/or arbitration provisions in Paragraph 22 below, and I agree that my remedies for breach of this Agreement by you or others, or any other claims concerning or relating to my employment as Miss USA 2012, shall be limited to actual damages pursuant to Paragraph 23 below. I acknowledge that the services to be rendered by me and the rights and privileges I grant you under this Agreement are of a special, unique and artistic and intellectual character, the loss of which cannot be adequately compensated in damages in an action at law. I further acknowledge that a breach by me of any of the provisions of this Agreement will cause you irreparable injury and damage. You will be entitled to injunctive and other equitable relief if I breach or threaten to breach this Agreement. If you seek or obtain injunctive or other equitable relief, this will not be a waiver of any other rights or actions you may have for damages or otherwise, and all rights under this Agreement will be regarded as cumulative. No waiver by you of any breach of this Agreement will be deemed to be a waiver of any preceding or succeeding breach of the same or any other covenant or provision.

(l)   I authorize you, in my name or in your own name, to take any action of any kind, including the commencement of legal proceedings, at your expense, against any person, entity, organization or enterprise as you alone determine, which uses or attempts to use my Likeness for any purpose without your prior written consent during the term of my employment as Miss USA 2012 or at anytime thereafter in connection with my participation as a contestant in the 2012 Miss USA Pageant, my employment as Miss USA 2012, or the Employment Material. I agree to cooperate fully in any action of this type as you request, including, but not limited to, devoting time to being prepared to give testimony and testifying at deposition and/or trial. Nothing herein shall be deemed to obligate you to undertake any action in such circumstances.

(m)   I understand and agree that all publicity in connection with my employment as Miss USA 2012 is under your sole control, and I agree that, except as otherwise required or permitted by you, I will not advertise or promote my employment as Miss USA 2012, receive or generate any monetary advantage from my employment as Miss USA 2012, or use or disclose to any party any information or trade secrets obtained or learned as a result of my employment as Miss USA 2012, nor shall I authorize any others to do so. Without in any way limiting the foregoing, I will not prepare or assist in the preparation of any written, audio or visual work (including, without limitation, any television or radio programming, commercials or advertisements, print media, Internet/on-line

Initial Here: SM

services, or any other media outlet, whether now known or hereafter devised) that depicts, concerns, or relates in any way to my employment as Miss USA 2012, the Miss USA Pageant or the personal lives and/or business affairs of you, Trump, or NBC. In addition, I shall consult with you regarding any and all publicity in connection with my employment as Miss USA 2012, and I shall not consent to any publicity regarding the Miss USA Pageant, my employment as Miss USA 2012 or the personal lives and/or business affairs of you, Trump or NBC without your prior written approval. I recognize that a breach by me of this provision would cause you, Trump and NBC irreparable injury and damage that cannot be reasonably or adequately compensated by damages in an action at law, and, therefore, I hereby expressly agree that each of you, Trump and NBC shall be entitled to injunctive and other equitable relief, without posting any bond, to prevent and/or cure any breach or threatened breach of this provision by me. In addition, I agree that in the event of any breach of this provision by me, I will return any Prize or other compensation that I may already have received in connection with the 2012 Miss USA Pageant or my employment as Miss USA 2012 (except for any portion of my salary earned by me) and forfeit my right or opportunity to receive any Prize or other compensation that I have not yet received (except for any portion of my salary should I remain employed as Miss USA 2012), and you, Trump and NBC shall each have the right to seek, among other things, (1) recovery or disgorgement of the monies or other consideration received by me in connection with my breach of this provision, if any, and (2) recovery of your and/or Trump's and/or NBC's attorneys' fees incurred to enforce this provision. I acknowledge and agree that my obligations with respect to confidentiality and publicity as set forth in this paragraph shall continue in perpetuity unless terminated by you in writing. In no event will I have the right to terminate my confidentiality obligations under this Agreement.

(n) I acknowledge and agree that significant benefits of the consideration I obtain in connection with my employment as Miss USA 2012 are the publicity I receive and the opportunity to further my professional career. In consideration for these benefits and the support, advice and guidance that you will provide, or have provided, to me during my employment as Miss USA 2012, I agree to pay you a fee equal to twenty percent (20%) of the gross monies and other consideration of any kind or character received by or due to me from any and all sources in the entertainment or allied fields, including, without limitation, television, motion pictures, radio, stage, personal appearances, modeling, commercial endorsements, and from the sale, lease, license or other disposition of literary, dramatic and musical material or productions, for use in any medium of communication or entertainment, whether now known or hereafter invented, and from any and all allied or other fields of entertainment or similar endeavor (including, without limitation, cable television, pay television, audiovisual devices, etc.) in which I may be professionally engaged after the end of my employment as Miss USA 2012 resulting from any and all agreements and arrangements entered into, negotiated and/or discussed during my employment as Miss USA 2012 or within ninety (90) days after the end of my employment as Miss USA 2012 (and all extensions, renewals, amendments, modifications and substitutions of any such agreements or arrangements). I agree to execute and deliver to you any and all documents (including, without limitation, letter[s] of direction) that you shall deem necessary or desirable to effectuate the purposes of this provision. In case of my refusal or failure to so execute or deliver, or cause to be so executed and delivered, any such document promptly after your written request therefore (5 business days), then, in such event, I hereby nominate, constitute, and appoint you, and you shall therefore be deemed to be my true and lawful attorney-in-fact (which power of attorney is coupled with an interest), irrevocably, to execute and deliver all such documents in my name and on my behalf..

(o) I understand that if my employment as Miss USA 2012 is terminated for any reason (including, without limitation, as set forth in Paragraphs 5[i], 5[r], 7[h][3], 10, 14[e] and 14[b] herein) or if I resign my employment as Miss USA 2012 for any reason, such termination or resignation shall not affect any of the rights I have assigned to you or others in this Agreement or in any other agreement related to the Pageant or my employment as Miss USA 2012 or any of the covenants, agreements, waivers, releases or indemnities made by me in this Agreement or any other agreement related to the Pageant or my employment as Miss USA 2012, including, without limitation, Paragraphs 1, 2[f], 4, 7, 12, 22 and 23 herein. In addition, if my employment as Miss USA 2012 is terminated for any reason or if I resign my employment as Miss USA 2012 for any reason, my title as Miss USA 2012 shall be void and I will thereafter have no right to use such title for any purpose whatsoever, I shall forfeit any Prizes or other consideration which I may have won (except for the portion of my salary earned by me through the date of termination or resignation) and I will return any and all Prizes or other consideration already delivered to me (except for the portion of my salary earned by me through the date of termination or resignation). In such event, you may make any public explanation or announcement you choose regarding such action.

8.   If the title Miss USA 2012 becomes vacant and I succeed to the title as a runner-up, I agree to serve as Miss USA 2012 and perform all the obligations relating to said title contained in this Agreement, including, but not limited to, the terms under which I will be providing services as set forth in Paragraph 7 above. However, I acknowledge that if this happens, I will not be entitled to any of the Prizes awarded to Miss USA 2012 at the time of her election, including, but not limited to, the cash prize referred to in subparagraph 7(a) above. I further acknowledge and agree that I may only succeed to the title Miss USA 2012 if: (i) I am a current reigning Miss USA 2012 state pageant titleholder in full compliance with all duties and obligations owed both to you and Licensee at the time the title Miss USA 2012 becomes vacant; or (ii) I have completed my reign as a Miss USA 2012 state pageant titleholder in such full

Initial Here: SM

v1.0

- 13 -

compliance after achieving runner up status at the 2012 Miss USA Pageant but before such time as the title Miss USA 2012 becomes vacant.

9.    I acknowledge your exclusive ownership and the validity of the trademarks and service marks "MISS UNIVERSE," "MISS TEEN UNIVERSE," "MISS USA," "MISS TEEN USA," and further acknowledge that the MISS UNIVERSE, MISS USA and MISS TEEN USA Pageants and the associated trademarks, trade names and service marks are your exclusive property. All uses of these trademarks and service marks in connection with my activities will inure to your benefit. I understand and agree that any good will attributable to my use of these trademarks and service marks vests exclusively in you. I agree that I will not engage in any acts or omissions which may damage or otherwise affect your trademark and/or property rights or your goodwill therein in any manner whatsoever. I further agree that I will not in any way dispute or impugn the validity of any of your trademarks and service marks, your rights to those trademarks and service marks, or your rights to use those trademarks and service marks. I will not at any time use, or allow others to use, any of your names, logos, trademarks, trade names or service marks (including, without limitation, my State Pageant, preliminary state pageant and/or at-large state pageant title[s], if any) or those of any of your related companies or any names, logos, trademarks, trade names or service marks confusingly similar to any of your names, logos, trademarks, trade names or service marks in connection with any kind of modeling, acting, performing, advertising, theatrical or promotional services I may perform and/or any advertising, promotion, publicity, merchandise, or other product or service.

10.    I hereby certify, represent and warrant that all Representations made by me in this Agreement, in my State Pageant Contestant Entry Form/Contract, in any other document or agreement that I have signed or will sign in connection with the Pageant, and I otherwise provide to you are true, accurate and complete. Without in any way limiting the foregoing, I certify that I have not withheld or mischaracterized any information regarding myself or my background. In addition, I agree that I will fully comply with all of the terms, provisions, restrictions and obligations of this Agreement and any other requirements Licensee imposes on me at your direction. If any Representation made by me is false, misleading or incomplete in any respect, I omit to make a required representation or to state a fact which would render a Representation I have made not misleading, I fail to fully comply with all of the terms, provisions, restrictions and obligations of this Agreement, my State Pageant Contestant Entry Form/Contract or any other requirements Licensee imposes on me at your direction, or I breach any other agreement I have made or may make in connection with the 2012 Miss USA Pageant, you may, in your sole judgment, take any action that you deem appropriate, including, without limitation, disqualifying me from participating in the 2012 Miss USA Pageant, succeeding to the title Miss USA 2012 as per Paragraph 8 and/or terminating my reign as Miss USA 2012, as applicable.

11.    I irrevocably authorize you and those you authorize to investigate, access and collect information about me, about any of the statements made by me in this Agreement, my State Pageant Contestant Entry Form/Contract, any supporting documents and any other document that I have signed or do sign in connection with my participation as a contestant in the 2012 Miss USA Pageant, or any other written or oral statements I make in connection therewith. I irrevocably authorize you and/or those you authorize to secure information about me from any source, including, without limitation, my current and former employers, associates, family members, educational institutions, government agencies, credit reporting agencies, and any references I have provided or that are developed by or for you or those you authorize, and I irrevocably authorize such parties to provide information concerning me. I hereby unconditionally and irrevocably release and forever discharge all such parties and persons from any and all claims, actions, damages, liabilities and losses arising out of or in connection with any such investigation (including, without limitation, those who request information and those who provide information). I specifically authorize investigation of my employment records, medical records, and government records (including, without limitation, my motor vehicle records, criminal records, military records and credit and consumer reports). I acknowledge and agree that any such information obtained by you and/or those you authorize pursuant to this paragraph or otherwise may be used for any purpose designated by you in your sole judgment (including, without limitation, to disqualify me from the Pageant or terminate my employment as Miss USA 2012, as applicable), and may be described or otherwise related to any third party in any manner or media, including, without limitation, in advertisements, promotions, publicity, marketing, and merchandising, and in any other manner.

12.    I understand and agree that all publicity in connection with the 2012 Miss USA Pageant is under the sole control of you and Licensee, and that except as otherwise required or permitted by you or Licensee, I will not advertise or promote my participation in the Pageant, receive or generate any monetary advantage from my participation in the Pageant, or use or disclose to any party any information or trade secrets obtained or learned as a result of my participation in the Pageant, nor shall I authorize others to do so. Without in any way limiting the foregoing, I will not prepare or assist in the preparation of any written, audio or visual work (including, without limitation, any television or radio programming, commercials or advertisements, print media, Internet/on-line services, or any other media outlet, whether now known or hereafter devised) that depicts, concerns or relates in any way to my participation in or in connection with the Pageant or the personal lives and/or business affairs of you, Trump or NBC. In addition, I shall consult with you or Licensee regarding any and all publicity in connection with the Pageant or my involvement or participation in the Pageant, and I shall not consent to any publicity that relates in any way to the Pageant, my involvement or participation in the Pageant or the personal

v1.0

Initial Here: _SM_

lives and/or business affairs of you, Trump or NBC without your or, during my reign as the State Pageant titleholder, Licensee's prior written approval. I recognize that a breach by me of this paragraph would cause you, Trump and NBC irreparable injury and damage that cannot be reasonably or adequately compensated by damages in an action at law, and, therefore, I hereby expressly agree that each of you, Trump and NBC shall be entitled to injunctive and other equitable relief, without posting any bond, to prevent and/or cure any breach or threatened breach of this paragraph by me. In addition, I agree that in the event of any breach of this paragraph of this by me, I will return any Prize or other compensation that I may already have received in connection with the Pageant and forfeit my right or opportunity to receive any Prize or other compensation that I have not yet received, and you, Trump and NBC shall each have the right to seek, among other things, (a) recovery or disgorgement of the monies or other consideration received by me in connection with my breach of this provision, if any, and (b) recovery of your and/or Trump's and/or NBC's attorneys' fees and costs incurred to enforce the terms of this paragraph. I acknowledge and agree that my obligations with respect to confidentiality and publicity as set forth in this paragraph shall continue in perpetuity unless terminated by you in writing. In no event will I have the right to terminate my confidentiality obligations under this Agreement.

13.  I agree that you may disclose any and all of the information provided by me to any person for any purpose, on or off-air, to the maximum extent permitted by the law.

14.  (a)  I represent that at all times prior to the date of this Agreement, I have conducted my activities and life in accordance with the highest ethical and moral standards and that I have never been arrested or charged with the commission of a crime (including, without limitation, reckless or drunk driving or minor in possession of alcohol) or engaged in any activities that might bring myself, you, the Miss USA Pageant, the Miss USA Pageant system, Trump, NBC, or any of their respective subsidiaries, affiliated or related companies, officers, directors, partners, shareholders or employees into public disrepute, ridicule, contempt or scandal or might otherwise reflect unfavorably upon any of the foregoing individuals or entities or might shock, insult or offend the community or any class or group thereof. I acknowledge that, by way of example, and without limiting the generality of the foregoing in any way, having appeared in public or permitted myself to be photographed in a state of partial or total nudity or in a lewd, compromising or sexually suggestive manner constitutes a violation of this provision (this includes photographs or images that may appear on any web site, such as MySpace or Facebook).

TRUE  _✓_  FALSE_____

If the above is not true, please explain: _____

_____

_____

_____

AN ANSWER OF "NO" MAY NOT NECESSARILY LEAD TO DISQUALIFICATION.  HOWEVER, IT IS IMPORTANT THAT LICENSOR IS AWARE OF SUCH INFORMATION.  YOUR FAILURE TO ANSWER TRUTHFULLY MAY LEAD TO DISQUALIFICATION EVEN IF THE UNDISCLOSED INFORMATION WOULD NOT OTHERWISE HAVE RESULTED IN DISQUALIFICATION HAD THE APPLICANT ANSWERED TRUTHFULLY.

If you determine that I at any time have been charged with the commission of a crime or engaged in any activities in violation of this provision, then you may, in your sole judgment, disqualify me from participating in the 2012 Miss USA Pageant and/or succeeding to the title Miss USA 2012 as per Paragraph 8. If I am selected Miss USA 2012 and during my reign knowledge of any such criminal charges or activities becomes known to you, then you may, in your sole judgment, terminate my employment as Miss USA 2012.  Your decisions on all matters arising under this provision shall be conclusive.

(b)  If I am selected as Miss USA 2012, I will at all times during the term of my reign conduct my activities and life in accordance with the highest ethical and moral standards, and I will not engage in any activity that might bring myself, you, the Miss USA Pageant, the Miss USA Pageant system, Trump, NBC, or any of their respective subsidiaries, affiliated or related companies, officers, directors, partners, shareholders or employees into public disrepute, ridicule, contempt or scandal or might otherwise reflect unfavorably upon any of the foregoing individuals or entities or might shock, insult or offend the community or any class or group thereof. I acknowledge that, by way of example, and without limiting the generality of the foregoing in any way, appearing in public or permitting myself to be photographed in a state of partial or total nudity or in a lewd, compromising or sexually suggestive manner constitutes a violation of this provision (this includes photographs or images that may appear on any web site, such as MySpace or Facebook). If, during the term of my reign as Miss USA 2012, I am arrested or charged with the commission of a crime (including, without limitation, reckless or drunk driving or minor in possession of alcohol) or engage in any activities in violation of this provision, then you may, in your sole judgment, terminate my employment as Miss USA 2012.  I acknowledge that, by way of example, and

Initial Here: _CM_

without limiting the generality of the foregoing in any way, appearing in public or permitting myself to be photographed in a state of partial or total nudity constitutes a violation of this provision. Your decisions on all matters arising under this provision shall be conclusive.

15. I acknowledge that I may not assign, pledge, hypothecate, grant any interest in, or otherwise transfer any of my rights or obligations under this Agreement unless I have first obtained your express written consent, which you may withhold for any or no reason.

16. I understand there are and shall be no third party beneficiaries for my rights under this Agreement.

17. I agree not to seek to enforce any of my rights under this Agreement, or to make any claim arising out of or related in any manner to this Agreement, my relationship with you or my status as Miss USA 2012 or as a contestant to the Pageant, against any person or entity other than you.

18. The expiration, termination, cancellation or breach of this Agreement on whatever grounds and by whomever affected shall not affect your exclusive ownership of the 2012 Miss USA Pageant, the Material, or the Employment Material or affect any of your rights under this Agreement, according to the terms and conditions of this Agreement. Furthermore, any and all provisions of this Agreement that by their nature would survive the expiration or termination of this Agreement, including, without limitation, termination provisions, representations and warranties, confidentiality, indemnification and limitation of liability provisions and/or any other provision that expressly or impliedly imposes an obligation following the expiration or termination of this Agreement, will survive this Agreement and will continue to be binding upon the parties to this Agreement.

19. To the maximum extent permitted by law, I agree to defend, indemnify and hold harmless each of the Released Parties from any and all liabilities, claims, actions, damages, expenses, losses, and costs of any kind (including, without limitation, attorneys' fees and costs) caused by or arising out of my participation as a contestant in the 2012 Miss USA Pageant, including, without limitation, any one or more of the following:

   (a) any statement or action made or taken by me or anyone else on my behalf during or in connection with my participation in the 2012 Miss USA Pageant;

   (b) my failure to follow the advice or instructions of you or anyone else connected with the 2012 Miss USA Pageant;

   (c) my breach of any provision of this Agreement, my State Pageant Contestant Entry Form/Contract or any other agreement related to the Pageant; or

   (d) my possession or use of any Prize or my failure to pay taxes with respect to any Prize.

20. I understand that if I withdraw as a contestant in the Pageant for any reason, am disqualified as a contestant in the Pageant for any reason (including, without limitation, as set forth in Paragraphs 1[h], 5[b], 5[i], 10 and 14[a]) or otherwise am unable to participate in the Pageant for any reason, no such withdrawal, disqualification or inability to participate shall affect any of the rights I have assigned to you or others in this Agreement or any other agreement related to the Pageant or any of the covenants, agreements, waivers, releases or indemnities made by me in this Agreement or any other agreement related to the Pageant, including, without limitation, Paragraphs 1, 2(f), 4, 12, 22 and 23 herein. In addition, if I withdraw as a contestant in the Pageant for any reason, am disqualified as a contestant in the Pageant for any reason or otherwise am unable to participate in the Pageant for any reason, my State Pageant, preliminary state pageant and/or at-large state pageant title(s), if any, shall be void and I will thereafter have no right to use any such title(s) for any purpose whatsoever, I shall forfeit any Prizes or other consideration which I may have won and I will return any and all Prizes or other consideration already delivered to me. In such event, you may make any public explanation or announcement you choose regarding such action.

21. This Agreement will only become effective when you accept and sign it at your New York, New York office. This Agreement will be deemed to have been made and entered into in the County of New York, State of New York, United States of America. This Agreement, and all relations between and/or disputes between you and myself (whether the disputes sound in contract, tort, or otherwise), are to be exclusively construed in accordance with and/or governed by (as applicable) the laws of the State of New York, United States of America, without reference to New York or any other choice of law or conflicts of law principles. I consent to the exclusive personal jurisdiction and venue of any state or federal court located in the County of New York, State of New York to the extent that any court proceedings are commenced and hereby irrevocably waive any objection to such venue (including any objection of inconvenience); provided, however, that the foregoing shall not in any way diminish or limit the mediation and arbitration provisions set forth in Paragraph 22. Nothing in this Agreement is intended to invoke the application of any franchise, business opportunity, antitrust, "implied covenant", unfair competition, fiduciary or any other doctrine of law of the State of New York or of the United States of America, which would not otherwise apply.

22. If any controversy or claim arising out of or relating to this Agreement, the breach of any term hereof, or my participation in or in connection with the Pageant cannot be settled through direct discussions, the parties agree to endeavor first to settle the controversy or claim by mediation conducted in the County of New York, State of New York and administered by JAMS or its successors ("JAMS") under its applicable rules, before commencing any proceedings permitted under this paragraph. Notwithstanding the foregoing, if any party files suit in court, the other party or parties need not demand mediation to enforce the right to compel arbitration. If any controversy or claim is

v1.0

Initial Here [signature]

- 16 -

not otherwise resolved through direct discussions or mediation, it shall be resolved by binding arbitration conducted in the County of New York, State of New York, and administered by JAMS in accordance with its Streamlined Arbitration Rules and Procedures or subsequent versions thereof, including the optional appeal procedure (the "JAMS Rules"). The JAMS Rules for selection of an arbitrator shall be followed, except that the arbitrator shall be an arbitrator either experienced in the entertainment industry and licensed to practice law in New York or a retired New York State Supreme Court or federal judge. Any appellate panel shall consist of three neutral members, subject to the foregoing requirements. Upon conclusion of any arbitration proceedings hereunder, the arbitrator shall render findings of fact and conclusions of law and a written opinion setting forth the basis and reasons for any decision he or she has reached and shall deliver such documents to each party to the Agreement along with a signed copy of the award. Any judgment upon an award rendered by an arbitrator may be entered in any state or federal court in the County of New York, New York having jurisdiction of the subject matter hereof. The parties agree that any mediation and arbitration proceedings, testimony, and discovery, along with any documents filed or otherwise submitted in the course of any such proceedings (and including the fact that the mediation or arbitration is even being conducted) shall be confidential and shall not be disclosed to any third party, except to the mediators or arbitrators and their staff, the parties' attorneys and their staff, and any experts retained by the parties. Notwithstanding the foregoing, a party may disclose limited information if required in any judicial proceeding brought to enforce these arbitration provisions or any award rendered hereunder. Furthermore, notwithstanding the foregoing, you may, in your sole judgment, commence a judicial proceeding seeking temporary restraining orders, preliminary injunctions or other interlocutory or equitable relief.

23. I ACKNOWLEDGE AND AGREE THAT MY REMEDIES FOR ANY BREACH OF THIS AGREEMENT BY YOU OR OTHERS, OR ANY OTHER CLAIMS CONCERNING OR RELATING TO THE PAGEANT, SHALL BE LIMITED TO A REFUND OF THE ENTRY FEE THAT I PAID TO PARTICIPATE IN MY STATE PAGEANT (OR IF I AM THE MISS USA 2012 TITLEHOLDER, MY ACTUAL DAMAGES), AND IN NO EVENT SHALL I BE ENTITLED TO RESCIND THIS AGREEMENT OR SEEK INJUNCTIVE OR ANY OTHER EQUITABLE RELIEF (INCLUDING, WITHOUT LIMITATION, TO SEEK TO ENJOIN, RESTRAIN OR TO INTERFERE IN ANY WAY WITH THE PRODUCTION, CONDUCT, PRESENTATION, BROADCAST OR OTHER EXPLOITATION OF THE 2012 MISS USA PAGEANT) OR ANY AWARD FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR SPECULATIVE DAMAGES, IRRESPECTIVE OF WHETHER SUCH DAMAGES ARISE UNDER CONTRACT, TORT, STATUTE, OR OTHERWISE AND WHETHER OR NOT THE PARTIES HAVE ADVANCE NOTICE OF THE POSSIBILITY OF SUCH DAMAGES. THESE LIMITATIONS SHALL APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. I RECOGNIZE THAT A BREACH BY ME OF THIS AGREEMENT WOULD CAUSE YOU AND THE BROADCASTER(S) IRREPARABLE INJURY AND DAMAGE THAT CANNOT BE REASONABLY OR ADEQUATELY COMPENSATED BY DAMAGES IN AN ACTION AT LAW AND, THEREFORE, I HEREBY EXPRESSLY AGREE THAT YOU AND THE BROADCASTER(S) SHALL BE ENTITLED TO INJUNCTIVE AND OTHER EQUITABLE RELIEF, FOR ANY BREACH OR THREATENED BREACH OF THIS AGREEMENT BY ME. If any portion of the dispute resolution mechanism set forth in Paragraphs 22 through 23 is found to be invalid, illegal or unenforceable for any reason, that portion shall be severed from the rest and shall not affect the parties' agreement to resolve all controversies and claims through mediation and arbitration.

24. I acknowledge and agree this Agreement, including, without limitation, the releases granted herein, is intended to operate and be construed as broadly as possible under applicable law. Accordingly, to the extent applicable law would limit this Agreement in any way, or invalidate any provisions hereof, any such limitations or invalid provisions shall not operate to invalidate this Agreement in its entirety. Rather, in any such instance, this Agreement shall be deemed to operate and to be effective to the maximum extent permitted by law; provided, however, that this Agreement shall be voidable at your sole judgment should the aggregate of all such provisions found to be invalid or unenforceable materially affects the benefits and obligations of the parties to this Agreement as a whole. All remedies, rights, undertakings, obligations, and agreements contained in this Agreement shall be in addition to, and shall not limit, any other remedies, rights, undertakings, obligations or agreements of either party. No waiver or any breach of or default under any provision hereof shall be deemed a waiver of such provision, or of any subsequent breach or default.

25. This Agreement contains the entire understanding of the parties, and all prior agreements between the parties with respect to the subject matter of this Agreement are nullified and superseded. This Agreement will not be construed against its drafter. All previous statements, representations and negotiations, whether oral or written, are hereby superseded by this Agreement. I acknowledge that no promises, representations or other inducements have been made to cause me to enter into this Agreement which are not set forth in this Agreement. This Agreement may be set aside, augmented, revised or modified only by a written instrument executed in the same manner. In the event of any inconsistency between the terms, conditions and obligations set forth in any application, agreements or other documents I have or may complete or executed at the request of you, any television broadcaster or Licensee, on the one hand, and this Agreement, on the other hand, the terms, conditions and obligations set forth in this Agreement shall govern unless otherwise provided.

v1.0

Initial Here: CM

I HEREBY CERTIFY that I have read this Agreement carefully and understand it; that I have had an opportunity to review it with my own attorney, if I so desire; that the declarations made by me in this Agreement are true to the best of my knowledge, information, and belief; and, that I freely and voluntarily agree to be bound by all the rules, regulations and contractual provisions set forth above. You will be the sole judge of the accuracy of any of the representations I make in this Agreement. I acknowledge that no promises, representations or other inducements have been made to me to induce me to enter into this Agreement except as specifically set forth above.  My signature below and your acceptance and agreement indicated by your signature below will constitute this Agreement a binding agreement and contract between us. This Agreement cannot be changed, amended, modified or terminated by me except in writing signed by you and me.

_____
(Signature of Contestant)

Sheena Monnin
(Contestant Name – Please Print)

12/4/2011
(Date)

If the contestant is a minor, I represent and warrant that I am the parent or legal guardian of the minor whose name appears above, that I have read and approve of the foregoing Agreement, and consent to its execution by my child/ward.  I agree that I and my child/ward shall be bound and obligated by the terms set forth in this Agreement. I hereby release the Released Parties in accordance with Paragraph 8 above from any claims and/or causes of action I may have against them of any nature whatsoever.  I hereby fully and unconditionally guarantee the performance of my child's/ward's obligations, if any, and the grant of rights, including, without limitation, the rights in and to the results and proceeds of my child's/ward's activities, as set forth above.

_____
(Signature of Parent or Guardian)

_____
(Parent or Guardian Name – Please Print)

_____
(Date)

Accepted and agreed to: MISS UNIVERSE L.P., LLLP

By: _____          2/7/12
                                                                        (Date)

Initial Here: SM

**PERSONAL HISTORY FORM**
*(Please Print or Type)*

Name **Sheena   Marie   Monnin**          Age **26**
      (First)      (Middle)      (Last)

Name as you would like it to appear in the Pageant program book, on our website and in other materials:

**Sheena  Monnin**

Street Address **9244  Marshall  Rd**
                    (No. P.O. Box please)

City **Cranberry  Twp.**

State **PA**                    Zip Code **16066**

Telephone (home) **N/A**          Telephone (cell) **512 - 964 - 9315**

E-Mail Address **Sheena. Monnin @ yahoo.com**

Place of Birth **2/20/85  Winter Park, FL** Birthdate **2     20     1985**
                                              (Month)  (Day)  (Year)

Present Citizenship **USA**
(If citizenship is other than place of birth, give date and place of change)

Social Security Number **592 92 9517**

Occupation _____
            (If student, list school)

Employer _____

From _____ To _____          Position _____

Father's Name **Philip  Monnin**          Occupation **Consultant**

Mother's Name **Shari  Monnin**          Occupation _____

What schools have you attended? **University  of  Phoenix**

Degree **M.S. in Psychology** Diploma _____      Other _____

Date **12/4/2011** _____ Signed **Sheena Monnin**
                                        (Contestant)

(Please attach a legible copy of a government-issued photo ID showing your date of birth [e.g., driver's license or passport])

Initial Here: **SM**

v1.0                                      - 19 -

TOTAL P.010

# EXHIBIT B

JAMS -- NEW YORK, NEW YORK

MISS UNIVERSE L.P., LLLP,

                    Claimant,

      -against-

SHEENA MONNIN,

                   Respondent.

JAMS Case no.

## PROOF OF SERVICE

    I, the undersigned, hereby certify that I am a citizen of the United States, over the age of 18, and am not a party this action. My business address is 30 Rockefeller Plaza, New York, NY 10012. I am readily familiar with my employer's practice of collection and processing of documentation for mailing. On the date listed below, following ordinary business practice, I served the following documents:

1.    MISS UNIVERSE L.P., LLLP DEMAND FOR ARBITRATION

2.    STATEMENT OF CLAIM

3.    OFFICIAL ENTRY FORM/CONTRACT 2012 MISS USA PAGEANT

These documents were served on the parties to this action, by enclosing true and correct copies in a sealed envelope as follows:

    Sheena Monnin
    9244 Marshall Road
    Cranberry Township, PA 16066
    Telephone: 412-877-5304
    Email: Sheena.Monnin@yahoo.com

These documents were served as follows:

(X) <u>By Overnight Delivery</u>:  I caused such envelope to be delivered to the office of the addressee(s) by overnight delivery via Federal Express.

I declare under penalty of perjury under the laws of the State of New York, that foregoing is true and correct.

Date: June 25, 2012

By _____

Lisa Schapira
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
(212) 408-5100
lschapira@chadbourne.com

Attorneys for Claimant Miss Universe
L.P., LLLP

2

EXHIBIT C

30 Rockefeller Plaza, New York, NY 10112

tel (212) 408-5100  fax (212) 541-5369

# CHADBOURNE
## & PARKELLP

Scott S. Balber
direct tel 212-408-5466
sbalber@chadbourne.com

June 6, 2012

BY HAND DELIVERY and EMAIL
Ms. Sheena Monnin
9244 Marshall Road
Cranberry Township, PA  16066

Dear Ms. Monin:

This firm represents The Miss Universe Organization ("MUO") in connection with claims it intends to assert arising out of false and defamatory statements you have made concerning the 2012 Miss USA Pageant.

The MUO hereby demands that you retain any and all documents and electronic information in any form, including but not limited to emails, text messages, or social media postings, relating in any way to the MUO or the Miss USA Pageant.   You are also reminded that you are prohibited from using any of the intellectual property of the MUO, including but not limited to trademarks and trade dress, for any purpose.  You are directed to remove any such intellectual property from any social media postings you have made.

Very truly yours,

Scott S. Balber

# EXHIBIT D

30 Rockefeller Plaza, New York, NY 10112
tel 212-408-5100  fax 212-541-5369

# CHADBOURNE
# &PARKE LLP

Scott S. Balber
direct tel 212-408-5466
Sbalbler@chadbourne.com

June 7, 2012

VIA EMAIL

JAMS
620 Eighth Avenue
34th Floor
New York, NY 10018

Re:  Request for Mediation of Miss Universe L.P., LLLP's Claims Against Sheena Monnin

Dear JAMS:

This firm represents Miss Universe L.P., LLLP (the "Miss Universe Organization"). The Miss Universe Organization and Ms. Sheena Monnin have agreed to use a JAMS mediator to resolve any disputes arising out of or relating to Ms. Monnin's participation in the Miss USA Pageant. The Miss Universe Organization hereby requests the appointment of a JAMS mediator. In the event that the parties need to proceed to binding arbitration, we intend to file the attached Statement of Claim.

Very truly yours,

Scott S. Balber

Counsel to Miss Universe L.P., LLLP

Enclosure

CC: Sheena Monnin (Via Email & Federal Express)
9244 Marshall Road,
Cranberry Township, PA 16066
Sheena.Monnin@yahoo.com

JAMS -- NEW YORK, NEW YORK

MISS UNIVERSE L.P., LLLP,

                                Claimant,

-against-

SHEENA MONNIN,

                                Respondent.

JAMS Case no.

**STATEMENT OF CLAIM**

Claimant MISS UNIVERSE L.P., LLLP (the "Miss Universe Organization," the "MUO" or "Claimant"), and as for its Statement of Claim against Respondent SHEENA MONNIN ("Monnin" or "Respondent"), hereby alleges as follows:

## NATURE OF THE ACTION

1.    This case arises from respondent Sheena Monnin's wanton and malicious publication of false and libelous statements concerning MUO's 2012 Miss USA Pageant competition. Monnin's statements were designed to and did disparage MUO's reputation, harm its business relationships, and thrust Monnin, a disgruntled competitor, into the limelight through improper means after she was unable to succeed through legitimate means. Monnin's libelous statements resulted in harm to MUO's reputation and business.

2.    Monnin also breached various agreements including her Official Entry Form/Contract for the 2012 Miss USA Pageant and Official Entry Form/Contract for the 2012 Miss USA Pennsylvania Pageant by making disparaging statements about MUO in violation of her contractual obligations.

3.    MUO seeks compensatory and punitive damages in an amount not less than $10 million, among other relief, for libel per se, tortious interference with prospective economic advantage and breach of contract.

## PARTIES

4.      Claimant Miss Universe L.P., LLLP, is a Delaware Limited Liability Limited

Partnership with its principal place of business at 1370 Avenue of the Americas, New York, New

York 10019. Claimant, commonly known as the Miss Universe Organization, is a Donald J.

Trump and NBCUniversal joint venture.  MUO owns and runs the Miss Universe, Miss USA and

Miss Teen USA pageant competitions.

5.      Upon information and belief, Respondent Sheena Monnin was the 2012 Miss USA

contestant representing the Commonwealth of Pennsylvania.

## JURISDICTION

6.      Jurisdiction herein is proper pursuant to Section 22 of the Entry Form/Contract for the

2012 Miss USA Pageant, which provides in part that:

> If any controversy or claim arising out of or relating to this Agreement, the breach
> of any term hereof, or my participation in or in connection with the Pageant
> cannot be settled through direct discussions, the parties agree to endeavor first to
> settle the controversy or claim by mediation conducted in the County of New
> York, State of New York and administered by JAMS or its successors ("JAMS")
> under its applicable rules, before commencing any proceedings permitted under
> this paragraph. Notwithstanding the foregoing, if any party files suit in court, the
> other party or parties need not demand mediation to enforce the right to compel
> arbitration. If any controversy or claim is not otherwise resolved through
> direct discussions or mediation, it shall be resolved by binding arbitration
> conducted in the County of New York, State of New York, and administered
> by JAMS in accordance with its Streamlined Arbitration Rules and
> Procedures or subsequent versions thereof, including the optional appeal
> procedure (the "JAMS Rules"). The JAMS Rules for selection of an arbitrator
> shall be followed, except that the arbitrator shall be an arbitrator either
> experienced in the entertainment industry and licensed to practice law in New
> York or a retired New York State Supreme Court or federal judge. Any appellate
> panel shall consist of three neutral members, subject to the foregoing
> requirements. Upon conclusion of any arbitration proceedings hereunder, the
> arbitrator shall render findings of fact and conclusions of law and a written
> opinion setting forth the basis and reasons for any decision he or she has reached
> and shall deliver such documents to each party to the Agreement along with a
> signed copy of the award. Any judgment upon an award rendered by an arbitrator
> may be entered in any state or federal court in the County of New York, New
> York having jurisdiction of the subject matter hereof. The parties agree that any
> mediation and arbitration proceedings, testimony, and discovery, along with any

2

documents filed or otherwise submitted in the course of any such proceedings (and including the fact that the mediation or arbitration is even being conducted) shall be confidential and shall not be disclosed to any third party, except to the mediators or arbitrators and their staff, the parties' attorneys and their staff, and any experts retained by the parties. Notwithstanding the foregoing, a party may disclose limited information if required in any judicial proceeding brought to enforce these arbitration provisions or any award rendered hereunder. Furthermore, notwithstanding the foregoing, you may, in your sole judgment, commence a judicial proceeding seeking temporary restraining orders, preliminary injunctions or other interlocutory or equitable relief.

(emphasis added.)

7.    The claims in this arbitration arise out of Monnin's breach of her Entry Form Contracts for the 2012 Miss USA Pageant and 2012 Miss Pennsylvania USA Pageant and relate to Monnin's participation in the 2012 Miss USA Pageant.

## STATEMENT OF FACTS

8.    On June 3, 2012, the Miss USA Pageant was held in the Theatre for the Performing Arts in Las Vegas, Nevada. The contestants in the Miss USA pageant are the winners of state pageants held across the nation. The winner of each state carries the title Miss [STATE] USA and these winners are the only competitors allowed to compete in the annual Miss USA pageant.

9.    Monnin was the winner of Pennsylvania's pageant and held the title 2012 Miss Pennsylvania USA. She represented Pennsylvania in the 2012 Miss USA Pageant.

10.    Traditionally, only naturally born females could participate in MUO's pageants. In April 2012, MUO altered the rules governing its competition to permit transgendered contestants. In the spring of 2012, Jenna Talackova, a transgendered person, participated in a Canadian Pageant sanctioned by MUO.

### Monnin Becomes Disgruntled and Disapproves of MUO Policies

11.    On information and belief, Monnin did not approve of the participation of a transgendered person in MUO's pageants.

3

12.     After failing to advance in the Miss USA Pageant on June 3, 2012, Monnin became

disgruntled.  On the morning of June 4, 2012, Monnin resigned her title as 2012 Miss

Pennsylvania USA.  Monnin represented in an email to Randy Sanders of Sanders & Associates

LLP, the entity licensed to conduct the Pennsylvania pageant, that she was resigning her title

because MUO's acceptance of transgendered participants went against "every moral fiber" of her

being.  Monnin wrote:

> I am officially and irrevocably resigning the title of Miss Pennsylvania USA
> 2012.  I refuse to be part of a pageant system that has so far and so completely
> removed itself from its foundational principles as to allow and support natural
> born males to compete in it.  This goes against every moral fiber of my being.  I
> believe in integrity, high moral character, and fair play, none of which are part of
> this system any longer.

13.     On or about June 4, 2012, Monnin launched a false and malicious campaign assailing

the integrity of the MUO on the social media site Facebook, which can be found on the internet

at www.facebook.com.

14.     In a June 4, 2012 post on Monnin's Facebook page, Monnin publicly announced that

she was resigning her title as 2012 Miss Pennsylvania USA as follows:

> I have decided to resign my position as Miss Pennsylvania USA 2012.
> Effective immediately, I have voluntarily, completely, and utterly removed
> myself from the Miss Universe Organization.  In good conscience I can no
> longer be affiliated in any way with an organization I consider to be
> fraudulent, lacking in morals, inconsistent, and in many ways trashy.  I do not
> support this system in any way.  In my heart I believe in honesty, fair play, a
> fair opportunity, and high moral integrity, none of which in my opinion are
> part of this pageant system any longer.

15.     In a June 5, 2012 post on Monnin's Facebook page Monnin, however, provided a

different reason for her resignation to the public – fraud.  Her announcement stated that the Miss

USA Pageant had been rigged.  Monnin explained her resignation as follows:

> I agree that it is my moral obligation to state what I witnessed and what I know to
> be true. I will relay to you the reasoning behind my resignation. I witnessed
> another contestant who said she saw the list of the Top 5 BEFORE THE SHOW

EVER STARTED proceed to call out in order who the Top 5 were before they were announced on stage. Apparently the morning of June 3rd she saw a folder lying open to a page that said 'FINAL SHOW Telecast, June 3, 2012' and she saw the places for Top 5 already filled in. Thinking she was just seeing a rehearsal fake top 5 from a previous day she walked away, then realized that it had without a doubt been labeled as the Final Show Telecast, June 3rd. After the Top 16 were called and we were standing backstage she hesitantly said to me and another contestant that she knew who the Top 5 were. I said 'who do you think they will be?' She said that she didn't think she knew because she saw the list that morning. She relayed whose names were on the list. Then we agreed to wait and see if that was indeed the Top 5 called that night. After it was indeed the Top 5, I knew the show must be rigged. I decided at that moment to distance myself from an organization who did not allow fair play and whose morals did not match my own. That is all I know about this. If this contestant would like to step forward as an eye witness and as being the one who saw the sheet with the Top 5 already selected before the judges ever saw the Top 16, then perhaps action can be taken. As for me, I believe her words and I will not encourage anyone to compete in a system that in my opinion and from what I witnessed is dishonest.

(emphasis in original.)

16.  Monnin's false statements were asserted as fact because it states that she "knew the show must be rigged."

17.  The libelous post concerning MUO has been republished and widely disseminated by the media in print, radio, television and via the internet. Numerous individuals posted comments on Monnin's Facebook page in response to her post.

18.  On information and belief, Monnin was motivated to make false statements disparaging MUO because she harbored ill-will stemming from her failed pursuit of the Miss USA Pageant crown.

19.  Monnin was highly critical of MUO's decision to permit a transgendered contestant to compete in the Miss Universe Canada Pageant. On information and belief, Monnin's statements regarding the purported rigging of the Miss USA Pageant were designed to assail the reputation of MUO because she disagreed with MUO's decision to include transgendered contestants.

5

20.   On information and belief, Monnin assailed the character of MUO to reap the benefits of increased media attention following such claims.   Monnin's post has thrust her into the limelight.

### Monnin's Facebook Post Was False

21.   The scoring process for the Miss USA Pageant is tightly controlled.   The scores are tabulated by independent auditors from the well-regarded accounting firm Ernst & Young, and the eight celebrity judges are monitored by security personnel.

22.   The scoring of the 2012 Miss USA Pageant was the result of this tightly controlled, carefully monitored and extremely scrupulous scoring process.

### Monnin Was Obligated By Contract Not to Disparage MUO

23.   In Section 5 of Entry Form/Contract for the 2012 Miss USA Pageant, Monnin agreed to obey certain terms and conditions regarding her participation in the Pageant.

24.   For example, in Section 5(b) of this agreement, Monnin consented to abide by the "rules, instructions, directions and requirements" set forth in the Contestant Handbook and in the Entry Form/Contract for the 2012 Miss USA Pageant.

25.   Section 5(f) includes an agreement by Monnin not to "violate the rights of any other person or entity," or "cause harm to any person" "in connection with [Monnin's] participation in the 2012 Miss USA Pageant."

26.   Section 5(I) includes an agreement not to "engage in any activity" that would result in "disrepute, ridicule, contempt or scandal or might otherwise reflect unfavorably upon" MUO, and other entities related to the Miss USA Pageant.

27.   Monnin was also obligated by the Entry Form/Contract for the 2012 Miss USA Pennsylvania Pageant not to defame MUO.   For example, Section 5(4) of the Entry

6

Form/Contract for the 2012 Miss USA Pennsylvania Pageant required Monnin "not to engage in any conduct, acts or omissions that may be detrimental to [the] Miss USA Pageant."

## Monnin's Statements Injured MUO

28.    Monnin's statements impugned the reputation of the Claimant by stating that the Miss USA Pageant was a fraud. Statements that MUO duped the public and pageant-contestants and otherwise acted dishonestly have the tendency to undermine (and have undermined) the public's perception of MUO's integrity.

29.    MUO expends enormous resources supporting and promoting various pageants. Through the more than 60 years of Miss USA pageants, and the other competitions run by MUO, MUO has developed an impeccable reputation in the community. It has taken measures to build and protect that reputation. For example, MUO requires participants vying for the Miss USA crown to act with restraint, including by not disparaging the contestant's title, harassing others, or engaging in lewd behavior. MUO even requires Miss USA Pageant contestants to execute a detailed contestant entry form governing a contestant's behavior, the violation of which could result in the forfeit of the contestant's state title.

30.    Respondent's statements regarding the purported rigging of the Miss USA contest falsely brand MUO as a dishonest business which defrauds the public and pageant-participants into believing that the Miss USA Pageant is a merit-based competition held according to set rules. Nothing could be further from the truth.

31.    The false statements made by Monnin have caused MUO to suffer extensive damage and loss, including loss of reputation and public confidence. In addition MUO has suffered or may suffer the loss of business, including pageant entrants, sponsorship and advertising. MUO has incurred considerable attorneys' fees and expenses as it has had to vindicate its good name through a positive campaign with the media, to salvage its reputation and business relationships.

## FIRST CLAIM FOR RELIEF

### (Defamation - Libel)

32.   Claimant re-alleges and incorporates herein by reference paragraphs 1 through 31 above.

33.   On June 5, 2012, Respondent posted false statements on the world wide web through the website www.Facebook.com that the Miss USA Pageant was "rigged." The particular words posted by Monnin are set forth in paragraph 15.

34.   The statements published by Respondent are false statements purported to be fact, and not of opinion, that the Miss USA Pageant was fraudulently and dishonestly conducted.

35.   In publishing the false statements, Respondent acted with hatred, spite, or ill will toward MUO, was aware of the probable falsity of the publication or acted in reckless disregard or with gross irresponsibility as to whether the information published was false.

36.   Respondent made the false statements knowing that her posting on www.Facebook.com would be visible and available over the internet to anyone who had the ability to access the internet. Monnin's statements were broadly distributed throughout the United States, and were re-published by news and other media outlets.

37.   As a direct result of the false statements and publication made by Respondent, Claimant has suffered a loss of its reputation, good name, honor, integrity and respect in the community as a whole.

## SECOND CLAIM FOR RELIEF

### (Tortious Interference with Prospective Economic Advantage)

38.   Claimant re-alleges and incorporates herein by reference paragraphs 1 through 37 above.

39.    Claimant had business relationships with several third party sponsors and advertisers in connection with MUO events.  These sponsors and advertisers conduct business with MUO because of its reputation.

40.    Respondent knew of MUO's relationships with these third party sponsors and advertisers and falsely claimed that the Miss USA Pageant was rigged with the intent of deliberately interfering with Claimant's business relationships with these sponsors and advertisers.

41.    These statements were made maliciously and willfully, and were intended to cause harm to Claimant's business.

42.    Claimant's interference has resulted in harm to MUO's business dealings with its advertisers and sponsors.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract)

43.    Claimant re-alleges and incorporates herein by reference paragraphs 1 through 42 above.

44.    Claimant entered into contractual agreements with Respondent, including Entry Form Contracts for the 2012 Miss USA Pageant and 2012 Miss Pennsylvania USA Pageant.

45.    Claimant performed its obligations under these agreements.

46.    Respondent breached these agreements when she made false and disparaging statements about MUO.

47.    As a result of these breaches of contract, Claimant suffered damages in an amount to be determined at a hearing.

9

<u>REQUEST FOR RELIEF</u>

MUO respectfully requests an arbitration award in its favor against Ms. Monnin for the following relief:

(1) For compensatory damages according to proof, but in any event not less than $10 million;

(2) For punitive damages according to proof;

(3) Upon a finding in favor of MUO on its defamation claim, for a permanent injunction enjoining Respondent from issuing defamatory statements about Claimant to others through the, internet, in person, or through any other means;

(4) For costs of bringing this arbitration and other reasonable expenses;

(5) For any attorneys' fees incurred herein and;

(6) For such other relief as the Panel may deem just and proper.

Dated:  June 7, 2012

New York, New York

CHADBOURNE & PARKE LLP

By _____

Scott S. Balber
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
(212) 408-5100
sbalber@chadbourne.com

Attorneys for Claimant Miss Universe
L.P., LLLP

# EXHIBIT E

## Schapira, Lisa

| | |
|---|---|
| From: | Schapira, Lisa |
| Sent: | Tuesday, June 12, 2012 2:25 PM |
| To: | Sheena.Monnin@yahoo.com |
| Cc: | Balber, Scott |
| Subject: | FW: Request for Mediation: Miss Universe L.P., LLLP v. Sheena Monnin- REF#1425011630 |
| Attachments: | Olsen Shelley General [1113].pdf |
| | |
| Importance: | High |

Ms. Monnin,

I am an attorney with Chadbourne & Parke LLP, the law firm representing the Miss Universe Organization ("MUO"). Earlier today, I tried to reach you on your cell phone. I was unable to leave a message as your voicemail had not been setup. I did, however, leave a message on your father's cell phone. I am trying to connect with you so that we can move forward with the mediation which we hope will resolve the dispute between you and the MUO.

JAMS mediator Shelley Olsen is available to hear from the parties on June 20, 2012. For mediations, Ms. Olsen charges each party a fee of $275 and an hourly rate of $600. Assuming a full day of mediation, I estimate that your half of the costs will be $275 plus half of $4,800 for an approximate total of $2,675. Mediator Olsen's Fee Schedule is attached.

Please confirm that we can proceed with Mediator Olsen on June 20th. Once I hear from you, I'll let Veronica -- the case manager at JAMS who has been emailing with the parties -- know and she will send out invoices and provide further instructions.

I look forward to hearing from you.

Warm regards,
Lisa

**Lisa Schapira**
**Chadbourne & Parke LLP**
30 Rockefeller Plaza, New York, NY 10112
tel 212-408-5478 | fax 646-710-5478
lschapira@chadbourne.com | http://www.chadbourne.com
vCard: http://www.chadbourne.com/vcard/lschapira.vcf

Please consider the environment before printing this email.

**From:** Guevara Veronica [mailto:vguevara@jamsadr.com]
**Sent:** Friday, June 08, 2012 12:50 PM
**To:** Schapira, Lisa
**Cc:** Sheena.Monnin@yahoo.com; Balber, Scott
**Subject:** RE: Request for Mediation: Miss Universe L.P., LLLP v. Sheena Monnin- REF#1425011630

Dear Counsel,

Thank you for your email. It is my understanding the parties have agreed to use JAMS to mediate their dispute. Please provide the following information to set up your case:

*Name of the mediator parties have agreed upon. Mediator biographies are available at www.jamsadr.com.

*Mediation date

Thank you,
Lisa Schapira

**Lisa Schapira**
**Chadbourne & Parke LLP**
30 Rockefeller Plaza, New York, NY 10112
tel 212-408-5478 | fax 646-710-5478
lschapira@chadbourne.com | http://www.chadbourne.com
vCard: http://www.chadbourne.com/vcard/lschapira.vcf

Please consider the environment before printing this email.

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently delete the original and any copy of this e-mail and any printout thereof.

For additional information about Chadbourne & Parke LLP and Chadbourne & Parke, a multinational partnership, including a list of attorneys, please see our website at http://www.chadbourne.com

EXHIBIT F



*Klineburger & Nussey*
**Attorneys At Law**
1313 Race Street
Philadelphia, PA 19107
Telephone (215) 568-5155
Facsimile (215) 568-1522

Richard F. Klineburger, III
*Certified by the Supreme Court of*
*New Jersey as a Criminal Trial Attorney*
D. Ryan Nussey
*Certified by the Supreme Court of*
*New Jersey as a Matrimonial Attorney*
*Admitted to practice in New Jersey & Pennsylvania*

Maureen P. Steady *(Of Counsel)*
Carolyn G. Labin
Lauren P. Richmond *(PA Only)*
Nicole M. McCauley *(NJ Only)*
Michelle E. Roberson
Rebecca L. Engel

June 28, 2012

Scott S. Balber, Esquire
Chadbourne & Parke, LLP
30 Rockefeller Plaza
New York, New York 10112

*Via Facsimile 212-541-5369 & USPS First Class Mail*

    **RE:**    **My Client:**   Sheena Monnin
              **Your Client:**  Miss Universe L.P., LLLP
              **Request for JAMS Mediation**

Dear Mr. Balber:

    Please be advised that this firm has been retained to represent Sheena Monnin with regard to the above captioned matter along with a ancillary claims against your client and/or relevant third parties.

    I will reach out to your early next week to discuss this matter further.

    Thanking you for your time and attention herein.

                 Very truly yours,

                 RICHARD F. KLINEBURGER, III

RFK/kc
cc:   Sheena Monnin

                                 *K & N*

---

38 Haddon Avenue, Haddonfield, NJ 08033- Telephone (856) 428-7469

EXHIBIT G



THE RESOLUTION EXPERTS®

# COMMENCEMENT OF ARBITRATION

NOTICE TO ALL PARTIES                                                July 2, 2012

RE:   Miss Universe L.P., LLLP vs. Monnin, Sheena
      JAMS Ref. No. : 1425011630

Dear Parties:

This confirms the commencement of this arbitration as of the date of this letter. This arbitration shall be conducted in accordance with JAMS Streamlined Arbitration Rules, and the enclosed Fee Schedule and Arbitration Administrative Policies regarding payment of fees, document retention, and limitations of liability.

Enclosed is a list of available arbitrators. Résumés and rules are available on our website, www.jamsadr.com, or by contacting me. The parties are encouraged to mutually agree to an arbitrator. If the parties are unable to mutually agree to an arbitrator, then using the following list of arbitrator candidates each party may strike 2 name(s) and rank the remaining candidates in order of preference. The deadline for return of your strike list is close of business on July 9th, 2012:

        Hon. Anthony J. Carpinello (Ret.)
        Hon. Stephen G. Crane (Ret.)
        Hon. Theodore H. Katz (Ret.)
        Hon. Kathleen A. Roberts (Ret.)
        Vivien B. Shelanski, Esq.

If a party fails to respond to the list of arbitrator candidates by the deadline, that party shall be deemed agreeable to all the proposed candidates. JAMS will then confirm the appointment of the Arbitrator and begin scheduling.

The Arbitrator shall bill in accordance with the enclosed Fee Schedule. Each party will be assessed a pro-rata share of JAMS fees and expenses, unless JAMS is notified otherwise by the Arbitrator or parties. JAMS agreement to render services is not only with the parties, but extends to the attorney or other representative of the parties in arbitration.

**Out of State Attorneys in California Arbitrations, please note:**

The California legislature, effective January 1, 2007, has changed the process by which out-of-state attorneys may participate in non-judicial arbitrations occurring in California. See www.calbar.ca.gov for requirements.

Contact me at 212-607-2791 or mveglia@jamsadr.com if you have questions. We look forward to working with you.

Sincerely,

620 EIGHTH AVENUE   34TH FLOOR   NEW YORK, NY 10018   ᴛᴇʟ 212-751-2700   ꜰᴀx 212-751-4099

Monica Veglia
Case Manager
mveglia@jamsadr.com
Fax# 212-751-4099

# SERVICE LIST

| | | | |
|---|---|---|---|
| **Case Name:** | Miss Universe L.P., LLLP vs. Monnin, Sheena | **Hear Type:** | Arbitration |
| **Reference #:** | 1425011630 | **Case Type:** | Business/Commercial |
| **Panelist:** | 1-JAMS, JAMS | | |

---

### Scott S. Balber

Chadbourne & Parke
Scott S. Balber
30 Rockefeller Plaza
New York, NY 10112
sbalber@chadbourne.com

Plaintiff
Phone: 212-408-5100
Fax: 646-710-5466

**Party Represented:**
Miss Universe L.P., LLLP

### Sheena Monnin

Sheena Monnin
9244 Marshall Road
Cranberry Twp, PA 16066
Sheena.Monnin@yahoo.com

Defendant
Fax:

### Lisa Shapira

Chadbourne & Parke
Lisa Shapira
30 Rockefeller Plaza
New York, NY 10112
LSchapira@chadbourne.com

Plaintiff
Phone: 212-408-5100
Fax: 212-541-5369

**Party Represented:**
Miss Universe L.P., LLLP



THE RESOLUTION EXPERTS

# Arbitration Fee Schedule

*Hon. Anthony J. Carpinello (Ret.)*

## PROFESSIONAL FEES

### $600 per hour

- Weekends and holidays are subject to additional charges.

## NON-REFUNDABLE CASE MANAGEMENT FEE

- The Case Management Fee includes access to an exclusive nationwide panel of judges, attorneys, and other ADR experts, dedicated services including all administration through the duration of the case, document handling, and use of JAMS conference facilities including after hours and on-site business support. Weekends and holidays are subject to additional charges.
- The Case Management Fee is reassessed on cases that continue beyond originally scheduled professional time.
- Professional fees include time spent for hearings, pre- and post-hearing reading and research, and award preparation.

|  | Fee |
|---|---|
| One day is defined as 10 hours of professional time | |
| 1-3 days..................................................................................... | $400 per party, per day |
| Time in excess of initial 30 hours................................................ | 10% of professional fees |

## CANCELLATION/CONTINUANCE POLICY

| Number of Days | Cancellation/Continuance Period | Fee |
|---|---|---|
| 1 day or less ...................... | 30 days or more prior to hearing......................... | 100% REFUNDABLE, except for time incurred |
| 2 days or more ..................... | 60 days or more prior to hearing......................... | 100% REFUNDABLE, except for time incurred |
| 3 days or more ..................... | 90 days or more prior to hearing......................... | 100% REFUNDABLE, except for time incurred |
| Hearings of any length ......................... | inside the cancellation/continuance period .............. | NON-REFUNDABLE |

- Unused hearing time is non-refundable.
- Hearing fees are non-refundable if time scheduled (or a portion thereof) is cancelled or continued after the cancellation date unless the Arbitrator's time can be rescheduled with another matter. The cancellation policy exists because time reserved and later cancelled generally cannot be replaced. In all cases involving non-refundable time, the cancelling or continuing party is responsible for the fees of all parties.
- A retainer for anticipated preparation and follow-up time will be billed to the parties. Any unused portion will be refunded.
- All fees are due and payable upon receipt of invoice and payment must be received in advance of hearing. JAMS reserves the right to cancel your hearing if fees are not paid by all parties by the applicable cancellation date and JAMS confirms the cancellation in writing.
- Receipt of payment for all fees is required prior to service of an arbitration order or award.
- For arbitrations arising out of employer-promulgated plans, the only fee that an employee may be required to pay is the $400 per party fee for a one-day case. The employer must bear the employee's share of any increased Case Management Fee. Any questions or disagreements about whether a matter arises out of an employer-promulgated plan or an individually negotiated agreement or contract will be determined by JAMS, whose determination shall be final.
- For arbitrations arising out of pre-dispute arbitration clauses between companies and individual consumers, JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, Minimum Standards of Procedural Fairness applies. In those cases, when a consumer (as defined by those Minimum Standards) initiates arbitration against the company, the only fee required to be paid by the consumer is $250. All other fees must be paid by the company.

JAMS agreement to render services is with the attorney, the party, and/or other representatives of the party.



# Arbitration Fee Schedule

*Hon. Stephen G. Crane (Ret.)*

## PROFESSIONAL FEES

**$900 per hour**

## NON-REFUNDABLE CASE MANAGEMENT FEE

- The Case Management Fee includes access to an exclusive nationwide panel of judges, attorneys, and other ADR experts, dedicated services including all administration through the duration of the case, document handling, and use of JAMS conference facilities including after hours and on-site business support. Weekends and holidays are subject to additional charges.
- The Case Management Fee is reassessed on cases that continue beyond originally scheduled professional time.
- Professional fees include time spent for hearings and pre- and post-hearing reading and research, and award preparation.

| *One day is defined as 10 hours of professional time* | Fee |
|---|---|
| 1-3 days.................................................................................................. | $400 per party, per day |
| Time in excess of initial 30 hours...................................................... | 10% of professional fees |

## CANCELLATION/CONTINUANCE POLICY

| | Cancellation/Continuance Period | Fee |
|---|---|---|
| 1 day or less................................. | 30 days or more prior to hearing...................... | 100% REFUNDABLE, except for time incurred |
| 2 days or more ............................. | 60 days or more prior to hearing...................... | 100% REFUNDABLE, except for time incurred |
| Hearings of any length ................. | inside the cancellation/continuance period ........... | NON-REFUNDABLE |

- Unused hearing time is non-refundable.
- Hearing fees are non-refundable if time scheduled (or a portion thereof) is cancelled or continued within the cancellation period unless the Arbitrator's time can be rescheduled with another matter. The cancellation policy exists because time reserved and later cancelled generally cannot be replaced. In all cases involving non-refundable time, the party causing the continuance or cancellation is responsible for the fees of all parties.
- A retainer for anticipated preparation and follow-up time will be billed to the parties.  Any unused portion will be refunded.
- All fees are due and payable upon receipt of invoice and payment must be received in advance of hearing.  JAMS reserves the right to cancel your hearing if fees are not paid by all parties by the applicable cancellation date and JAMS confirms the cancellation in writing.
- Receipt of payment for all fees is required prior to service of an arbitration award or order that the Arbitrator has rendered.
- For arbitrations arising out of employer-promulgated plans, the only fee that an employee may be required to pay is the $400 per party fee for a one-day case. The employer must bear the employee's share of any increased CMF. Any questions or disagreements about whether a matter arises out of an employer-promulgated plan or an individually negotiated agreement or contract will be determined by JAMS, whose determination shall be final.
- For arbitrations arising out of pre-dispute arbitration clauses between companies and individual consumers, JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, Minimum Standards of Procedural Fairness applies. In those cases, when a consumer (as defined by those Minimum Standards) initiates arbitration against the company, the only fee required to be paid by the consumer is $250. All other fees must be paid by the company.

JAMS agreement to render services is with the attorney, the party, and/or other representatives of the party.

**Atlanta • Boston • Chicago • Minneapolis • New York • Philadelphia • Washington**
www.jamsadr.com • Updated 10/11/11



# Arbitration Fee Schedule
## Hon. Theodore H. Katz (Ret.)

**THE RESOLUTION EXPERTS**

## PROFESSIONAL FEES

$700 per hour

## NON-REFUNDABLE CASE MANAGEMENT FEE

- The Case Management Fee includes access to an exclusive nationwide panel of judges, attorneys, and other ADR experts, dedicated services including all administration through the duration of the case, document handling, and use of JAMS conference facilities including after hours and on-site business support. Weekends and holidays are subject to additional charges.
- The Case Management Fee is reassessed on cases that continue beyond originally scheduled professional time.
- Professional fees include time spent for hearings and pre- and post-hearing reading and research, and award preparation.

One day is defined as 10 hours of professional time | Fee
1-3 days.................................................................................$400 per party, per day
Time in excess of initial 30 hours.............................................10% of professional fees

## CANCELLATION/CONTINUANCE POLICY

| | Cancellation/Continuance Period | Fee |
|---|---|---|
| 1 day or less | 30 days or more prior to hearing | 100% REFUNDABLE, except for time incurred |
| 2 days or more | 60 days or more prior to hearing | 100% REFUNDABLE, except for time incurred |
| Hearings of any length | Inside the cancellation/continuance period | NON-REFUNDABLE |

- Unused hearing time is non-refundable.
- Hearing fees are non-refundable if time scheduled (or a portion thereof) is cancelled or continued within the cancellation period unless the Arbitrator's time can be rescheduled with another matter. The cancellation policy exists because time reserved and later cancelled generally cannot be replaced. In all cases involving non-refundable time, the party causing the continuance or cancellation is responsible for the fees of all parties. Any unused portion will be refunded.
- A retainer for anticipated preparation and follow-up time will be billed to the parties. Any unused portion will be refunded.
- All fees are due and payable upon receipt of invoice and payment must be received in advance of hearing. JAMS reserves the right to cancel your hearing if fees are not paid by all parties by the applicable cancellation date and JAMS confirms the cancellation in writing.
- Receipt of payment for all fees is required prior to service of an arbitration award that the Arbitrator has rendered.
- For arbitrations arising out of employer-promulgated plans, the only fee that an employee may be required to pay is the $400 per party fee for a one-day case. The employer must bear the employee's share of any increased CMF. Any questions or disagreements about whether a matter arises out of an employer-promulgated plan or an individually negotiated agreement or contract will be determined by JAMS, whose determination shall be final.
- For arbitrations arising out of pre-dispute arbitration clauses between companies and individual consumers, JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, Minimum Standards of Procedural Fairness applies. In those cases, when a consumer (as defined by those Minimum Standards) initiates arbitration against the company, the only fee required to be paid by the consumer is $250. All other fees must be paid by the company.

JAMS agreement to render services is with the attorney, the party, and/or other representatives of the party.

**Atlanta • Boston • Chicago • Greenbelt • Miami • Minneapolis • New York • Philadelphia • Washington**
www.jamsadr.com • Updated 06/08/12



**THE RESOLUTION EXPERTS**

# Arbitration Fee Schedule

*Hon. Kathleen A. Roberts (Ret.)*

---

## PROFESSIONAL FEES

**$700 per hour**

## NON-REFUNDABLE CASE MANAGEMENT FEE

- The Case Management Fee includes access to an exclusive nationwide panel of judges, attorneys, and other ADR experts, dedicated services including all administration through the duration of the case, document handling, and use of JAMS conference facilities including after hours and on-site business support. Weekends and holidays are subject to additional charges.
- The Case Management Fee is reassessed on cases that continue beyond originally scheduled professional time.
- Professional fees include time spent for hearings and pre- and post-hearing reading and research, and award preparation.

| One day is defined as 10 hours of professional time | Fee |
|---|---|
| 1-3 days | $400 per party, per day |
| Time in excess of initial 30 hours | 10% of professional fees |

## CANCELLATION/CONTINUANCE POLICY

| | Cancellation/Continuance Period | Fee |
|---|---|---|
| 1 day or less | 30 days or more prior to hearing | 100% REFUNDABLE, except for time incurred |
| 2 days or more | 60 days or more prior to hearing | 100% REFUNDABLE, except for time incurred |
| Hearings of any length | Inside the cancellation/continuance period | NON-REFUNDABLE |

- Unused hearing time is non-refundable.
- Hearing fees are non-refundable if time scheduled (or a portion thereof) is cancelled or continued within the cancellation period unless the Arbitrator's time can be rescheduled with another matter. The cancellation policy exists because time reserved and later cancelled generally cannot be replaced. In all cases involving non-refundable time, the party causing the continuance or cancellation is responsible for the fees of all parties.
- A retainer for anticipated preparation and follow-up time will be billed to the parties. Any unused portion will be refunded.
- All fees are due and payable upon receipt of invoice and payment must be received in advance of hearing. JAMS reserves the right to cancel your hearing if fees are not paid by all parties by the applicable cancellation date and JAMS confirms the cancellation in writing.
- Receipt of payment for all fees is required prior to service of an order or award.
- For arbitrations arising out of employer-promulgated plans, the only fee that an employee may be required to pay is the $400 per party fee for a one-day case. The employer must bear the employee's share of any increased Case Management Fee. Any questions or disagreements about whether a matter arises out of an employer-promulgated plan or an individually negotiated agreement or contract will be determined by JAMS, whose determination shall be final.
- For arbitrations arising out of pre-dispute arbitration clauses between companies and individual consumers, JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, Minimum Standards of Procedural Fairness applies. In those cases, when a consumer (as defined by those Minimum Standards) initiates arbitration against the company, the only fee required to be paid by the consumer is $250. All other fees must be paid by the company.

JAMS agreement to render services is with the attorney, the party, and/or other representatives of the party.

**Atlanta • Boston • Chicago • Greenbelt • Minneapolis • New York • Philadelphia • Washington**
www.jamsadr.com • Updated 12/28/11



# Arbitration Fee Schedule

*Vivien B. Shelanski, Esq.*

## PROFESSIONAL FEES

**$650 per hour for all types of Arbitrations except for Individual Employment Matters**

**$600 per hour for Individual Employment Matters**

## NON-REFUNDABLE CASE MANAGEMENT FEE

- The Case Management Fee includes access to an exclusive nationwide panel of judges, attorneys, and other ADR experts, dedicated services including all administration through the duration of the case, document handling, and use of JAMS conference facilities including after hours and on-site business support. Weekends and holidays are subject to additional charges.
- The Case Management Fee is reassessed on cases that continue beyond originally scheduled professional time.
- Professional fees include time spent for hearings and pre- and post-hearing reading and research, and award preparation.

| | Fee |
|---|---|
| *One day is defined as 10 hours of professional time* | |
| 1-3 days.................................................................................. | $400 per party, per day |
| Time in excess of initial 30 hours................................................... | 10% of professional fees |

## CANCELLATION/CONTINUANCE POLICY

| | Cancellation/Continuance Period | Fee |
|---|---|---|
| 1 day or less.................................... | 30 days or more prior to hearing........................ | 100% REFUNDABLE, except for time incurred |
| 2 days or more .................................. | 60 days or more prior to hearing........................ | 100% REFUNDABLE, except for time incurred |
| Hearings of any length ......................... | Inside the cancellation/continuance period............ | NON-REFUNDABLE |

- Unused hearing time is non-refundable.
- Hearing fees are non-refundable if time scheduled (or a portion thereof) is cancelled or continued within the cancellation period unless the Arbitrator's time can be rescheduled with another matter. The cancellation policy exists because time reserved and later cancelled generally cannot be replaced. In all cases involving non-refundable time, the party causing the continuance or cancellation is responsible for the fees of all parties.
- A retainer for anticipated preparation and follow-up time will be billed to the parties. Any unused portion will be refunded.
- All fees are due and payable upon receipt of invoice and payment must be received in advance of hearing. JAMS reserves the right to cancel your hearing if fees are not paid by all parties by the applicable cancellation date and JAMS confirms the cancellation in writing.
- Receipt of payment for all fees is required prior to service of an arbitration award or order that the Arbitrator has rendered.
- For arbitrations arising out of employer-promulgated plans, the only fee that an employee may be required to pay is the $400 per party fee for a one-day case. The employer must bear the employee's share of any increased CMF. Any questions or disagreements about whether a matter arises out of an employer-promulgated plan or an individually negotiated agreement or contract will be determined by JAMS, whose determination shall be final.
- For arbitrations arising out of pre-dispute arbitration clauses between companies and individual consumers, JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, Minimum Standards of Procedural Fairness applies. In those cases, when a consumer (as defined by those Minimum Standards) initiates arbitration against the company, the only fee required to be paid by the consumer is $250. All other fees must be paid by the company.

JAMS agreement to render services is with the attorney, the party, and/or other representatives of the party.

## JAMS ARBITRATION ADMINISTRATIVE POLICIES

### I. Fees for the Arbitration

The Parties and their attorneys agree to pay JAMS for the arbitration as set forth in the Fee and Cancellation Policy attached to and incorporated in this Agreement. JAMS' agreement to render services is jointly with the Party and attorney or other representative of the Party in Arbitration.

Unless otherwise agreed by JAMS, the Parties agree that they are liable for and agree to pay their portion of JAMS' fees and expenses and for all time spent by the arbitrator, including any time spent in rendering services before or after the arbitration hearing. Parties are billed a preliminary retainer to cover the expense of all pre-hearing work, including conference calls. Payment of the preliminary retainer is required prior to scheduling a Preliminary Arbitration Management Conference with the Arbitrator. The Parties agree to pay all invoices received prior to the hearing in advance of the arbitration hearing. If such fees have not been paid prior to the arbitration hearing, the Party or Parties that have not paid remain liable for such fees. The Parties agree that JAMS may cancel an arbitration hearing and will not deliver the arbitrator's decision to any Party without full payment of all invoices.

### II. Records

JAMS does not maintain a duplicate file of documents filed in the Arbitration. If the parties wish to have any documents returned to them, they must advise JAMS in writing within 30 days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing and JAMS reserves the right to impose an additional fee for such special arrangements.

### III. Disqualification of the Arbitrator and JAMS as Witness/Limitation of Liability

The Parties have agreed or hereby agree that they will not call the arbitrator or any employee or agent of JAMS as a witness or as an expert in any proceeding involving the Parties and relating to the dispute which is the subject of the arbitration, nor shall they subpoena any notes or other materials generated by the arbitrator during the arbitration. The Parties further agree to defend the arbitrator and JAMS and its employees and agents from any subpoenas from outside Parties arising out of this Agreement or arbitration.

The Parties agree that neither the arbitrator nor JAMS, including its employees or agents, is a necessary Party in any proceeding involving the participants and relating to the dispute which is the subject of the arbitration. The Parties further agree that the arbitrator and JAMS, including its employees or agents, shall have the same immunity from liability for any act or omission in connection with the arbitration as judges and court employees would have under federal law.

### IV. Party

The term "Party" as used in these Policies includes Parties to the Arbitration and their counsel or representative.



THE RESOLUTION EXPERTS*

# Document Retention Policy

Please note that **30 CALENDAR DAYS** after termination of any case JAMS will destroy the following documents submitted by parties unless parties specifically notify JAMS that they wish to collect their documents:

- Briefs
- Exhibits
- Evidence
- Transcripts

Parties should collect their documents as soon as possible after the termination of a case. Otherwise, they will be destroyed 30 days thereafter. Please note that JAMS does not maintain a duplicate file of documents, which are normally forwarded to the Neutral upon receipt.  Any items marked with notes, comments or suggestions by the Neutral will automatically be destroyed upon closing of the file.

"Termination" of a case is defined as any of the following:

- Resolution of a matter, e.g., either through settlement or issuance of an award
- Mutual agreement to close the matter
- Withdrawal from ADR Process
- Time Period of one year elapses without any resolution and no future dates on calendar
- Notice from JAMS that the matter has been terminated

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Miss Universe L.P., LLLP vs. Monnin, Sheena
Reference No. 1425011630

I, Meredith Stockman, not a party to the within action, hereby declare that on July 2, 2012 I
served the attached Arbitration Commencement Letter on the parties in the within action by Email and by
depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United
States Mail, at New York, NEW YORK, addressed as follows:

Scott S. Balber Esq.
Ms. Lisa Shapira
Chadbourne & Parke
30 Rockefeller Plaza
New York, NY   10112
Tel: 212-408-5100
Email: sbalber@chadbourne.com
LSchapira@chadbourne.com
    Parties Represented:
    Miss Universe L.P., LLLP

Ms. Sheena Monnin
9244 Marshall Road
Cranberry Twp, PA   16066
Email: Sheena.Monnin@yahoo.com
    Parties Represented:
    Ms. Sheena Monnin

I declare under penalty of perjury the foregoing to be true and correct. Executed at New York,
NEW YORK on July 2, 2012.

Meredith Stockman
mstockman@jamsadr.com